**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ROBERTSHAW US HOLDING CORP., *et al.*, | Case No. 24-90052 (CML) |
| Debtors.[1] | (Joint Administration Requested) |

**DECLARATION OF JOHN HEWITT IN SUPPORT**
**OF CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS**

I, John Hewitt, declare as follows under the penalty of perjury:

1.      I am the Chief Executive Officer of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").  The Debtors together with their non-debtor affiliates ("Robertshaw" or the "Company") are a global design, engineering, and manufacturing company that sell flow control components, systems, and technologies for the commercial and residential appliance, HVAC, and transportation industries.

2.      I have served in my current role since June 20, 2022, and I am familiar with the Company's business operations and financial affairs.  I submit this declaration (this "Declaration") in support of the Debtors' voluntary petitions for relief and motions filed concurrently herewith "First Day Pleadings").[2]  I am authorized to submit this Declaration on behalf of the Debtors.

---

[1]      The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are as follows:  Range Parent, Inc. (7956); Robertshaw US Holding Corp. (1898); Robertshaw Controls Company (9531); Burner Systems International, Inc. (8603); Robertshaw Mexican Holdings LLC (9531); Controles Temex Holdings LLC (9531); and Universal Tubular Systems, LLC (8603); and Robertshaw Europe Holdings LLC (8843).  The primary mailing address used for each of the foregoing debtors is 1222 Hamilton Parkway, Itasca, Illinois 60143.

[2]      The specific facts supporting the First Day Pleadings filed in these chapter 11 cases, are set forth in detail in the *Declaration of Stephen Spitzer in Support of Chapter 11 Petitions and First Day Pleadings*, which is filed contemporaneously herewith (the "Spitzer Declaration" and, together with this Declaration, the "First Day Declarations").

3.      Before joining Robertshaw, I served as a President of the Americas Region of digital infrastructure provider, Vertiv, from October 2017 to March 2022.  Prior to that time, I served as Vice President and Managing Director of global automotive technology supplier, Aptiv, from October 2016 to September 2017.   Prior to joining Aptiv, I was employed by TE Connectivity, an industrial technology manufacturing company, from April 2007 to September 2016 where I led the Data and Devices business of TE Connectivity for three years of my nine year tenure.  Prior to joining TE Connectivity, I held various management and leadership roles at Motorola, culminating in the role of Senior Director, Supply Chain, Connected Home Solutions. I hold a Bachelors of Science in Finance and Accounting from Oklahoma State University and a Masters of Business Administration from the Thunderbird School of Global Management.

4.      In my capacity as Chief Executive Officer, I am responsible for overseeing the operations and financial activities of the Debtors including, but not limited to, monitoring cash flow, business relationships, workforce issues, and financial planning.  As a result of my tenure with the Debtors, my review of public and non-public documents, and my discussions with other members of the Debtors' management team, I am generally familiar with the Debtors' business, financial condition, policies and procedures, day-to-day operations, and books and records. Except as otherwise noted in this Declaration, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from other members of the Debtors' management team or retained advisors in the ordinary course of my responsibilities.   References to the Bankruptcy Code (as defined herein), the chapter 11 process, and related legal matters are based on my understanding of such matters in reliance on the explanation provided by, and on the advice of, counsel.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

5.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (the "Court") commencing these cases (the "Chapter 11 Cases") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors will continue to operate their business and manage their properties as debtors-in-possession.

6.      To familiarize the Court with the Debtors, their business, the circumstances leading to the commencement of these Chapter 11 Cases, and the objectives of these Chapter 11 Cases, this Declaration is organized as follows:

- Part I provides an overview of the Company's history, business operations and corporate structure;

- Part II summarizes the Debtors' prepetition capital structure and indebtedness; and

- Part III discusses the circumstances leading to the commencement of these Chapter 11 Cases, the Debtors' objectives for these Chapter 11 Cases, and the means of implementing such objectives.

## I.      COMPANY AND BUSINESS OVERVIEW

### A.      History and Operations

7.      Robertshaw is a global market leader in the design, engineering, and manufacturing of flow control components, systems, and technologies for the commercial and residential appliance and transportation industries.  Robertshaw specializes in creating safe and reliable solutions that optimize energy efficiency, comfort, and performance across a variety of applications, including, among others, refrigerators, clothes washers and dryers, dishwashers, electric and gas cooking ranges, ice makers, fluid dispensers, and gas valves for space and central heating systems.  Since Frederick W. Robertshaw invented an innovative home water heater thermostat in 1899, Robertshaw has continued to pioneer cutting-edge technologies that enhance

the functionality and sustainability of appliance and heating, ventilation, and air conditioning systems.

8.       Robertshaw operates on a worldwide scale, with eleven manufacturing facilities across North America, Europe, Asia and Latin America, three engineering centers in the U.S. and Europe, and four distribution centers in the U.S., Canada and Asia, substantially as shown on the map below:



9.       The Debtors operate entirely within the United States. The Debtors' headquarters are located in Itasca, Illinois. All of the Debtors' United States inventory is located in the Debtors' facilities in Laredo and Brownsville, Texas. The Debtors lease 55,239 square foot warehouse and office facilities in in Laredo, Texas, which the Debtors use as a distribution facility and corporate support center for their component parts manufacturing operations and their finished component parts products. The Debtors also contract additional warehouse and distribution facilities with

third party logistics providers in Laredo and Brownsville for order fulfillment.  In addition, the Debtors maintain a sales office in Norco, California.

10.     The Debtors serve approximately 2,400 customers across a wide range of brands spanning a large number of industries.  The Debtors sell their products to customers directly as well as through a network of trusted distributors.  Generally, the Debtors provide products and solutions to customers in three principal business segments: (a) home appliance; (b) commercial; and (c) aftermarket.





Aftermarket

*Various Products*

11.     **Home Appliance.**  The Company's customer base in the home appliance segment is comprised of household named customers that manufacture and sell cooking appliances, refrigerators, dishwashers, laundry machines, and other household appliances.  The Debtors manufacture and produce critical component parts for these customers, including, among other things, gas valves, water valves, top burners, energy regulators, cold thermostats, electronic controls, ice maker valves, electromechanical timers, defrost timers, and energy regulators.

12.     **Commercial.**  The commercial segment is composed of Company clientele that manufacture and sell commercial appliances (such as commercial kitchen and laundry machinery), HVAC units, and electric vehicles.  The Debtors manufacture and produce key component parts for their commercial customers, including, water valves, gas valves, top burners, oven burners, engineered tubing, ignition controls, hi-limit switches, manifolds, cold and hot thermostats, coolant valves, and many others.

13.     **Aftermarket.**  The aftermarket segment is comprised of the Debtors' customers that sell replacement controls and components to installers and technicians who repair and maintain household and commercial appliances, heating and ventilation systems.  The Debtors manufacture and sell gas valves, defrost timers, ignition controls, commercial thermostats, hi-limit switches, water valves, and other replacement products to their customers in the aftermarket channel.

14.     In total, the Debtors offer over 10,000 distinct stock keeping unit or "SKUs" in over 50 product families to their broad customer base across the appliance, commercial, and aftermarket business segments.  The Debtors also maintain a large intellectual property portfolio comprised of over 200 patents and patent applications.  Photos of some of the Debtors' products are below.



15.     In fiscal year March 2023, the Debtors generated gross profit of $85.8 million, and earnings before interest, tax, depreciation, and amortization of $30.3 million.  Through the first

nine months of fiscal period ending December 31, 2023, the Debtors generated gross profit of $58.8 million and earnings before interest, tax, depreciation, and amortization of $14.8 million.

### B.    Employees

16.    Crucial to their businesses, the Debtors employ a talented and dedicated workforce that enables the Debtors to maintain their high standards of quality, safety, and sustainability.  The Company, including all subsidiaries, employs over 5,200 people across 14 countries consisting of a combination of full-time, part-time, and temporary employees, as well as independent contractors (collectively, the "Employees").  The Company's Employees perform a variety of services that are essential to the Debtors' ongoing operations including the design, engineering, manufacturing, production and sales engineer the Company's sophisticated control devices.

17.    The Debtors' Employees are located across the United States, including at the Debtors' headquarters in Itasca, Illinois (120 Employees); the Debtors' warehouse, office, and distribution facilities in Laredo, Texas (19 Employees); and their sales office in Norco, California (10 Employees).

18.    Robertshaw also operates two non-debtor subsidiary maquiladoras (the "Maquiladoras") in Mexico.  The Maquiladoras provide manufacturing and assembly services exclusively to the Debtors, and employ approximately 3,200 full-time and part-time staff.  The Maquiladoras use the Debtors' equipment and tooling to convert the Debtors' component inventory into finished goods that the Debtors sell to their customers.  Throughout this process, the Maquiladoras never obtain title to the component inventory or finished goods.  The Maquiladoras are critical to the Debtors' business as they produce the majority of the Debtors products for sale in the United States.

### C.    Corporate Structure

19.    An affiliate of the Debtors' largest equity holder, One Rock Capital Partners, LLC ("ORC"), maintains a majority stake in Debtor Range Parent, Inc. ("Range Parent"), the ultimate parent of the six other Debtors and the twenty-six non-debtor subsidiaries that make up Robertshaw.  Robertshaw Controls Company ("Robertshaw Controls Company") is the primary operating company among the Debtor entities and, as a result, substantially all of the Debtors' unsecured creditors hold claims against only Robertshaw Controls Company.  Robertshaw US Holding Corp. ("US Holding") is the borrower under all of the Debtors' funded debt facilities, which are guaranteed by each of the other Debtors.  The Debtors' organizational chart is included below:



## II.    PREPETITION CAPITAL STRUCTURE

20.    As further described below, as of the Petition Date, the Debtors maintain outstanding funded debt obligations in the amount of approximately $832.8 million, which is summarized in the following table:

| Governing Document | Facility/Note | Borrower[3] | Outstanding Principal |
|---|---|---|---|
| Super-Priority Credit Agreement | Prepetition First Out Superpriority Term Loans | Robertshaw US Holding Corp. | $218,411,857.26 |
| | Prepetition Second Out Superpriority Term Loans | | $381,193,571.32 |
| | Prepetition Third Out Term Loans | | $72,826,885.56 |
| | Prepetition Fourth Out Term Loans | | $22,824,860.67 |
| | Prepetition Fifth-Out Term Loans | | $29,184,931.84 |
| Sixth-Out Credit Agreement | Prepetition Sixth Out Term Loans | Robertshaw US Holding Corp. | $78,924,296.47 |
| Seventh-Out Credit Agreement | Prepetition Seventh Out Term Loans | Robertshaw US Holding Corp. | $16,282,984.53 |
| Prepetition FGI Mexican Promissory Note | Prepetition FGI Mexican Promissory Note Loan | Robertshaw Controls Company | $13,200,000.00 |
| **Total Prepetition Secured Debt** | | | **$832,849,387.65** |

## A.   Prepetition Superpriority Term Loan Facility

21.     On May 9, 2023, US Holding entered into that certain Super-Priority Credit Agreement (as amended by that certain Amendment No. 1 to Super-Priority Credit Agreement, dated as of October 5, 2023 (the "First Superpriority Amendment"), as further amended by that certain Amendment No. 2 to Super-Priority Credit Agreement, dated as of October 13, 2023 (the "Second Superpriority Amendment"), as further amended by that certain Amendment No. 3 to Super-Priority Credit Agreement, dated as of November 8, 2023 (the "Third Superpriority Amendment"), as further amended by that certain Amendment No. 4 to Super-Priority Credit Agreement, dated as of November 13, 2023 (the "Fourth Superpriority Amendment"), as further

---

[3]     The loan parties to the Superpriority Credit Agreement, Sixth Out Credit Agreement, and Second Lien Credit Agreement are: Range Parent, Inc.; Robertshaw US Holding Corp.; Robertshaw Controls Company; Burner Systems International, Inc.; Robertshaw Mexican Holdings LLC; Controles Temex Holdings LLC; and Universal Tubular Systems, LLC.

amended by that certain Amendment No. 5 to Super-Priority Credit Agreement, dated as of December 11, 2023 (the "Fifth Superpriority Amendment"), and as further amended, supplemented, restated, replaced or otherwise modified from time to time, the "Super-Priority Credit Agreement" and the liens (the "Prepetition Super-Priority Liens") and facilities provided thereunder, the "Prepetition Superpriority Facilities") among US Holding, as the borrower agent, Range Parent, as the holding company guarantor, the other Debtors party thereto as borrowers and guarantors, the lenders party thereto from time to time (the "Prepetition Super-Priority Lenders"), and Delaware Trust Company ("DTC") as administrative agent (in such capacity, the "Prepetition Super-Priority Administrative Agent") and collateral agent.  As of the Petition Date, the Debtors have borrowed the following amounts (in principal) under Super-Priority Credit Agreement:

(a)   $218.4 million in superpriority first-out term loans (the "Prepetition First Out Term Loans");

(b)   $381.2 million in superpriority second-out term loans (the "Prepetition Second Out Term Loans");

(c)   $72.8 million in superpriority third-out term loans (the "Prepetition Third Out Term Loans");

(d)   $22.8 million in superpriority fourth-out term loans (the "Prepetition Fourth Out Term Loans"); and

(e)   $29.2 million in superpriority fifth-out term loans (the "Prepetition Fifth Out Term Loans").

22.   The aggregate principal amount outstanding under the Prepetition Superpriority Facilities as of the Petition Date, in the individual amounts set forth above, is approximately $724.4 million.  The Prepetition Superpriority Facilities mature, on the earlier of (a) February 28, 2027, (b) January 28, 2026 if on such date at least $12.5 million principal of loans borrowed under the Prepetition Seventh Out Loans are outstanding, (c) January 28, 2025 if on such date at least $12.5 million in principal balance of loans borrowed under the Prepetition Sixth Out Loans are

outstanding, (d) the date on which all or substantially all assets of the Debtors and their subsidiaries (taken as a whole) are disposed and (e) the date of acceleration of the Debtors' obligations thereunder in accordance with the terms of the Super-Priority Credit Agreement.  The Debtors' obligations under the Prepetition Superpriority Facilities are secured by first-priority liens on substantially all of the Debtors' assets.  The relative payment priorities among the Prepetition Superpriority Facilities are in the order set forth in (a) through (e) of the preceding paragraph, with the Prepetition First Out Term Loans having the most senior priority and the Prepetition Fifth Out Term Loans having the most junior priority.

### B.    Prepetition Sixth Out Loans

23.    On February 28, 2018, US Holding entered into that certain Sixth Out Credit Agreement (as amended by that certain Amendment No. 1 to the Sixth Out Credit Agreement and First Lien Pledge and Security Agreement, dated as of May 9, 2023 (the "Sixth Out Credit Agreement Amendment", and as further amended, supplemented, restated, replaced or otherwise modified from time to time, the "Sixth Out Credit Agreement" and the loans provided thereunder, the "Prepetition Sixth Out Loans") among US Holding as the borrower agent, Range Parent as the holding company guarantor, the other Debtors party thereto as borrowers and guarantors, the lenders party thereto from time to time (the "Prepetition Sixth Out Lenders"), and Acquiom Agency Services LLC ("Acquiom") and Seaport Loan Products LLC ("Seaport"), as co-administrative agents (in each case, as successor in interest to Deutsche Bank AG New York Branch ("Deutsche Bank") as administrative agent and collateral agent), pursuant to which the Debtors borrowed an initial aggregate principal amount of approximately $510 million.  As of the Petition Date, the aggregate outstanding principal under the Prepetition Sixth Out Loans was approximately $78.9 million.  As of January 31, 2024, DTC was appointed as the successor

administrative agent (in such capacity, the "Prepetition Sixth Out Administrative Agent") and collateral agent.  The Prepetition Sixth Out Loans matures on February 28, 2025.

24.     The Debtors' obligations under the Prepetition Sixth Out Loans are secured by liens on substantially all of the Debtors' assets (the "Prepetition Sixth Out Liens").  The Prepetition Sixth Out Liens and Prepetition Sixth Out Loans are junior in lien priority to the Prepetition Super-Priority Liens and the Prepetition Super-Priority Facilities pursuant to the Super-Priority Intercreditor Agreement (as defined below).

### C.     Prepetition Seventh Out Loans

25.     On February 28, 2018, US Holding entered into that certain Second Lien Credit Agreement (as amended by that certain Amendment No. 1 to the Second Lien Credit Agreement and Second Lien Pledge and Security Agreement, dated as of May 9, 2023 (the "Seventh Out Credit Agreement Amendment", and as further amended, supplemented, restated, replaced or otherwise modified from time to time, the "Seventh Out Credit Agreement" and the loans provided thereunder, the "Prepetition Seventh Out Loans") among US Holding as the borrower agent, Range Parent as the holding company guarantor, the other Debtors party thereto as borrowers and guarantors, the lenders party thereto from time to time (the "Prepetition Seventh Out Lenders"), and Acquiom and Seaport, as co-administrative agents at that time (in each case, as successor in interest to Deutsche Bank as administrative agent and collateral agent), pursuant to which the Debtors borrowed an initial aggregate principal amount of $110 million.  As of January 31, 2024, DTC was appointed as the successor administrative agent (in such capacity, the "Prepetition Seventh Out Administrative Agent") and collateral agent.  As of the Petition Date, the aggregate outstanding principal under the Prepetition Seventh Out Loans was approximately $16.3 million. The Prepetition Seventh Out Loans matures on February 28, 2026.

26.     The Debtors' obligations under the Prepetition Seventh Out Loans are secured by liens on substantially all of the Debtors' assets (the "Prepetition Seventh Out Liens" together with the Prepetition Super-Priority Liens, the Prepetition Sixth Out Liens, and the Prepetition Mexican Promissory Note Liens (as defined below), the "Prepetition Liens").  In addition to being junior in lien priority to the Prepetition Sixth Out Liens and the Prepetition Sixth Out Loans under the Seventh Out Intercreditor Agreement (as defined below), the Prepetition Seventh Out Liens and Prepetition Seventh Out Loans are junior in lien priority to the Prepetition Super-Priority Liens and the Prepetition Super-Priority Facilities pursuant to the Super-Priority Intercreditor Agreement.

**D.     Intercreditor Agreements**

27.     On May 9, 2023, US Holding entered into that certain Super-Priority Intercreditor Agreement (as further amended, supplemented, restated, replaced or otherwise modified from time to time, the "Super-Priority Intercreditor Agreement") among US Holding as the borrower agent, Range Parent as the holding company guarantor, the other Debtors party thereto as borrowers and guarantors, the Prepetition Super-Priority Administrative Agent on behalf of the Prepetition Super-Priority Lenders, the Prepetition Sixth Out Collateral Agent on behalf of the Prepetition Sixth Out Lenders, and the Prepetition Second Lien Agent on behalf of the Prepetition Seventh Out Lenders. [4]  Under the Super-Priority Intercreditor Agreement the Prepetition Sixth Out Liens and the Prepetition Seventh Out Liens and the Prepetition Sixth Out Loans and the Prepetition Seventh Out Loans are each junior in lien priority to the Prepetition Super-Priority Liens and the Prepetition Superpriority Facilities, respectively.  The Super-Priority Intercreditor Agreement also includes

---

[4] As of January 31, 2024, DTC was appointed as the successor administrative agent and collateral agent.

terms, provisions and limitations with respect to, among other things, use of Cash Collateral, additional adequate protection and DIP financing obligations.

28.     On February 28, 2018, US Holding entered into that certain Seventh Out Intercreditor Agreement (as supplemented by that certain Representative Supplement No. 1 to Seventh Out Intercreditor Agreement, dated as of May 9, 2023, and as further amended, supplemented, restated, replaced or otherwise modified from time to time, the "Seventh Out Intercreditor Agreement") among US Holding as the borrower agent, Range Parent as the holding company guarantor, the other Debtors party thereto as borrowers and guarantors, the Prepetition Sixth Out Collateral Agent on behalf of the Prepetition Sixth Out Lenders, and the Prepetition Second Lien Agent on behalf of the Prepetition Seventh Out Lenders, pursuant to which the Prepetition Seventh Out Liens and the Prepetition Seventh Out Loans are junior to the Prepetition Sixth Out Loans.  Under the Seventh Out Intercreditor Agreement the Prepetition Seventh Out Liens and the Prepetition Seventh Out Loans are junior in lien to the Prepetition Super-Priority Liens and the Prepetition Sixth Out Loans, respectively.  The Seventh Out Intercreditor Agreement also includes terms, provisions and limitations with respect to, among other things, use of Cash Collateral, additional adequate protection and DIP financing obligations.

### E.     Prepetition FGI Mexican Promissory Note

29.     On November 10, 2022, Robertshaw Controls Company entered into that certain Promissory Note (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition FGI Mexican Promissory Note") between Robertshaw Controls Company and FGI Equipment Finance LLC ("FGI").  Pursuant to the Prepetition FGI Mexican Promissory Note, Robertshaw Controls Company borrowed, and non-debtor affiliate Controles Latinoamericanos, S de RL de C.V. ("Controles LA") guaranteed, $16 million to be repaid to FGI in equal monthly

installments through December 1, 2028.[5]  The Prepetition FGI Mexican Promissory Note is secured by first-priority liens on certain manufacturing equipment, owned by Robertshaw Controls Company (debtor in these Chapter 11 Cases), at the Company's manufacturing facility in Matamoros, Mexico (the "Prepetition Mexican Promissory Note Liens"), as well as a mortgage lien on the real property owned by Controles LA.  As of the Petition Date, the aggregate outstanding principal under the Prepetition FGI Mexican Promissory Note was $13.2 million.

### F.      General Unsecured Debt

30.      In the ordinary course, the Debtors (primarily Robertshaw Controls Company) incur trade debt with certain vendors and suppliers in connection with the operation of their business.  As of the Petition Date, the Debtors owed approximately $37 million in trade debt to their vendors and service providers who supply the essential raw materials, component parts, products, tooling, and services used in the manufacturing of the Debtors' product offering and in support of the Debtors' business.  In addition, the Debtors maintain other potential and contingent liabilities related to certain litigation obligations.

## III.    KEY EVENTS LEADING TO THESE CHAPTER 11 CASES AND THE COMPANY'S POST-PETITION OBJECTIVES

### A.      Challenges Facing the Debtors' Business and Prepetition Strategic Efforts

31.      In addition to looming maturities and a challenging capital structure, the Debtors have faced, and continue to face, financial challenges resulting from the impact of pandemic-era product shortages, logistics, and supply chain disruptions.  The enduring effects of these cumulative issues have negatively impacted operating efficiency at the Debtors' (and Robertshaw's) manufacturing operations and larger business.

---

[5]    The Prepetition Sixth Out Loans, and the Prepetition Seventh Out Loans are subordinate to the Prepetition FGI Mexican Promissory Note.

32.     Specifically, lingering shortages of numerous critical individual component parts required by the Debtors to produce their goods, prevented the Debtors from quickly converting their inventory into finished goods, and caused the Debtors' inventory levels to grow significantly. And, in response to these shortages, a significant number of the Debtors' customers stockpiled the Debtors' inventory during, and following the Covid-19 pandemic, causing a substantial drop in sales in 2022.  The business also experienced significant unrecovered inflation in material, labor, logistics and operational spending, which eroded the Debtors' margins.  Finally, a major product line relocation project which was intended to reduce costs instead created inefficiencies within the Company's Mexican operations, resulting in increased costs.

33.     In response to these challenges, starting in the spring of 2022, the Debtors implemented a number of comprehensive and wide-ranging internal restructuring initiatives. Between June 2022 and May 2023 the Debtors' board of directors revamped the entire organizational structure of the Debtors.  The board replaced Debtors' former chief executive officer in June 2022 and the former chief financial officer in August 2022.  Ultimately, the entirety of the Debtors' former leadership team, with exception of the General Counsel, was replaced by the end of 2022.  In order to improve operational performance, throughout 2023, the Debtors also replaced a significant number of their senior managers and line managers, including nearly the entire management teams at the Debtors' two largest and most problematic Mexican Maquiladoras. Consequently, the Debtors' leadership team is now comprised of experienced executives with strong track-records of effective operational and strategic leadership.

34.     In addition to implementing these management changes, the Debtors' new leadership team has recently put in place a number of initiatives aimed at resolving certain operational challenges facing the Debtors, enhancing the Debtors' pricing strategies, and

expanding the Debtors' sales into new markets where the Debtors' product technologies and value propositions most closely apply. The Debtors management has also executed upon a number of strategies to address certain delivery and quality issues, further reduce inventory, and improve production efficiencies. These initiatives have shown early promise, but by the beginning of 2023 it became apparent that long implementation timelines for several key initiatives such as pricing initiatives as well as inefficiencies from prior business cycles created a significant drop in the Debtors' revenue and earnings, thus straining the Debtors' liquidity.

**B.**    **Prepetition Strategic Efforts and May 2023 Transactions**

35.    In the fall of 2022, the Company, with the assistance of the Company's investment banker, Guggenheim Securities, LLC ("Guggenheim Securities"), initiated outreach to potential third-party financing sources seeking proposals to refinance the Company's existing capital structure and provide the Company with additional working capital. During this time, the Company, with the aid of Guggenheim Securities, and the Company's counsel, Latham & Watkins LLP ("Latham"), also began actively engaging in discussions and negotiations with certain existing lenders to the Company, including an ad hoc group of certain lenders under the Prepetition Sixth Out Loans and the Prepetition Seventh Out Loans represented by Gibson, Dunn & Crutcher LLP and Greenhill & Co., Inc. ("Greenhill") (such lenders collectively, the "May Ad Hoc Group").[6]

36.    On May 9, 2023, after considering and extensively negotiating various financing alternatives, the Debtors entered into a series of financing transactions with the May Ad Hoc Group

---

[6]    At this time, the Ad Hoc Group was comprised of: (a) Invesco Senior Secured Management, Inc. (together with certain of its subsidiaries and affiliates, "Invesco"); (b) Bain Capital LP (together with certain of its subsidiaries and affiliates, "Bain Capital"); (c) Eaton Vance Management (together with certain of its subsidiaries and affiliates, "Eaton Vance"); and (d) Canyon Partners, LLC (together with certain of its subsidiaries and affiliates, "Canyon Partners").

(the "May 2023 Transactions") after determining that it was the best option available for the Debtors. Upon closing, the May 2023 Transactions provided the Company with $95 million in new money under the newly established Prepetition First Out Term Loans.  The May 2023 Transactions afforded the Debtors access to much needed capital in order to fund their operations and pay down certain of their other then-existing funded debt obligations.

37.     The Debtors provided all existing lenders under the Sixth Out Credit Agreement and the Seventh Out Credit Agreement with the opportunity to participate in the May 2023 Transactions.  However, over six months later, on November 29, 2023 certain Prepetition Sixth Out Lenders and Prepetition Seventh Out Lenders who elected not to participate in the May 2023 Transactions (collectively, the "Non-Participating Lenders") filed a complaint in the Supreme Court of the State of New York ("New York State Court")[7] against the Debtors Range Parent and US Holding, ORC and the members of the May Ad Hoc Group, in connection with the May 2023 Transactions seeking a declaratory judgment and asserting claims for:  (a) breach of contract; (b) breach of the implied covenant of good faith and fair dealing; (c) tortious interference with contract; and (d) certain violations of New York Uniform Voidable Transaction Act (the "Guardian Action").  The defendants in the Guardian Action must file an answer or other response by February 16, 2024.

### C.     Unsuccessful ABL Refinancing

38.     Despite the closing of the May 2023 Transactions, by the late summer of 2023 the Debtors faced a liquidity shortage caused by, among other things, continued operational and

---

[7]     *See The Guardian Life Insurance Company of America, et al., v. Robertshaw US Holding Corp. et. al.*, No. 655979/2023 (Sup. Ct. N.Y. Cnty.).  The defendants in the Guardian Action are:  Robertshaw US Holding Corp.; Range Parent, Inc.; Invesco Ltd.; John Doe funds 1-100 issued, sponsored, or managed by Invesco Ltd.; Eaton Vance Corp.; John Doe funds 1-100 issued, sponsored, or managed by Eaton Vance Management; Bain Capital, LP; John Doe funds 1-100 issued, sponsored, or managed by Bain Capital, LP; One Rock Capital Partners, LLC; and John Does 1-100.

procurement issues, margin erosion driven by cost inflation, and lower-than-expected revenues. In addition, the existing lenders in the ABL Facility were imposing reserves on the Company's ability to access liquidity.   In response, the Company, with the assistance of Guggenheim Securities, initiated outreach to prospective financing sources in connection with a potential refinancing transaction of the Company's then-existing asset backed credit facility (the "<u>Prepetition ABL Facility</u>").[8]  The Prepetition ABL Facility was to be comprised of a "first-in last-out" term facility of $50 million.

39.     On September 12, 2023, the Debtors entered into a non-binding agreement with Brigade Capital Management (the "<u>Brigade Transaction</u>").   The Brigade Transaction, which Robertshaw negotiated over many weeks beginning in August 2023, was meant to solve two short term, but important, liquidity issues:  ***First***, it would extend the then-upcoming December 2023 maturity of the ABL Facility.   ***Second***, it would provide Robertshaw with immediate working capital, which Robertshaw needed to make an interest payment under the Superpriority Credit Agreement by October 6, 2023.[9]  Even though Robertshaw and Brigade had reached an agreement on the terms of the Brigade Transaction, on October 4, 2023, ***one day before the closing***, Invesco, through its counsel, delivered a letter claiming that Brigade Transaction would violate the terms of the Superpriority Credit Agreement.

---

[8]     Prior to the December 2023 Transactions (as defined and described below), the Debtors were party to that certain ABL Credit Agreement by and among Range Parent Inc., Robertshaw US Holding Corp., the other borrowers party thereto, the lender party thereto, Deutsche Bank as administrative agent, the swingline lender party thereto, and PNC Bank, National Association ("<u>PNC</u>") as issuing bank (amended, supplemented, restated, replaced or otherwise modified on June 24, 2022, July 27, 2022, May 9, 2023, and October 13, 2023, the "<u>Prepetition ABL Credit Agreement</u>").

[9]     On September 29, 2023, the Debtors failed to make an interest payment of approximately $18 million due under the Prepetition Superpriority Credit Agreement, which triggered a five (5) business day cure period through October 6, 2023.

### D.    Invesco Attempts to Force Robertshaw into Chapter 11

##### 1.    *First Amendment to the Super-Priority Credit Agreement.*

40.    Invesco immediately reached out to the Debtors, indicating that it held a greater than 50.01% stake in the sum of the total outstanding principal obligations under the Prepetition First-Out Superpriority Facility and Prepetition Second-Out Superpriority Facility and, accordingly, constituted "Required Lenders" under the Prepetition Superpriority Credit Agreement.  Invesco also indicated that it was working with Ropes & Gray LLP ("Ropes & Gray") and Greenhill.[10]   To avoid an event of default under the Prepetition Superpriority Credit Agreement, on October 5, 2023, the Debtors entered into the First Superpriority Amendment with Invesco, which further extended the interest payment cure period by five (5) business days to October 13, 2023.

##### 2.    *Second Amendment to the Super-Priority Credit Agreement.*

41.    On October 13, 2023, the Debtors entered into (a) that certain Fourth Amendment to the ABL Credit Agreement (the "Fourth ABL Amendment"), and (b) the Second Superpriority Amendment.  In connection with and pursuant to the Fourth ABL Amendment, the Debtors drew $15 million under the Prepetition ABL Facility on the conditions that (a) the Debtors would make repayment of loans under the Prepetition ABL Facility within one business day after such draw such that the total outstanding amount under the Prepetition ABL Facility would not exceed $14.5 million, and (b) the Debtors would refinance the Prepetition ABL Facility and payoff all then outstanding loans borrowed thereunder by December 12, 2023.  Pursuant to the Second Superpriority Amendment, the Debtors received approximately $17 million in incremental financing under the Prepetition First Out Term Loans from Invesco—the proceeds of which were

---

[10]   All references to the Ad Hoc Group following execution of the First Superpriority Amendment *exclude* Invesco. The current composition of the Ad Hoc Group includes Bain Capital, Canyon Partners, and Eaton Vance.

used to make the outstanding interest payment then due under the Super-Priority Credit Agreement. In addition, the Second Superpriority Amendment required the Debtors to refinance the Prepetition ABL Facility with a new ABL facility to be provided by Invesco, on terms acceptable to the Required Lender, which by then was Invesco, by no later than November 8, 2023. Failure to enter into such a refinancing facility would constitute an immediate event of default under the Super-Priority Credit Agreement.

42. Following execution of the Fourth ABL Amendment and the Second Superpriority Amendment, the Debtors, with the assistance of their advisors—including AlixPartners, who were retained by the Debtors on October 20, 2023 to provide financial advisory services—engaged in negotiations with Invesco and its advisors in connection with a transaction that would refinance the Prepetition ABL Facility as required under the Second Superpriority Amendment, and provide the Debtors with adequate capital to allow for the Debtors to implement their business plan and cost-cutting initiatives.

### 3. *Third Amendment to the Super-Priority Credit Agreement.*

43. During the course of these negotiations with Invesco, on November 8, 2023, the Debtors entered into the Third Superpriority Amendment, which extended by two days the deadline for the Debtors to refinance the Prepetition ABL Facility from November 8, 2023 to November 10, 2023. Ultimately, however, Invesco refused to move forward with the ABL refinancing transaction.

### 4. *Fourth Amendment to the Super-Priority Credit Agreement.*

44. Instead, on November 9, 2023, Invesco informed the Debtors that it wanted to enter into a forbearance agreement that would require the Debtors to begin preparing for a chapter 11 filing. With only one day remaining before the Debtors triggered an event of default under the Super-Priority Credit Agreement, the Debtors had little choice but to engage with Invesco. The

Debtors and Invesco further extended the event of default deadline to November 13, 2023 to facilitate discussions. However, during negotiations over this new structure, the Debtors and ORC made clear to Invesco that they wanted to simultaneously pursue an out-of-court option that would allow the Debtors to avoid a chapter 11 filing altogether. As Invesco knew, beginning in 2022, Robertshaw had launched various initiatives including streamlining operations and successfully negotiating pricing changes in key customer contracts. If successful, these changes would increase the likely recoveries for all of Robertshaw's stakeholders—debt and equity alike.

45.     As Invesco expressed willingness to negotiate the terms of an out-of-court solution in parallel, the Debtors agreed to sign the forbearance agreement, which was memorialized as the Fourth Superpriority Amendment on November 13, 2023 and further extended the deadline for the Debtors to refinance the Prepetition ABL Facility to December 31, 2023. The Debtors were to comply with certain milestones under the Fourth Superpriority Amendment (the "Fourth Amendment Milestones") including, among others:

> (a)     the provision to Invesco of a wind-down budget, sources and uses of cash attendant to a section 363 sale, a list of proposed critical vendor payments, a summary of executory contracts (and a proposed disposition of such contracts), and a proposal from AlixPartners to act as chief restructuring officer of the Company during the chapter 11 cases by December 4, 2023;

> (b)     the negotiation and finalization of term sheets for a debtor in possession financing facility and stalking horse asset purchase agreement with Invesco by December 8, 2023;

> (c)     the execution of a stalking horse asset purchase agreement and debtor in possession credit agreement with Invesco by December 29, 2023; and

> (d)     the filing of chapter 11 cases by January 2, 2024 with the stated goal of effectuating a sale under section 363 of the Bankruptcy Code within the timeframe allowed under the debtor in possession credit agreement.

46.     After entry into the Fourth Superpriority Amendment, the Debtors, in consultation with their advisors, engaged in extensive, arm's-length negotiations with Invesco over the terms

of a debtor in possession financing facility and stalking horse asset purchase agreement.  And the Debtors provided Invesco with the deliverables required under the aforementioned December 4, 2023 and December 8, 2023 Fourth Amendment Milestones.

47.    A few things became clear at that time.  *First*, Invesco was trying to take assignment or ownership of the Prepetition ABL Facility.   *Second*, Invesco was going to use its Required Lender status to credit bid enough for it to take control and majority stakeholder ownership.  *Third*, Invesco had not contacted its former Ad Hoc Holder group to let them know of this plan.   It also became clear that Invesco abandoned any pretense of good faith negotiations over any solution other than a chapter 11 filing to the detriment of other lenders in the capital structure and without any commitment to fund a chapter 11 plan.

48.    Importantly, the Fourth Superpriority Amendment required Robertshaw to appoint at least one independent director of Invesco's choosing to the Board of Directors of Robertshaw's parent company, Range Parent, Inc.   On November 20, 2023, Neal Goldman was formally appointed to this role.  Mr. Goldman, in furtherance of protecting the interests of *all stakeholders*, urged Robertshaw and its advisors to explore available alternatives to the forced bankruptcy set forth in Fourth Superpriority Amendment.  Notably, the Fourth Superpriority Amendment did not preclude the Debtors from exploring other financing opportunities.

**E.    Negotiations with the Ad Hoc Group Lenders and Entry into the Fifth Superpriority Amendment**

49.    While the Debtors continued to comply with the Fourth Amendment Milestones and engaged in good-faith negotiations with Invesco, the Debtors simultaneously pursued all other possible opportunities to maximize and preserve stakeholder value.  In particular, the Debtors engaged in discussions with ORC and the remaining members of the May Ad Hoc Group, including Bain Capital, Canyon Partners, and Eaton Vance (collectively, the "Ad Hoc Group")

after the Ad Hoc Group had reached out to the Debtors to, unlike with Invesco, reach an out of court solution.  And as a result of these negotiations, on December 11, 2023, the Debtors entered into a series of refinancing transactions with ORC and the Ad Hoc Group (the "December 2023 Transactions").  Neal Goldman, who was an independent director **nominated and approved by** Invesco, approved the December 2023 Transactions.

50.     Under the December 2023 Transactions, the following steps occurred to effectuate a paydown of Invesco's First-Out Superpriority Facility loans:

a.     ORC and the Ad Hoc Group contributed capital to RS Funding Holdings, LLC, a newly formed entity ("RS Funding").  RS Funding entered into that certain Credit Agreement by and among RS Funding, the financial institutions and other persons party thereto as the lenders, and Wilmington Savings Fund Society, FSB as the administrative agent (the "RS Term Loan Credit Agreement" and the facility provided thereunder, the "RS Term Loan Facility"), pursuant to which RS Funding borrowed a principal amount of approximately $228.3 million.

b.     The proceeds of the RS Term Loan Facility were then paid by RS Funding as a distribution to US Holding, as the holder of all RS Funding's non-voting economic interests.

c.     US Holding then used the distributions received by RS Funding to:

i.     repay all outstanding loans under the existing Prepetition ABL Facility in the aggregate principal amount of $30 million and permanently cancel the commitments under the Prepetition ABL Facility;

ii.     repay approximately $117.6 million of the loans outstanding under the Prepetition First Out Term Loans;

iii.     pay approximately $27.6 million of a make-whole premium owed under the Prepetition Superpriority Facilities in connection with the repayment described in clause (ii);

iv.     pay approximately $3 million of accrued interest under the Prepetition Superpriority Facilities; and

v.     provide the Debtors with approximately $43 million in new liquidity.

d.     Critically, US Holding maintained ownership of 100% of the economic interests in RS Funding but no Debtor held any voting interests in RS Funding. As a result, RS

Funding did not constitute a "Subsidiary" as defined under the Super-Priority Credit Agreement—which allowed for the execution of the RS Term Loan Facility without violating any covenant in the Super-Priority Credit Agreement or triggering an event of default under the Super-Priority Credit Agreement.[11]

51.     Following the prepayment of a portion of the First-Out Superpriority Facility and the retirement of the Prepetition ABL Facility, the Ad Hoc Group became the "Required Lenders" under the Super-Priority Credit Agreement by virtue of their holding over 50.01% of the outstanding principal obligations under the remaining Prepetition First-Out and Prepetition Second-Out Superpriority Facilities. The Debtors and the Ad Hoc Group (in their capacities as Required Lenders under the Prepetition Superpriority Facilities) entered into the Fifth Superpriority Amendment, which (among other things) increased the Debtors' capacity to borrow additional funds under the Prepetition First Out Term Loans and the Prepetition Second Out Term Loans. The Debtors then borrowed approximately $218 million of additional principal obligations under the Prepetition First Out Term Loans and approximately $10 million of additional principal obligations under the Prepetition Second Out Term Loans—the proceeds of which were contributed by US Holding to RS Funding and used to repay the RS Term Loan Facility on a dollar-for-dollar basis.

52.     In connection with the Fifth Superpriority Amendment, the Board unanimously approved the expansion of the Board, by appointing Scott Vogel as an independent director. On December 26, 2023, the Board formed an independent restructuring committee of the Board (the "Restructuring Committee") comprised of Messrs. Goldman and Vogel. The Restructuring

---

[11]     The Super-Priority Credit Agreement defines "Subsidiary" in relevant part as, "with respect to any Person, any corporation, partnership, limited liability company, association, joint venture or other business entity of which more than 50.0% of the ***total voting power of shares of stock or other ownership interests entitled (without regard to the occurrence of any contingency) to vote*** in the election of the Person or Persons (whether directors, managers, trustees or other Persons performing similar functions) having the power to direct or cause the direction of the management and policies thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more of the other subsidiaries of that Person of a combination thereof[.]" (emphasis added).

Committee was charged with assessing and recommending strategic alternatives—including a potential restructuring, reorganization, recapitalization, or change of control of the Debtors, as well as any debtor in possession financing and section 363 sale transactions—and overseeing an investigation of potential claims that may be extinguished in connection with these Chapter 11 Cases—including claims from the May 2023 Transactions and the December 2023 Transactions (each as defined and described below).

53.     As a result of the December 2023 Transactions, the Debtors were able to avoid a chapter 11 filing on January 2, 2024 and the subsequent asset sale contemplated under the terms of the Fourth Superpriority Amendment.  Furthermore, it was clear to the Debtors that, under the terms of the Fourth Superpriority Amendment, Invesco intended to credit bid the entirety of its anticipated debtor in possession term loan and asset based financing facility (which Invesco would have held on its own) and some part of its secured claim on account of the Prepetition First Out Term Loans without coming to consensus or resolution with other lenders in the capital structure.

54.     Accordingly, under these conditions, the Debtors reasonably anticipated that any chapter 11 and sale process would benefit *only* Invesco and provide minimal (if any) returns to the Debtors' estates and other stakeholders.  In contrast, the December 2023 Transactions provided the Debtors with $44 million in new liquidity.  This substantial capital infusion granted the Debtors additional time and runway to complete commercial negotiations with several customers regarding price increases and improved commercial terms, continue to implement their prepetition restructuring initiatives, and thus (at best) potentially avoiding a future chapter 11 filing altogether, or (at worst) granting the Debtors additional time to market and negotiate the terms of chapter 11 plan and commence a more orderly restructuring process for the benefit of ***all of their*** stakeholders. Accordingly, the December 2023 Transactions was not only preferable to the consummation of

26

the transactions contemplated under the Fourth Superpriority Amendment, but provided the best possible opportunity for the Debtors to maximize value on behalf of *all of their* stakeholders.

### F.     The Invesco Litigation

55.     Unfortunately, ten days after the closing of the December 2023 Transactions, on December 20, 2023, Invesco filed a complaint in New York State Court against US Holding, ORC, and the Ad Hoc Group, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contract, and fraudulent transfers and seeking a temporary restraining order and preliminary injunction in connection with the December 2023 Transactions (the "Invesco Action").[12]

56.     On December 22, 2023, a hearing was conducted in the Invesco Action, after which US Holding, ORC, each member of the Ad Hoc Group on one hand, and Invesco, on the other hand entered into a stipulation (the "Standstill Stipulation").  Under the Standstill Stipulation, US Holding covenanted not to, among other things, "engage in or make any transactions, arrangements, amendments, variations, adjustments, waivers, compromises, or settlements" under or pursuant to the Super-Priority Credit Agreement and related loan documents that would require the consent or approval of the Required Lenders thereunder.  The Standstill Stipulation, also set forth a mutually agreeable briefing schedule.  On December 22, 2023, the New York State Court entered an order approving the Standstill Stipulation.  On January 31, 2024, the New York State Court entered an order pursuant to which the defendants in the Invesco Action filed a memoranda in opposition to Invesco's request for a preliminary injunction on February 9, 2024.

---

[12]     *See Invesco Senior Secured Mgmt., Inc., v. Robertshaw US Holding Corp., et. al.*, No. 656370/2023 (Sup. Ct. N.Y. Cnty.).  The defendants in the Invesco Action are:  Robertshaw US Holding Corp.; One Rock Capital Partners, LLC; Bain Capital, LP; Eaton Vance Corp.; Canyon Partners, LLC; and John Doe I.  The Guardian Action and the Invesco Action are before two separate New York State Court judges – the Honorable Joel M. Cohen and the Honorable Jennifer Schecter, respectively.

G.      **Prepetition Settlement Attempts.**

57.      In January 2024, the Debtors contacted Selendy & Gay PLLC ("Selendy") and Proskauer Rose LLP ("Proskauer"), counsel to the Non-Participating Lenders to discuss a potential settlement of the Guardian Action in connection with the Debtors' initiative to achieve a global resolution with stakeholders.  Following these initial discussions, Selendy and Proskauer executed a nondisclosure agreement in mid-January and on February 1, 2024, the Debtors and the Ad Hoc Group provided Selendy with an illustrative settlement proposal.  Discussions regarding that proposal are ongoing as of the Petition Date.

58.      In January of 2024 and parallel with the Invesco Action, the Debtors engaged Invesco to discuss a potential settlement in connection with the Debtors' initiative to achieve a global resolution with stakeholders.  On January 17, 2024, the Debtors' advisors met with Invesco's advisors in connection to explore a consensual resolution between the Debtors and Invesco.  On January 30, 2024, Invesco sent a letter to the Company requesting that the Company send Invesco a settlement proposal.  The next day, the Company responded to Invesco and expressed its readiness to continue settlement discussions with Invesco.  During these continued conversations with Invesco's investment bank, Greenhill, it became clear that Invesco's opening position was that any potential settlement provide Invesco with control of more than 50% of the Company's equity, which was not acceptable to the Restructuring Committee.  On February 10, 2024, the Restructuring Committee determined it was in the Company's best interest to send a settlement proposal to Invesco in connection with achieving a global resolution and subsequently authorized the Company's advisors to send Invesco an illustrative settlement proposal.

**H.**     **Implementation of the Debtors' Chapter 11 Objectives Through the Restructuring Support Agreement**

59.     Following the commencement of the Invesco Action, the Debtors continued to negotiate with the members of Ad Hoc Group with respect to the terms of a possible in-court deleveraging transaction through either a chapter 11 plan or a sale under section 363 of the Bankruptcy Code.  As a result of these negotiations, the Debtors and the members of the Ad Hoc Group entered into a Restructuring Support Agreement (the "Restructuring Support Agreement") on February 14, 2024, further described below and attached hereto as **Exhibit A**.

60.     The Restructuring Support Agreement provides the framework for the Debtors to execute upon their two stated objectives in these Chapter 11 Cases: *first,* to pursue a value maximizing restructuring transaction, which includes a substantial de-leveraging of the business, and, *second*, to resolve the claims asserted in the Guardian Action and the Invesco Action, which overlap extensively with issues that will need to be addressed by this Court, in an expeditious and cost-efficient matter.

61.     To assist with their first goal, the Debtors filed a motion authorizing the sale and bidding procedures of substantially all of the Debtors assets and proposing bidding procedures in connection therewith (the "Sale Motion") on the Petition Date to be likely followed by a chapter 11 plan (the "Chapter 11 Plan"), each and in accordance with the terms of the Restructuring Support Agreement.  The Sale Motion seeks entry of an order establishing the procedures for a competitive marketing, auction and sale process that the Debtors believe will yield the greatest possible returns for their stakeholders.  The Restructuring Support Agreement also allows for a chapter 11 plan process to take place concurrently with marketing of the Debtors' business for sale as a going concern.

62.     To assist with their second goal, the Debtors have commenced two adversary proceedings before the Bankruptcy Court in connection with the Guardian Action and the Invesco Action, respectively.  The Debtors seek declaratory relief upholding the validity of the May 2023 Transactions and December 2023 Transactions and an order: (a) declaring that the automatic stay applies to claims asserted against the non-debtor defendants in the Guardian Action and the Invesco Action, or (b) extending the automatic stay and preliminarily enjoining claims against the non-debtor defendants in the Guardian Action and the Invesco Action.  The Debtors believe that a speedy resolution of the alleged claims in a single centralized forum is critical, and the only way to efficiently address the critical issues raised in the Actions, which overlap with issues this Court will need to decide, and minimize the value-destructive lingering impacts caused by two costly and protracted litigations.

63.     Accordingly, the Debtors believe that commencement of these Chapter 11 Cases provides the clearest path to maximize value for their stakeholders and the greatest likelihood for consummation of the best available transaction through a transparent and competitive process before the Bankruptcy Court.  Furthermore, the Debtors believe that commencement of these Chapter 11 Cases provides the Company with sufficient liquidity in the form of reliance on cash collateral for approximately 30 days before this Court makes a determination regarding which parties constitute the "Required Lenders" under the Super-Priority Credit Agreement, while a later commencement of these Chapter 11 Cases puts the Company at risk of maintaining sufficient liquidity to operate its businesses.

[*Remainder of Page Left Intentionally Blank*]

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 15, 2024
        Houston, Texas

_/s/ John Hewitt_
John Hewitt
Chief Executive Officer
Range Parent, Inc.