# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RANGE PARENT, INC., | § | Case No. 24 - 90053 (CML) |
| | § | |
| Debtor. | § | |
| | § | |

### SCHEDULES OF ASSETS AND LIABILITIES FOR
### Range Parent, Inc.
### (CASE NO. 24 - 90053)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ROBERTSHAW US HOLDING CORP., *et al.*, | : | Case No. 24-90052 (CML) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
|  | : |  |

**GLOBAL NOTES, METHODOLOGY, AND SPECIFIC DISCLOSURES
REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND
LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

Robertshaw US Holding Corp. ("Robertshaw") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed their respective Schedules of Assets and Liabilities (each, a "Schedule" and, collectively, the "Schedules") and Statements of Financial Affairs (each, a "Statement" and, collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") with the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the unaudited Schedules and Statements in accordance with section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 1007-1 of the Bankruptcy Local Rules for the Southern District of Texas.

These global notes and statements of limitations, methodology, and disclaimers regarding the Debtors' Schedules and Statements (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Schedules and Statements reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone, unconsolidated basis. These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with the financial statements of each Debtor. The Schedules and Statements are

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are as follows: Range Parent, Inc. (7956); Robertshaw US Holding Corp. (1898); Robertshaw Controls Company (9531); Burner Systems International, Inc. (8603); Robertshaw Mexican Holdings LLC (9531); Controles Temex Holdings LLC (9531); Universal Tubular Systems, LLC (8603); and Robertshaw Europe Holdings LLC (8843). The primary mailing address used for each of the foregoing debtors is 1222 Hamilton Parkway, Itasca, Illinois 60143.

unaudited and contain information that is subject to further review and potential adjustment.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. Accordingly, the Debtors and their directors, managers, officers, agents, attorneys and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein or the Schedules and Statements. In no event shall the Debtors or their directors, managers, officers, agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their directors, managers, officers, agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by David Gordon, Chief Financial Officer, and an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, David Gordon has relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors and other professionals. Given the scale of the Debtors' businesses, David Gordon has not (and practically could not have) personally verified the accuracy of each statement and representation in the Schedules and Statements, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

Subsequent receipt of information or an audit may result in material changes in financial data requiring amendment of the Schedules and Statements. Accordingly, the Schedules and Statements remain subject to further review and verification by the Debtors. The Debtors reserve their right to amend the Schedules and Statements from time-to-time as may be necessary or appropriate; *provided*, that the Debtors, their agents, and their advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein or to notify any third party should the information be updated, modified, revised, or recategorized, except as required by applicable law.

## Global Notes and Overview of Methodology

1. **Description of the Cases**. The Debtors commenced these voluntary cases under chapter 11 of the Bankruptcy Code on February 15, 2024 (the "Petition Date"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 15, 2024, the Court entered an order authorizing the joint administration of the cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 42]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements. The asset

information provided herein, except as otherwise noted, represents the asset data of the Debtors as of February 24, 2024, the date of the Debtors' month end closure to their balance sheet, and the liability data of the Debtors is as of the close of business on the Petition Date.

2.  **Global Notes Control**.  In the event that the Schedules or Statements differ from any of the Global Notes, the Global Notes shall control.

3.  **Reservation of Rights**.  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist.  The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate but do not undertake any obligation to do so, except as required by applicable law.  Nothing contained in the Schedules, Statements, or Global Notes shall constitute a waiver of rights with respect to these chapter 11 cases including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

    a.  **No Admission.**  Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any claim against any Debtor, any assertion made therein or herein, or a waiver of any of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

    b.  **Claims Description**.  Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated."  Each Debtor reserves the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on its Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."  The listing of a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules and Statements accordingly.

    c.  **Recharacterization**.  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  Nevertheless, due to the complexity of the Debtors' businesses, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items.  Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate,

including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

d.    **Classifications**.  The listing of (a) a claim (i) on Schedule D as "secured," or (ii) on Schedule E/F as either "priority" or "unsecured," or (b) a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection or otherwise.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken.  Except as provided in an order of the Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim, including whether a lien or security interest is properly perfected under applicable law or subject to any potential avoidance actions.

e.    **Estimates and Assumptions**.  The preparation of the Schedules and Statements required the Debtors to make certain reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses as of the Petition Date.  Actual results could differ materially from such estimates.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

f.    **Causes of Action**.  Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all rights with respect to any causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have (collectively, "Causes of Action"), and

4

neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, Causes of Action, or avoidance actions, or in any way prejudice or impair the assertion of such claims or Causes of Action.

g.   **Property Rights**.  Exclusion of certain property rights, including without limitation intellectual, real, personal, or otherwise, from the Schedules and Statements should not be construed as an admission that such property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain property rights shall not be construed to be an admission that such property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute property rights to the rightful Debtor owner, however, in some instances, property rights owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all property rights.

h.   **Insiders**.  In the circumstances where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to the individuals and entities whom the Debtors believe may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods.  Such individuals may no longer serve in such capacities. The listing or omission of a party as an "insider" for the purposes of the Schedules and Statements is for informational purposes and is not intended to be nor should be construed as an admission that those parties are insiders for purposes of section 101(31) of the Bankruptcy Code.  Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for:  (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity (or the Debtors) could successfully argue that they are not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, certain of the individuals or entities identified as insiders may not have been insiders for the entirety of the twelve-month period before the Petition Date, but the Debtors have included them herein out of an abundance of caution.  The Debtors reserve all rights with respect thereto.

4. **Methodology**

    a.    **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include financial information for the Debtors and certain non-Debtor affiliates.  Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under GAAP.  Therefore, these Schedules and Statements neither purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors.  Unlike the consolidated financial statements, these Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor.  Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

        The Debtors attempted to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the proper Debtor entity.  However, due to limitations within Debtors' accounting systems, it is possible that not all assets, liabilities, or amounts of cash disbursements have been recorded with the correct legal entity on the Schedules and Statements.  Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

        Given, among other things, the uncertainty surrounding the collection, ownership, and valuation of certain assets and the amount and nature of certain liabilities, a Debtor may report more assets than liabilities.  Such report shall not constitute an admission that such Debtor was solvent on the Petition Date or at any time prior to or after the Petition Date.  Likewise, a Debtor reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent on the Petition Date or at any time prior to or after the Petition Date.  For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value.  The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

    b.    **Reporting Date**.  Unless otherwise noted, the Schedules and Statements generally reflect the Debtors' books and records as of the close of business on February 24, 2024, adjusted for certain authorized payments under the First Day Orders (as defined herein).

    c.    **Confidentiality or Sensitive Information**.  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (*e.g.*, personally identifiable information of individuals), or concerns for the privacy of the Debtors' creditors and clients.  The alterations will be limited to only what is necessary to protect the

Debtors or the applicable third party.  The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court authorizing the Debtors to redact, seal, or otherwise protect such information from public disclosure.[2]

d.   **Consolidated Entity Accounts Payable and Disbursement Systems**.  Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Statement 4, Schedule A/B, and Schedule E/F, respectively, per the Debtors' unaudited books and records.  As described more fully in the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Perform Intercompany Transactions; and (II) Granting Related Relief* [Docket No. 15] (the "Cash Management Motion"), the Debtors utilize an integrated, centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated by their operations (the "Cash Management System").  The Debtors maintain a consolidated accounts payable and disbursements system to pay operating and administrative expenses through various disbursement accounts.

The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise.  For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables including, but not limited to, with respect to the characterization of intercompany claims, loans, and notes.

Prior to the Petition Date, the Debtors and certain non - Debtor affiliates engaged in intercompany transactions (the "Intercompany Transactions") in the ordinary course of business, which resulted in intercompany receivables and payables (the "Intercompany Claims").  The Debtors maintain strict records of the Intercompany Claims and can ascertain, trace, and account for all Intercompany Transactions.  Pursuant to the final order approving the Cash Management Motion [Docket No. 293], the Court has granted the Debtors authority to continue to engage in Intercompany Transactions in the ordinary course of business subject to certain limitations set forth therein.  Thus, intercompany balances as of the Petition Date, as set forth in Schedule A/B and Schedule E/F may not accurately reflect current positions.

In addition, certain of the Debtors act on behalf of other Debtors.  Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or

---

[2]   Such as the *Order (I) Authorizing the Debtors to File a Consolidated Creditor Matrix and List of the 30 Largest Unsecured Creditors; (II) Authorizing the Debtors to Redact Certain Personally Identifiable Information; (III) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information; and (IV) Granting Related Relief* [Docket No. 101].

obligation.  Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity is an obligor with respect to any such payment.  The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

e.      **Duplication**.  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have endeavored to only list once such assets, liabilities, and prepetition payments.

f.      **Net Book Value of Assets**.  In many instances, current market valuations are not maintained by or readily available to the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets.  As such, unless otherwise indicated, net book values as of the Petition Date are presented for all assets.  When necessary, the Debtors have indicated that the value of certain assets is "Unknown" or "Undetermined."  Amounts ultimately realized may vary materially from net book value (or other value so ascribed).  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements.  Assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date or any time prior to the Petition Date.

g.      **Currency**.  All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

h.      **Payment of Prepetition Claims Pursuant to First Day Orders**.  Following the Petition Date, the Court entered various orders authorizing the Debtors to, among other things, pay certain prepetition:  (i) service fees and charges assessed by the Debtors' banks; (ii) insurance obligations; (iii) employee wages, salaries, and related items (including, but not limited to, employee benefit programs and supplemental workforce obligations); (iv) taxes and assessments; (v) customer program obligations; and (vi) critical vendor obligations (collectively, with other relief granted by the Court with respect to motions filed by the Debtors on the Petition Date, the "First Day Orders").  Accordingly, outstanding liabilities may have been reduced by any Court-approved postpetition payments made on prepetition payables.  Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated.  The

Debtors reserve the right to update the Schedules and Statements to reflect payments made pursuant to an order of the Court (including the First Day Orders).

i.  **Other Paid Claims**.  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

j.  **Setoffs**.  The Debtors routinely incur setoffs in the ordinary course of business that arise from various items including, but not limited to, intercompany transactions, related-party transactions, counterparty settlements, pricing discrepancies, overpayments, returns, warranties, charge backs, credits, rebates, returns, refunds, negotiations, and/or disputes between the Debtors and their customers and/or suppliers.  These normal, ordinary course setoffs and nettings are common in the Debtors' line of business.  Due to the voluminous nature of setoffs and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction.  Therefore, these setoffs are not independently accounted for, and, accordingly, are excluded from the Schedules and Statements.  Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.

k.  **Accounts Receivable**.  The accounts receivable information listed on the Schedules includes receivables from the Debtors' customers and are calculated net of any amounts that, as of the Petition Date, may be owed to such customers in the form of offsets or other price adjustments pursuant to the Debtors' customer program policies and day-to-day operating policies and any applicable Court order.

l.  **Property and Equipment**.  Unless otherwise indicated, owned property and equipment are stated at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  To the extent possible, any such leases are set forth in the Schedules and Statements.  Nothing in the Statements or Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues including, but not limited to, the recharacterization thereof.

m.  **Liens**.  The inventory, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, or other liens that may attach (or have attached) to such property and equipment. UCC liens as of the Petition Date, if any, are listed on Schedule D.  The Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be perfected by a creditor.

n.  **Excluded Assets and Liabilities**.  Certain liabilities resulting from accruals, liabilities recognized in accordance with GAAP, and/or estimates of long-term liabilities either are not payable at this time or have not yet been reported.  Therefore, they do not represent specific claims as of the Petition Date and are not otherwise set forth in the Schedules.  Additionally, certain deferred assets, charges, accounts or reserves recorded for GAAP reporting purposes only, and certain assets with a net book value of zero are not included in the Schedules.  Excluded categories of assets and liabilities include, but are not limited to, deferred tax assets and liabilities, deferred income, deferred charges, self-insurance reserves, favorable lease rights, and unfavorable lease liabilities.  In addition, and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court.  Other immaterial assets and liabilities may have been excluded.

o.  **Undetermined Amounts**.  The description of an amount as "unknown," or "undetermined" is not intended to reflect upon the materiality of such amount.

p.  **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined."  If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

q.  **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and postpetition payments, if applicable.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including but not limited to, the right to assert claims objections and/or setoffs with respect to the same.

r.  **Guarantees and Other Secondary Liability Claims**.  The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liability claims (the "Guarantees") in their secured financings, debt instruments, and other agreements.  However, a review of these agreements, specifically the Debtors' unexpired leases and executory contracts, is ongoing.  Where such Guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors.  The Debtors have reflected the obligations under the Guarantees for both the primary obligor and the guarantors with respect to their secured financings and debt instruments on Schedule H.  Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt

10

instruments, and other agreements inadvertently may have been omitted. The Debtors may identify additional Guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional Guarantees are identified.

s.    **Leases**. In the ordinary course of their business, the Debtors may lease property from certain third-party lessors for use in the daily operation of their business. Any such leases are set forth in Schedule G and any amount due under such leases that was outstanding as of the Petition Date is listed on Schedule E/F. The property subject to any of such leases is not reflected in Schedule A/B as either owned property or assets of the Debtors nor is such property reflected in the Debtors' Statements as property or assets of third parties within the control of the Debtors.

t.    **Executory Contracts and Unexpired Leases**. Although the Debtors made diligent efforts to attribute each executory contract and unexpired lease to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts and unexpired leases, including the right to amend Schedule G. In addition, although the Debtors have made diligent attempts to properly identify executory contracts and unexpired leases, the inclusion or omission of a contract or lease on Schedule G does not constitute an admission or waiver as to the executory or unexpired nature (or non-executory or expired nature) of the contract or lease, or an admission as to the existence or validity of any Claims held by any counterparty to such contract or lease. Furthermore, while the Debtors have made diligent attempts to properly identify all executory contracts and unexpired leases, inadvertent errors, omissions, or over-inclusion may have occurred.

u.    **Allocation of Liabilities**. The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

v.    **Unliquidated Claim Amounts**. Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

## Specific Schedule Disclosures

Schedules A/B, D, E/F, G, and H may contain explanatory or qualifying notes that pertain to the information provided in the Schedules. Those Schedule-specific notes are incorporated herein by reference. Unless otherwise noted, the asset totals listed on the Schedules are derived from amounts included in the Debtors' books and records as of January 31, 2024. To the extent

there are unknown or undetermined amounts, the actual total may be different from the total listed.

1. **Schedule A/B**

   a.   **Part 1**.  Robertshaw's Cash Management System is composed of 58 bank accounts, (each, a "Bank Account" and, collectively, the "Bank Accounts").  Of those Bank Accounts, 6 are owned and controlled by the Debtors (the "Debtor Bank Accounts") and the remaining 52 are owned and controlled by non-Debtor affiliates that are direct and indirect subsidiaries of certain Debtors.  The Debtor Bank Accounts are located in the United States and maintained with Bank of America, N.A. ("Bank of America").  Further details with respect to the Cash Management System are provided in the Cash Management Motion.

   b.   **Part 2**.  The Debtors maintain certain deposits in the ordinary course of their business operations.  These deposits are included in the Schedules for the appropriate legal entity.  Types of deposits include, among other things, security deposits, and utility deposits.  Certain prepaid or amortized assets are not listed in Part 2 in accordance with the Debtors' accounting policies.  The amounts listed in Part 2 do not necessarily reflect values that the Debtors will be able to collect or realize.

   c.   **Part 3**.  The Debtors' accounts receivable information includes receivables from the Debtors' customers or third parties, which are calculated net of any amounts that, as of the Petition Date, may be owed to such parties in the form of offsets or other price adjustments pursuant to the Debtors' customer programs and day-to-day operations or may, in the Debtors' opinion, be difficult to collect from such parties due to the passage of time or other circumstances.  The Debtors do not indicate the age of accounts receivables in these Schedules and Statements.  The accounts receivable balances in this section exclude intercompany receivables.

   d.   **Part 4**.  Part 4 identifies only subsidiaries owned directly by the Debtor entity.  Subsidiaries owned indirectly by the Debtor entity are not listed.

   e.   **Part 5**.  The Debtors' inventory is valued on a mark to market basis. Furthermore, the Debtors may have acquired certain inventory within twenty (20) days before the Petition Date, but the Debtors may have not yet determined the amount or value of such inventory.  The Debtors reserve all rights with respect to the valuation of any inventories.

   f.   **Part 7**.  Actual realizable values may vary significantly relative to net book values as of the Petition Date.

   g.   **Part 8**.  Property leased by the Debtors is listed in Schedule G and is not listed in Part 8 of Schedule A/B, with the exception of any lease or security deposits for such property, which is listed on Schedule A/B.  Actual realizable values of the assets identified may vary significantly relative to net book values as of the Petition Date.

h.     **Part 9**.  Property leased by the Debtors is listed in Schedule G and is not listed in Part 9 of Schedule A/B, with the exception of any lease or security deposits for such property, which is listed on Schedule A/B.  Actual realizable values of the assets identified may vary significantly relative to net book values as of the Petition Date.  The Debtors reserve all rights to re-characterize their interests in real property at a later date.

i.     **Part 10**.  Part 10 identifies the various trademarks, patents, environmental permits and website domains owned and maintained by the Debtors.  The Schedules do not list the value of such intangible assets as no recent appraisals have been performed.  Various software licenses the Debtors use for their operations which are easily obtainable and hold minimal value are not included.

j.     **Part 11**.  The Debtors maintain a portfolio of insurance policies to protect against unforeseen incidents and losses and describe such policies in the *Order (I) Authorizing the Debtors to (A) Continue Their Insurance Coverage, (B) Pay All Insurance Obligations, (C) Maintain Their Surety Bonds, and (D) Pay All Bonding Obligations; (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Granting Related Relief* [Docket No. 103] (the "Insurance Order").  This listing does not include any policies owned by suppliers to which one or more Debtor entities may have been added as a beneficiary.

## 2.  Schedule D

a.     The claims listed on Schedule D, as well as the guarantees of those claims listed on Schedule H, arose and were incurred on various dates.  To the best of the Debtors' knowledge, all claims listed on Schedule D arose, or were incurred before the Petition Date.

b.     Except as otherwise agreed or stated pursuant to a stipulation, agreed order, or general order entered by the Court that is or becomes final, the Debtors and/or their estates reserve their right to dispute and challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows:  (a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken, and (b) the descriptions provided on Schedule D are intended to be a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

c.     The Debtors have not listed on Schedule D any parties whose claims may be secured through rights of setoff, deposits, or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights.  The Debtors have not

investigated which of the claims may include such rights, and their population is currently unknown.

3. **Schedule E/F**

    a.    **Part 1**. The claims listed on Part 1 arose and were incurred on various dates. A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, no such dates are included for each claim listed on Part 1. To the best of the Debtors' knowledge, all claims listed on Part 1 arose or were incurred before the Petition Date.

            The Debtors have not listed any wage or wage-related obligations or any tax or tax-related obligations that the Debtors have paid pursuant to the First Day Orders on Part 1. The Debtors believe that all such claims for wages, salaries, expenses, benefits and other compensation and all such claims for tax liabilities that accrued prepetition, as described in the First Day Orders, have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the Debtors in the relevant First Day Orders. The Debtors reserve their right to dispute or challenge whether creditors listed on Part 1 are entitled to priority claims under the Bankruptcy Code.

            Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on Part 1. Certain of such claims, however, may be subject to ongoing audits and/or the Debtors may otherwise be unable to determine with certainty the amount of the remaining claims listed on Part 1.

            Therefore, the Debtors have listed all such claims as contingent and unliquidated, pending final resolution of ongoing audits or other outstanding issues.

    b.    **Part 2**. The Debtors have exercised their reasonable efforts to list all liabilities on Part 2 of each applicable Debtor's Schedule. As a result of the Debtors' consolidated operations, however, Part 2 for each Debtor should be reviewed in these cases for a complete understanding of the unsecured claims against the Debtors. Certain creditors listed on Part 2 may owe amounts to the Debtors and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Part 2 may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor. Additionally, certain creditors may assert mechanics' or other similar liens against the Debtors for amounts listed on Part 2. The Debtors reserve their right to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor listed on Part 2 of any Debtor. In addition, certain claims listed on Part 2 may potentially be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

            The Debtors have made reasonable efforts to include all unsecured creditors on Part 2 including, but not limited to, software companies, landlords, utility companies,

consultants, and other service providers. The Debtors, however, believe the possibility exists that there are instances where creditors have yet to provide proper invoices for prepetition goods or services. While the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and have not been included on Part 2.

Unless otherwise noted, the claims listed on Part 2 are based on the Debtors' books and records as of the Petition Date. The Debtors have excluded workers' compensation claims from the Statements because the Debtors are fully insured for and continue to honor their workers' compensation obligations in the ordinary course in accordance with the *Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses; and (B) Continue Employee Benefits Programs; and (II) Granting Related Relief Emergency Motion* [Docket No. 104] (the "Wages Order").

Part 2 does not include certain balances including deferred liabilities, accruals, or reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals primarily represent estimates of liabilities and do not represent specific claims as of the Petition Date.

Part 2 does not include reserves for liabilities that may have arisen under litigation in which a Debtor is a defendant unless there is a final judgment or a settlement agreement.

The claims of individual creditors may not reflect credits and/or allowances due from creditors to the applicable Debtor. The Debtors reserve all of their rights with respect to any such credits and/or allowances, including the right to assert objections and/or setoffs or recoupments with respect to same.

The Court has authorized the Debtors to pay, in their discretion, certain non-priority unsecured claims pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date, adjusted for postpetition payments made under some or all of the First Day Orders. Each Debtor's Schedule E/F will reflect some of that Debtor's payment of certain claims pursuant to the First Day Orders, and, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during these chapter 11 cases pursuant to the First Day Orders and other orders of the Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claims. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

As of the time of filing of the Schedules and Statements, the Debtors have not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in

Schedules D and E/F may be incomplete. The Debtors reserve their rights, but undertake no obligations, to amend Schedules D and E/F if, or when, the Debtors receive such invoices. The Debtors have scheduled liabilities related to accounts payable based on the legal entities listed in association with the applicable charges in the Debtors' various accounts payable systems. Accordingly, the legally liable Debtor entities (if any) may differ from the entities scheduled.

**4.  Schedule G**

a.  Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "Agreements"), the Debtors' review process of the Agreements is ongoing and inadvertent errors, omissions, or over-inclusion may have occurred.  The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements which may not be set forth in Schedule G.  Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease.  Schedule G may be amended at any time to add any omitted Agreements.  Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable.  The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments, and agreements which may not be listed on Schedule G.

b.  Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only for the Debtor entity that signed the original umbrella or master agreement.  Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate.  The master service agreements have been listed in Schedule G, but do not reflect any decision by the applicable Debtor as to whether or not such agreements are executory in nature.  Additionally, the Debtors may also place work and purchase orders under umbrella or master agreements, which may be considered executory contracts.  Disclosure of all of these purchase and work orders, however, is impracticable and unduly burdensome.  Accordingly, to the extent the Debtors have determined to disclose non-confidential umbrella or master agreements in Schedule G, purchase and work orders placed thereunder may have been omitted.  The Debtors have not listed non-disclosure, confidentiality, or related agreements on Schedule G.

**5.  Schedule H**

16

a.  The Debtors are party to various debt agreements which were executed by multiple Debtors. The guaranty obligations under prepetition secured credit agreements are noted on Schedule H for each individual Debtor. In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. To the extent such claims are listed elsewhere in the Schedules of each applicable Debtor, they have not been set forth individually on Schedule H. In the event that two or more Debtors are co-obligors with respect to a scheduled debt or guaranty, such debt or guaranty is listed in the Schedules and Statements of each such Debtor at the full amount of such potential claim. No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. To the extent these Global Notes include notes specific to Schedules D-G, such Global Notes also apply to the co-Debtors listed in Schedule H. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

### Specific Notes with Respect to the Debtors' Statements of Financial Affairs

1.  **Statement 1**. The income stated in the Debtors' response to Statement 1 is consistent with the consolidated sales disclosed in compliance with GAAP. The Debtors' fiscal year ends on the last day of each calendar year:

    a.  **FY 2022**: Comprised of consolidated revenues for the fiscal year ended March 31, 2022.

    b.  **FY 2023**: Comprised of consolidated revenues for the fiscal year ended March 31, 2023.

    c.  **Stub Period 2024**: Comprised of consolidated revenues for the 10 months ending February 24, 2024.

2.  **Statement 3**. As described in the Cash Management Motion, the Debtors utilize their integrated, centralized Cash Management System to collect, concentrate, and disburse funds generated by their operations.

    a.  The payments disclosed in Statement 3 are based on payments made by the Debtors with payment dates from November 17, 2023 to February 14, 2024. Amounts still owed to creditors will appear on the Schedules for each Debtor, as applicable.

    b.  Non-U.S. Dollar transactions are converted to U.S. Dollar using prevailing exchange rate for the week.

    c.  The response to Statement 3 excludes payments and disbursements or transfers for this period, which are listed, to the extent required, on Statement 4.

      d.      The response to Statement 3 excludes payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy for this period, which are listed on Statement 11.

      e.      While Nexeo Solutions Plastics, LLC ("Nexeo Plastics") is owned by One Rock Capital Partners II LP and One Rock Capital Partners II LP holds equity in the Debtors, the Debtors do not believe either Nexeo Plastics is an "insider" under the Bankruptcy Code.

3.   **Statement 4.** The company makes payments to benefit plans including medical, dental, life insurance and short - term disability which are not included in Statement 4. These payments are not made directly to the employees but are made to the respective programs on behalf of all the employees including any insiders.

4.   **Statement 7**. Information provided on Statement 7 includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial, or other adjudicative forum. While the Debtors believe they were diligent in their efforts, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to Statement 7. The Debtors reserve all of their rights to amend or supplement their response to Statement 7. Asbestos related litigations were spun off into an asbestos trust and are handled by an affiliate (Schneider Electric); such litigations are not included in Statement 7.

5.   **Statement 11**. All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on the applicable Debtor's response to Statement 11. Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications filed with the Court and related orders.

In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of their postpetition lenders or other parties.

6.   **Statement 16**. The Debtors collect a limited amount of information about customers and their representatives. Examples of the types of information collected by the Debtors include, among other things, name, mailing address, telephone number and banking information.

7.   **Statement 21**. The Debtors routinely have property belonging to their customers in facilities under their control. As the Debtors do not monitor and record such property and hold no ownership in this property, it is not included in the Debtors' books and records and is therefore not included in Statement 21.

8.   **Statements 22 - 24**. Asbestos and other environmental related proceedings are handled by a former affiliate (Schneider Electric) and the debtors do not have possession of information required in statements 22 – 24. Therefore, such proceedings and notifications are not included in Statements 22 - 24.

9. **<u>Statement 25</u>**.  The Debtors have used their reasonable efforts to identify the beginning and ending dates of all businesses in which the Debtors were a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the Petition Date.

10. **<u>Statement 26</u>**.  The Debtors provide certain parties such as banks, auditors, potential investors, vendors and financial advisors with financial statements that may not be part of a public filing. The Debtors do not maintain detailed records tracking such disclosures.

11. **<u>Statement 27</u>**.  Accounting policy for inventories requires that all locations conduct an annual physical inventory. The annual physical inventory includes 100% verification of raw materials, work in process, finished goods, goods in transit and other categories of inventory. The inventory count is observed in select locations by the Company's auditors, Grant Thornton.  After all book-to-physical variances are identified, verified and approved, adjustments are recorded in the perpetual inventory subledger and general ledger to accurately reflect the inventory quantities and valuation per US GAAP standards.

12. **<u>Statement 30</u>**.  Refer to Section 4 (*Methodology*) regarding all payments to insiders.

[*Remainder of page intentionally left blank.*]

# Schedule A/B: Assets - Real and Personal Property

| Part 1: | Cash and cash equivalents |
| --- | --- |

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| General Description | Type of Account (if applicable) | Last 4 digits of account # (if applicable) | Current value of debtor's interest |
| --- | --- | --- | --- |
| 2. **Cash on hand** | | | |
| 2.1 NONE | | | $0 |
| | | | |
| 3. **Checking, savings, money market, or financial brokerage accounts (Identify all)** | | | |
| 3.1 BANK OF AMERICA, N.A. | DEPOSITORY ACCOUNT | 4901 | $275,004 |
| 3.2 BANK OF AMERICA, N.A. | OPERATING ACCOUNT | 6384 | $4,604,339 |
| | | | |
| 4. **Other cash equivalents (Identify all)** | | | |
| 4.1 NONE | | | $0 |

5. **Total of Part 1.**
   Add lines 2 through 4. Copy the total to line 80.

   | **$4,879,343** |
   | --- |

# Schedule A/B: Assets - Real and Personal Property

| Part 2: | Deposits and prepayments |
|---------|--------------------------|

6. **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes. Fill in the information below.

| General Description | Current value of debtor's interest |
|---------------------|-----------------------------------|

7. **Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
Description, including name of holder of prepayment

9. **Total of Part 2.**
Add lines 7 through 8. Copy the total to line 81.

# Schedule A/B: Assets - Real and Personal Property

| Part 3: | Accounts receivable |
|---------|---------------------|

10. **Does the debtor have any accounts receivable?**
   - ☑ No. Go to Part 4.
   - ☐ Yes. Fill in the information below.

| General Description | Face or requested amount | Doubtful or uncollectable | Current value of debtor's interest |
|---------------------|--------------------------|---------------------------|-------------------------------------|

11. **Accounts receivable**

11.1  C. ALL ACCOUNTS RECEIVABLE:                                    -                                  =

12. **Total of Part 3.**
   Current value on lines 11a + 11b = line 12. Copy the total to line 82.

# Schedule A/B: Assets - Real and Personal Property

| Part 4: | Investments |
|---------|-------------|

13. **Does the debtor own any investments?**
☐ No. Go to Part 5.
☑ Yes. Fill in the information below.

| General Description | Valuation method used for current value | Current value of debtor's interest |
|---------------------|------------------------------------------|------------------------------------|

14. **Mutual funds or publicly traded stocks not included in Part 1**
Name of fund or stock:

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**
Name of entity:

15.1 ROBERTSHAW (THAILAND) LTD. (OWNERSHIP 100%)

15.2 ROBERTSHAW AUSTRALIA PTY LTD (OWNERSHIP 100%)

15.3 ROBERTSHAW CANADA INC (OWNERSHIP 100%)

15.4 ROBERTSHAW CHINA HOLDINGS, LLC (OWNERSHIP 100%)

15.5 ROBERTSHAW CONTROLS PRIVATE LIMITED (OWNERSHIP 99.99%)

15.6 ROBERTSHAW EUROPE HOLDINGS LLC (OWNERSHIP 100%)

15.7 ROBERTSHAW KOREA LLC (OWNERSHIP 100%)

15.8 ROBERTSHAW SRO (OWNERSHIP 100%)

15.9 ROBERTSHAW US HOLDING CORP. (OWNERSHIP 100%)

15.10 ROBERTSHAW, A.S. (OWNERSHIP 100%)

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**
Describe:

17. **Total of Part 4.**
Add lines 14 through 16. Copy the total to line 83.

| $0 |
|----|

# Schedule A/B: Assets - Real and Personal Property

| Part 5: | Inventory, excluding agriculture assets - detail |
|---------|--------------------------------------------------|

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.
☐ Yes. Fill in the information below.

| General Description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---------------------|-------------------------------------|-------------------------------------------------------|-----------------------------------------|------------------------------------|

19. **Raw materials**

20. **Work in progress**

21. **Finished goods, including goods held for resale**

22. **Other Inventory or supplies**

23. **Total of Part 5.**
    Add lines 19 through 22. Copy the total to line 84.

24. **Is any of the property listed in Part 5 perishable?**

☐ No.
☐ Yes.

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No.
☐ Yes.

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No.
☐ Yes.

# Schedule A/B: Assets - Real and Personal Property

| **Part 6:** | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☒ No. Go to Part 7.
☐ Yes. Fill in the information below.

| General Description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

28. **Crops-either planted or harvested**

29. **Farm animals**

30. **Farm machinery and equipment**

31. **Farm and fishing supplies, chemicals, and feed**

32. **Other farming and fishing-related property not already listed in Part 6**

33. **Total of Part 6.**
    Add lines 28 through 32. Copy the total to line 84.

34. **Is the debtor a member of an agricultural cooperative?**

☐ No.
☐ Yes.

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No.
☐ Yes.

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No.
☐ Yes.

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No.
☐ Yes.

# Schedule A/B: Assets - Real and Personal Property

**Part 7:**   Office furniture, fixtures, and equipment; and collectibles - detail

38.  **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.
☐ Yes. Fill in the information below.

| General Description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

39.  **Office furniture**

40.  **Office fixtures**

41.  **Office equipment, including all computer equipment and communication systems equipment and software**

42.  **Collectibles**

43.  **Total of Part 7.**
Add lines 39 through 42. Copy the total to line 84.

44.  **Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No.
☐ Yes.

45.  **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☐ No.
☐ Yes.

Case 24-90052   Document 400   Filed in TXSB on 04/01/24   Page 28 of 48

# Schedule A/B: Assets - Real and Personal Property

| Part 8: | Machinery, equipment, and vehicles |
|---------|-------------------------------------|

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| General Description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---------------------|------------------------------------------------------|----------------------------------------|-----------------------------------|

47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

48. **Watercraft, trailers, motors, and related accessories**

49. **Aircraft and accessories**

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

51. **Total of Part 8.**
    Add lines 47 through 50. Copy the total to line 84.

51. **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No.
☐ Yes.

52. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No.
☐ Yes.

# Schedule A/B: Assets - Real and Personal Property

| Part 9: | Real property - detail |
|---|---|

54. **Does the debtor own or lease any real property?**

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Description and location of property | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

56. **Total of Part 9.**
Add the current value on all Question 55 lines and entries from any additional sheets. Copy the total to line 88.

57. **Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No.
☐ Yes.

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☐ No.
☐ Yes.

# Schedule A/B: Assets - Real and Personal Property

| Part 10: | Intangibles and intellectual property - detail |
|---|---|

59. **Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.
☐ Yes. Fill in the information below.

| General Description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

60. **Patents, copyrights, trademarks, and trade secrets**

61. **Internet domain names and websites**

62. **Licenses, franchises, and royalties**

63. **Customer lists, mailing lists, or other compilations**

64. **Other intangibles, or intellectual property**

65. **Goodwill**

66. **Total of Part 10.**
Add lines 60 through 65. Copy the total to line 89.

67. **Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?**

☐ No.
☐ Yes.

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☐ No.
☐ Yes.

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☐ No.
☐ Yes.

# Schedule A/B: Assets - Real and Personal Property

**Part 11:**  All other assets

---

70. **Does the debtor own any other assets that have not yet been reported on this form? Include all interests in executory contracts and unexpired leases not previously reported on this form.**

    ☐ No. Go to Part 12.
    ☑ Yes. Fill in the information below.

| General Description | Current value of debtor's interest |
|---|---|

71. **Notes receivable**

72. **Tax refunds and unused net operating losses (NOLs)**

| | |
|---|---|
| 72.1  GENERAL BUSINESS CREDIT - STATE OF IL | $552,252 |
| 72.2  GENERAL BUSINESS CREDIT - US FEDERAL | $1,119,408 |
| 72.3  NET OPERATING LOSS - STATE OF CA | $492,236 |
| 72.4  NET OPERATING LOSS - STATE OF IL | $450,955 |
| 72.5  NET OPERATING LOSS - STATE OF KY | $126,091 |
| 72.6  NET OPERATING LOSS - US FEDERAL | UNKNOWN |
| 72.7  TAX OVERPAYMENT CREDITED TO FY24 - STATE OF CA | $16,576 |
| 72.8  TAX OVERPAYMENT CREDITED TO FY24 - STATE OF IL | $79,959 |
| 72.9  TAX OVERPAYMENT CREDITED TO FY24 - STATE OF KY | $29,196 |
| 72.10  TAX REFUND - US FEDERAL | $965,500 |

73. **Interests in insurance policies or annuities**

| | |
|---|---|
| 73.1  $5M XS $10M EXCESS D&O AND EPL | UNKNOWN |
| 73.2  $5M XS $15M SIDE A D&O | UNKNOWN |
| 73.3  $5M XS $5M EXCESS CRIME | UNKNOWN |
| 73.4  $5M XS $5M EXCESS D&O AND EPL | UNKNOWN |
| 73.5  CREDIT INSURANCE | UNKNOWN |
| 73.6  CYBERINSURANCE | UNKNOWN |
| 73.7  ENVIRONMENTAL (PREMISES POLLUTION) | UNKNOWN |
| 73.8  PRIMARY D&O, EPL, FIDUCIARY, CRIME | UNKNOWN |
| 73.9  PROPERTY DAMAGE – MEXICO | UNKNOWN |
| 73.10  PROPERTY DAMAGE - US | UNKNOWN |

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

76. **Trusts, equitable or future interests in property**

77. **Other property of any kind not already listed Examples: Season tickets, country club membership**

# Schedule A/B: Assets - Real and Personal Property

| Part 11: | All other assets |
|---|---|

| | | |
|---|---|---:|
| 77.1 | INTERCOMPANY BALANCE WITH ROBERTSHAW CONTROLS COMPANY | $234,191,857 |
| 77.2 | INTERCOMPANY BALANCE WITH ROBERTSHAW EUROPE HOLDINGS II LIMITED | $16,168 |
| 77.3 | INTERCOMPANY BALANCE WITH ROBERTSHAW US HOLDING CORP. | $31,919,344 |

78. **Total of Part 11.**
Add lines 71 through 77. Copy the total to line 90.

$269,959,542 + **UNDETERMINED**

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No.
☐ Yes.

Case 24-90052   Document 400   Filed in TXSB on 04/01/24   Page 33 of 48

# Schedule A/B: Assets - Real and Personal Property

| **Part 12:** | Summary |
|---|---|

| Type of property | Current value of personal property | Current value of real property | Total of all property |
|---|---|---|---|
| 80. Cash, cash equivalents, and financial assets. Copy line 5, Part 1. | $4,879,343 | | |
| 81. Deposits and prepayments. Copy line 9, Part 2. | $0 | | |
| 82. Accounts receivable. Copy line 12, Part 3. | $0 | | |
| 83. Investments. Copy line 17, Part 4. | $0 | | |
| 84. Inventory. Copy line 23, Part 5. | $0 | | |
| 85. Farming and fishing-related assets. Copy line 33, Part 6. | $0 | | |
| 86. Office furniture, fixtures, and equipment; and collectibles. Copy line 43, Part 7. | $0 | | |
| 87. Machinery, equipment, and vehicles. Copy line 51, Part 8. | $0 | | |
| 88. Real property. Copy line 56, Part 9. | | $0 | |
| 89. Intangibles and intellectual property. Copy line 66, Part 10. | $0 | | |
| 90. All other assets. Copy line 78, Part 11. | $269,959,542 | | |
| 91. Total. Add lines 80 through 90 for each column. | $274,838,884 | $0 | |

| | |
|---|---|
| 92. **Total of all property on Schedule A/B. Lines 91a + 91b = 92.** | **$274,838,884** |

# Schedule D: Creditors Who Have Claims Secured by Property

**Part 1:**    **List Creditors Who Have Secured Claims**

1. **Do any creditors have claims secured by debtor's property?**

   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

   ☑ Yes. Fill in the information below.

| Creditor's Name and Mailing Address, E-mail Address & An Account Number | Co-Interest | Insider | Co-Debtor | Date Claim was Incurred, Property Description, Lien & Co-Interest Creditor | C - U - D | Amount of Claim | Value of Collateral |
|---|---|---|---|---|---|---|---|

2. **List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.**

### Super - Priority Credit Facility

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2.1 ACQUIOM AGENCY SERVICES LLC, 950 17TH STREET, DENVER, CO, 80202 | ☐ | ☐ | ☑ | DATE: 05/09/2023<br>-<br>LIEN DESCRIPTION: SUBSTANTIALLY ALL OF THE DEBTORS EQUITY INTERESTS AND MATERIAL REAL PROPERTY | ☑ ☐ ☐ | $736,229,267 | |

| | | |
|---|---|---|
| **Super - Priority Credit Facility Total:** | **$736,229,267** | **$0** |

### UCC Lien

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2.2 ACQUIOM AGENCY SERVICES LLC, AS ADMINISTRATIVE AGENT, 950 17TH STREET, DENVER, CO, 80202 | ☐ | ☐ | ☐ | UNKNOWN<br>-<br>LIEN DESCRIPTION: AS PER LIEN NUMBER 20234694138 | ☑ ☑ ☑ | | |
| 2.3 ACQUIOM AGENCY SERVICES LLC, AS ADMINISTRATIVE AGENT, 950 17TH STREET, DENVER, CO, 80202 | ☐ | ☐ | ☐ | UNKNOWN<br>-<br>LIEN DESCRIPTION: AS PER LIEN NUMBER 20233516993 | ☑ ☑ ☑ | | |
| 2.4 ACQUIOM AGENCY SERVICES LLC, AS ADMINISTRATIVE AGENT, 950 17TH STREET, DENVER, CO, 80202 | ☐ | ☐ | ☐ | UNKNOWN<br>-<br>LIEN DESCRIPTION: AS PER LIEN NUMBER 20234694146 | ☑ ☑ ☑ | | |

# Schedule D: Creditors Who Have Claims Secured by Property

**Part 1:**    **List Creditors Who Have Secured Claims**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2.5 | ACQUIOM AGENCY SERVICES LLC, AS ADMINISTRATIVE AGENT, 950 17TH STREET, DENVER, CO, 80202 | ☐ | ☐ | ☐ | UNKNOWN<br>-<br>LIEN DESCRIPTION: AS PER LIEN NUMBER 20233516969 | ☑ ☑ ☑ | | |
| 2.6 | ACQUIOM AGENCY SERVICES LLC, AS COLLATERAL AGENT, 950 17TH STREET, DENVER, CO, 80202 | ☐ | ☐ | ☐ | UNKNOWN<br>-<br>LIEN DESCRIPTION: AS PER LIEN NUMBER 20233506838 | ☑ ☑ ☑ | | |
| 2.7 | DEUTSCHE BANK AG NEW YORK BRANCH AS COLLATERAL AGENT, 60 WALL STREET, NEW YORK, NY, 10005 | ☐ | ☐ | ☐ | UNKNOWN<br>-<br>LIEN DESCRIPTION: AS PER LIEN NUMBER 20197582923 | ☑ ☑ ☑ | | |
| 2.8 | DEUTSCHE BANK AG NEW YORK BRANCH AS COLLATERAL AGENT, 60 WALL STREET, NEW YORK, NY, 10005 | ☐ | ☐ | ☐ | UNKNOWN<br>-<br>LIEN DESCRIPTION: AS PER LIEN NUMBER 20187573591 | ☑ ☑ ☑ | | |
| 2.9 | DEUTSCHE BANK AG NEW YORK BRANCH, AS COLLATERAL AGENT, 600 WALL STREET, NEW YORK, NY, 10005 | ☐ | ☐ | ☐ | UNKNOWN<br>-<br>LIEN DESCRIPTION: AS PER LIEN NUMBER 20187586296 | ☑ ☑ ☑ | | |

**UCC Lien Total:**   $0     $0

**US 1L Term Loan**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2.10 | ACQUIOM AGENCY SERVICES LLC, 950 17TH STREET, DENVER, CO, 80202 | ☐ | ☐ | ☑ | DATE: 02/28/2018<br>-<br>LIEN DESCRIPTION: SUBSTANTIALLY ALL OF THE DEBTORS EQUITY INTERESTS AND MATERIAL REAL PROPERTY | ☑ ☐ ☐ | $83,418,088 | |

**US 1L Term Loan Total:**   $83,418,088     $0

**US 2L Term Loan**

Case 24-90053   Document 400   Filed in TXSB on 04/01/24   Page 36 of 48

# Schedule D: Creditors Who Have Claims Secured by Property

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

| 2.11 | ACQUIOM AGENCY SERVICES LLC, 950 17TH STREET, DENVER, CO, 80202 | ☐ | ☐ | ☑ | DATE: 02/28/2018 - LIEN DESCRIPTION: SUBSTANTIALLY ALL OF THE DEBTORS EQUITY INTERESTS AND MATERIAL REAL PROPERTY | ☑ | ☐ | ☐ | $17,673,315 | |

|  |  |  |  | **US 2L Term Loan Total:** | **$17,673,315** | **$0** |
|---|---|---|---|---|---|---|

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**   **$837,320,670**

# Schedule D: Creditors Who Have Claims Secured by Property

| **Part 2:** | List Others to Be Notified for a Debt Already Listed in Part 1 |
|---|---|

| Name and Mailing Address | Part 1 Line on which the Related Creditor was Listed | Last 4 Digits of Account Number for this Entity |
|---|---|---|

4. **List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors**

# Schedule E/F: Creditors Who Have Unsecured Claims

| Part 1: | List All Creditors with PRIORITY Unsecured Claims |
|---|---|

1. **Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).**

   ☐ No. Go to Part 2.
   ☑ Yes. Go to line 2.

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C - U - D | | | Offset | Total Claim | Priority Amount |
|---|---|---|---|---|---|---|---|
| 2. **List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.** | | | | | | | |
| 2.1 ALABAMA DEPARTMENT OF REVENUE, 50 N. RIPLEY STREET, MONTGOMERY, AL, 36130 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.2 ASSESSOR-COUNTY CLERK-RECORDER OF RIVERSIDE COUNTY, CALIFORNIA, COUNTY ADMINISTRATIVE CENTER, RIVERSIDE, CA, 92501-3659 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.3 CALIFORNIA FRANCHISE TAX BOARD, PO BOX 942857, SACRAMENTO, CA, 94257 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.4 CITY OF ST. LOUIS, COLLECTOR OF REVENUE, 122 MARKET, ST. LOUIS, MO, 63103 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.5 DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, KANSAS CITY, MO, 64999-0012 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.6 GEORGIA DEPARTMENT OF REVENUE, 1800 CENTURY BOULEVARD, NE ATLANTA, GA, 30345 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.7 ILLINOIS DEPARTMENT OF REVENUE, P O BOX 19035 CARD LEVY, SPRINGFIELD, IL, 62794-9035 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.8 ILLINOIS DEPARTMENT OF REVENUE, P O BOX 19035 CARD LEVY, SPRINGFIELD, IL, 62794-9035 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.9 INDIANA DEPARTMENT OF REVENUE, 100 N SENATE AVENUE, INDIANAPOLIS, IN, 46204 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.10 KENTUCKY DEPARTMENT OF REVENUE, 501 HIGH STREET, FRANKFORT, KY, 40601 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.11 MASSACHUSETTS DEPARTMENT OF REVENUE, 200 ARLINGTON STREET, CHELSEA, MA, 2150 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.12 MICHIGAN DEPARTMENT OF TREASURY, MICHIGAN DEPARTMENT OF TREASURY, LANSING, MI, 48922 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.13 MISSOURI DEPARTMENT OF REVENUE, HARRY S TRUMAN STATE OFFICE BUILDING, JEFFERSON CITY, MO, 65101 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.14 OHIO DEPARTMENT OF TAX, PO BOX 2678, COLUMBUS, OH, 43216-2678 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.15 OKLAHOMA TAX COMMISSION, PO BOX 26800, OKLAHOMA CITY, OK, 73126-0800 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |

# Schedule E/F: Creditors Who Have Unsecured Claims

**Part 1:** List All Creditors with PRIORITY Unsecured Claims

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2.16 | PENNSYLVANIA DEPARTMENT OF REVENUE, PO BOX 280407, HARRISBURG, PA, 17128-0427 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.17 | TENNESSEE DEPARTMENT OF REVENUE, ANDREW JACKSON BUILDING, NASHVILLE, TX, 37242 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.18 | TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, LYNDON B. JOHNSON STATE OFFICE BUILDING, AUSTIN, TX, 78774 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.19 | UTAH STATE TAX COMMISSION, 210 N 1950 W, SALT LAKE CITY, UT, 84134-0180 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.20 | VILLAGE OF ITASCA, 550 W IRVING PARK RD, ITASCA, IL, 60143-1795 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| 2.21 | WASHINGTON STATE DEPARTMENT OF REVENUE, TAXPAYER ACCOUNT ADMINISTRATION DIVISION, OLYMPIA, WA, 98504-7476 | UNKNOWN ACCOUNT NO: | ☑ | ☑ | ☐ | ☐ | $0 | $0 |

2. **Total: All Creditors with PRIORITY Unsecured Claims**    $0    $0

# Schedule E/F: Creditors Who Have Unsecured Claims

### Part 2:   List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C - U - D | Basis for Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.**

| | | | | | |
|---|---|---|---|---|---|
| 3.1   ROBERTSHAW ITALY S.R.L., ITALIAN ENGINEERING AND SALE, CINISELLO BALSAMO, MI, ITALY | UNKNOWN ACCOUNT NO: | ☐ ☐ ☐ | INTERCOMPANY BALANCE | ☐ | $589,732 |

3.   **Total: All Creditors with NONPRIORITY Unsecured Claims**      **$589,732**

# Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |

| Creditor's Name, Mailing Address Including Zip Code | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number for this entity |
| --- | --- | --- |

3. **List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.**

# Schedule E/F: Creditors Who Have Unsecured Claims

**Part 4:**     **Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. **Add the amounts of priority and nonpriority unsecured claims.**

5. **a. Total claims from Part 1**                                                          **$0**

5. **b. Total claims from Part 2**                                                    **$589,732**

5. **c. Total of Parts 1 and 2**
   Lines 5a + 5b = 5c.                                                                 **$589,732**

# Schedule G: Executory Contracts and Unexpired Leases

**Part 1:**

1. **Does the debtor have any executory contracts or unexpired leases?**

   ☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

   ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|

2. **List all contracts and unexpired leases**

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2.1 CYBERINSURANCE | 1 YEAR | | ☐ | STEADFAST INSURANCE COMPANY | 167 S STATE ST #175, WESTERVILLE, OH, 43081 |
| 2.2 PROPERTY DAMAGE – MEXICO | 1 YEAR | | ☐ | MAPFRE MEXICO S.A. | LUZ SAVIÑÓN 1354 E-2, NARVARTE, ESQ. AV. CUAUHTÉMOC, CIUDAD DE MÉXICO, CDMX, 3020, MEXICO |
| 2.3 EMPLOYMENT AGREEMENT - JOHN HEWITT | | | ☐ | JOHN HEWITT | ON FILE |
| 2.4 ENVIRONMENTAL (PREMISES POLLUTION) | 2 YEAR | | ☐ | ILLINOIS UNION INSURANCE COMPANY | 525 WEST MONROE STREET SUITE 700, CHIACGO, IL, 60661 |
| 2.5 PROPERTY DAMAGE - US | 1 YEAR | | ☐ | HARTFORD FIRE INSURANCE COMPANY | ONE HARTFORD PLAZA, HARTFORD, CT, 6155 |
| 2.6 PRIMARY D&O, EPL, FIDUCIARY, CRIME | 2 YEAR | | ☐ | EVEREST NATIONAL INSURANCE COMPANY | 477 MARTINSVILLE ROAD PO BOX 830, LIBERTY CORNER, NJ, 7938 |
| 2.7 $5M XS $5M EXCESS CRIME | 2 YEAR | | ☐ | BEAZLEY INSURANCE COMPANY, INC. | 30 BATTERSON PARK ROAD, FARMINGTON, CT, 6032 |
| 2.8 CREDIT INSURANCE | 1 YEAR | | ☐ | AMYNTA GROUP | 909 3RD AVENUE, 33RD FLOOR, NEW YORK, NY, 10022 |
| 2.9 $5M XS $10M EXCESS D&O AND EPL | 2 YEAR | | ☐ | ALLIANZ GLOBAL RISKS US INSURANCE COMPANY | 1465 N MCDOWELL BLVD SUITE 100, PETALUMA, CA, 94954 |
| 2.10 PREMIUM FINANCE AGREEMENT PROMISSORY NOTE | | | ☐ | AFCO INSURANCE PREMIUM FINANCE | ATTN: GENERAL COUNSEL, LAKE FOREST, IL, 60045 |

# Schedule G: Executory Contracts and Unexpired Leases

**Part 1:**

| | | | | |
|---|---|---|---|---|
| 2.11  $5M XS $5M EXCESS D&O AND EPL | 2 YEAR | ☐ | ACE AMERICAN INSURANCE COMPANY | 436 WALNUT STREET, PHILADELPHIA, PA, 19106 |
| 2.12  $5M XS $15M SIDE A D&O | 2 YEAR | ☐ | ACE AMERICAN INSURANCE COMPANY | 436 WALNUT STREET, PHILADELPHIA, PA, 19106 |

**Total number of contracts**

**12**

# Schedule H: Codebtors

**Part 1:**

1. **Does the debtor have any codebtors?**

   ☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

   ☑ Yes

| Codebtor Name and Mailing Address | Creditor Name | D - E/F - G |
|---|---|---|

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | Codebtor Name and Mailing Address | Creditor Name | D | E/F | G |
|---|---|---|---|---|---|
| 2.1 | BURNER SYSTEMS INTERNATIONAL, INC. | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 2L TERM LOAN | ☑ | ☐ | ☐ |
| 2.2 | BURNER SYSTEMS INTERNATIONAL, INC. | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 1L TERM LOAN | ☑ | ☐ | ☐ |
| 2.3 | BURNER SYSTEMS INTERNATIONAL, INC. | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR SUPER - PRIORITY CREDIT FACILITY | ☑ | ☐ | ☐ |
| 2.4 | CONTROLES TEMEX HOLDINGS LLC | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 2L TERM LOAN | ☑ | ☐ | ☐ |
| 2.5 | CONTROLES TEMEX HOLDINGS LLC | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 1L TERM LOAN | ☑ | ☐ | ☐ |
| 2.6 | CONTROLES TEMEX HOLDINGS LLC | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR SUPER - PRIORITY CREDIT FACILITY | ☑ | ☐ | ☐ |
| 2.7 | ROBERTSHAW CONTROLS COMPANY | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 2L TERM LOAN | ☑ | ☐ | ☐ |
| 2.8 | ROBERTSHAW CONTROLS COMPANY | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 1L TERM LOAN | ☑ | ☐ | ☐ |
| 2.9 | ROBERTSHAW CONTROLS COMPANY | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR SUPER - PRIORITY CREDIT FACILITY | ☑ | ☐ | ☐ |
| 2.10 | ROBERTSHAW MEXICAN HOLDINGS LLC | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 2L TERM LOAN | ☑ | ☐ | ☐ |
| 2.11 | ROBERTSHAW MEXICAN HOLDINGS LLC | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 1L TERM LOAN | ☑ | ☐ | ☐ |
| 2.12 | ROBERTSHAW MEXICAN HOLDINGS LLC | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR SUPER - PRIORITY CREDIT FACILITY | ☑ | ☐ | ☐ |
| 2.13 | ROBERTSHAW US HOLDING CORP. | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 2L TERM LOAN | ☑ | ☐ | ☐ |

# Schedule H: Codebtors

**Part 1:**

| 2.14 | ROBERTSHAW US HOLDING CORP. | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 1L TERM LOAN | ☑ | ☐ | ☐ |
|---|---|---|---|---|---|
| 2.15 | ROBERTSHAW US HOLDING CORP. | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR SUPER - PRIORITY CREDIT FACILITY | ☑ | ☐ | ☐ |
| 2.16 | UNIVERSAL TUBULAR SYSTEMS, LLC | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 2L TERM LOAN | ☑ | ☐ | ☐ |
| 2.17 | UNIVERSAL TUBULAR SYSTEMS, LLC | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR US 1L TERM LOAN | ☑ | ☐ | ☐ |
| 2.18 | UNIVERSAL TUBULAR SYSTEMS, LLC | ACQUIOM AGENCY SERVICES LLC AS ADMINISTRATIVE AGENT FOR SUPER - PRIORITY CREDIT FACILITY | ☑ | ☐ | ☐ |

**Total Number of Co-Debtor / Creditor Rows**          **18**

**Fill in this information to identify the case and this filing:**

| | |
|---|---|
| Debtor Name: | Range Parent, Inc. |
| United States Bankruptcy Court for the: | IN THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION |
| Case Number (if known): | 24 - 90053 |

# Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

1. **Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)**

1. **a. Real Property:**
   Copy line 88 from Schedule A/B

   **$0**

1. **b. Total personal property:**
   Copy line 91A from Schedule A/B

   **$274,838,884**

1. **c. Total of all property:**
   Copy line 92 from Schedule A/B

   **$274,838,884**

2. **Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)**
   Copy the total dollar amount listed in Column A, Amount of claim, from line 3 of Schedule D

   **$837,320,670**

3. **Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)**

3. **a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 6a of Schedule E/F

   **$0**

3. **b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 6b of Schedule E/F

   **$589,732**

4. **Total liabilities**
   Lines 2 + 3a + 3b

   **$837,910,401**

**Fill in this information to identify the case and this filing:**

| | |
|---|---|
| Debtor Name: | Range Parent, Inc. |
| United States Bankruptcy Court for the: | IN THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION |
| Case Number (if known): | 24 - 90053 |

# Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**Warning -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571**

## Declaration and Signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)

☑ Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

☑ Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☑ Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

☑ Schedule H: Codebtors (Official Form 206H)

☑ Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

☐ Amended Schedule

☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:**    April 1, 2024

**Signature:**    /S/ David Gordon

David Gordon, Chief Financial Officer

**Name and Title**