United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 16, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ROBERTSHAW US HOLDING CORP., *et al.*, | : | Case No. 24-90052 (CML) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
|  | : |  |

## ORDER CONFIRMING THE FIRST AMENDED JOINT PLAN OF LIQUIDATION OF ROBERTSHAW US HOLDING CORP. AND ITS AFFILIATED DEBTORS

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")[2] having:

a. entered into that certain Restructuring Support Agreement dated as of February 14, 2024;

b. commenced, on February 15, 2024 (the "<u>Petition Date</u>"), these chapter 11 cases (these "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>");

c. filed on February 15, 2024, the *Declaration of John Hewitt in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 19], detailing the facts and circumstances of these Chapter 11 Cases;

d. continued to operate their business and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

e. filed, on May 24, 2024, the *Debtors' Emergency Motion for Entry of Order (I) Approving the Disclosure Statement, (II) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (III) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Confirmation Objections,*

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are as follows:  Range Parent, Inc. (7956); Robertshaw US Holding Corp. (1898); Robertshaw Controls Company (9531); Burner Systems International, Inc. (8603); Robertshaw Mexican Holdings LLC (9531); Controles Temex Holdings LLC (9531); Universal Tubular Systems, LLC (8603); and Robertshaw Europe Holdings LLC (8843). The primary mailing address used for each of the foregoing debtors is 1222 Hamilton Parkway, Itasca, Illinois 60143.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable. The rules of interpretation set forth in Article I.A. of the Plan apply.

*(IV) Approving Manner and Form of Notice and Other Documents, and (V) Granting Related Relief* [Docket No. 588] (the "Disclosure Statement Motion") seeking, among other things, approval of the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and approval of the Solicitation Procedures;

f.   filed, on June 20, 2024, the *First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 670] and the *Disclosure Statement for First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 671];

g.   obtained, on June 21, 2024, the entry of the *Order (I) Approving the Disclosure Statement, (II) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (III) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Confirmation Objections, (IV) Approving Manner and Form of Notice and Other Documents, and (V) Granting Related Relief* [Docket No. 676] (the "Disclosure Statement Order") approving the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

h.   filed, on June 24, 2024, the solicitation versions of (i) the *First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 695] (as may be modified, amended, or supplemented from time to time, including by the *Modified First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 857], the "Plan"); and (ii) the *Disclosure Statement for First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 696] (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement");

i.   caused the Solicitation Packages and notice of the Confirmation Hearing (the "Confirmation Hearing Notice") (which, among other things, notified parties of the deadline for objecting to Confirmation of the Plan) to be distributed on or about June 26, 2024 in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 812] the ("Certificate of Solicitation");

j.   caused notice of the Confirmation Hearing Notice to be published, on June 26, 2024, in *The Wall Street Journal* (national edition), as evidenced by the *Certificate of Publication* [Docket No. 728]  (the "Certificate of Publication");

k.   filed, on July 19, 2024, the *Plan Supplement for First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter*

*11 of the Bankruptcy Code* [Docket No. 775] (as may be modified, amended, or supplemented from time to time, including by the *Amended Plan Supplement* [Docket No. 859] the "Plan Supplement");

l. filed, on July 31, 2024, the *Debtors' Memorandum of Law in Support of an Order Confirming the First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 850] (the "Confirmation Brief");

m. filed, on July 31, 2024, the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation and Tabulation of Ballots Cast on the First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 851] (the "Voting Report"); and

n. filed, on July 31, 2024, (i) the *Declaration of Stephen Spitzer in Support of Confirmation of the First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 852]("Spitzer Declaration"), (ii) the *Declaration of Scott Vogel in Support of Confirmation of the First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 854] ("Vogel Declaration"), (iii) the *Declaration of Neal Goldman in Support of Confirmation of the First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 853] ("Goldman Declaration"), and (iv) the *Declaration of Andrew Scruton of FTI Consulting, Inc., Financial Advisor to the Official Committee of Unsecured Creditors, in Support of Plan Confirmation* [Docket No. 855] (the "Scruton Declaration", and, together with the Spitzer, Vogel and Goldman Declarations, the "Confirmation Declarations"), *as modified at the Confirmation Hearing*.

The Bankruptcy Court having:

a. entered the Disclosure Statement Order approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code;

b. set July 26, 2024 at 4:00 p.m. (prevailing Central Time) as the deadline for filing objections to confirmation of the Plan;

c. set July 26, 2024 at 4:00 p.m. (prevailing Central Time) as the deadline for voting on the Plan;

d. set August 2, 2024 at 9:00 a.m. (prevailing Central Time) as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e. reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting Report, the Confirmation Hearing Notice, the Certificate of Solicitation, the Certificate of Publication, and all filed

pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

f.   held the Confirmation Hearing;

g.   heard and considered the statements and arguments made by counsel in respect of Confirmation;

h.   considered all testimony presented and evidence admitted at the Confirmation Hearing, as applicable;

i.   overruled any and all objections to the Plan and Confirmation, including the (i) *Objection to Confirmation of the Plan Filed by US Trustee* [Docket No. 802] (the "US Trustee Objection"), and (ii) *Objection to Confirmation of Plan Filed by Invesco Senior Secured Management, Inc.* [Docket No. 816] (the "Invesco Objection") under the **Memorandum Decision on Plan Confirmation [Docket No. 959]** and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

j.   taken judicial notice of all papers and pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation and other evidence presented at the Confirmation Hearing and the record of these Chapter 11 Cases establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

A.   **Finding of Fact and Conclusions of Law**

1.   The findings and conclusions set forth (i) herein, (ii) in the *Memorandum Decision and Order* [Docket. No. 351] entered in the Invesco Action, (iii) in the Sale Order; (iv) in the **Memorandum Decision on Plan Confirmation,** and (iv) in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law

pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). All findings of fact and conclusions of law in *Memorandum Decision on Plan Confirmation* and the Adversary Proceeding are hereby incorporated into this Confirmation Order and are essential, inextricable, and nonseverable components and terms of this Confirmation Order and the treatment and distributions provided under the Plan. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### B. Jurisdiction and Venue

2.     The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Venue in the Bankruptcy Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). The Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

### C. Burden of Proof

3.     The Debtors, as proponents of the Plan, have met their burden of proving that the Plan complies with each element of section 1129(a) and, to the extent applicable, section 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

### D. Notice of the Confirmation Hearing

4.     Notice of the Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

E.      **Judicial Notice**

5.      The Bankruptcy Court takes judicial notice of the docket of both the Chapter 11 Cases and the Adversary Actions maintained by the Clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the Chapter 11 Cases (including during the Adversary Actions).

F.      **Plan Supplement**

6.      The Plan Supplement complies and is consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement including, for the avoidance of doubt, any amendment, modification, or supplement thereto.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  All Holders of Claims who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified and supplemented by the Plan Supplement.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules; *provided* that, no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the terms of the Plan.

G.      **Solicitation**

7.      Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws,

and regulations. Specifically, the Disclosure Statement, the Plan, the Confirmation Hearing Notice, the Ballots, and other materials constituting the solicitation materials approved by the Court in the Disclosure Statement Order, were transmitted to and served on all Holders of Claims and Equity Interests in the Voting Classes, and the solicitation materials (not including Ballots) were also provided to the other key parties in interest in these Chapter 11 Cases, in compliance with section 1125 of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order. The Confirmation Hearing Notice and Notice of Non-Voting Status and Opt Out Opportunity were provided to Holders or potential Holders of Claims or Equity Interests in Non-Voting Classes. Such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required. All procedures used to distribute the solicitation materials and other notices and documents described in the Solicitation Order were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

8.     Each of the Debtors, the Exculpated Parties, the parties to the Restructuring Support Agreement, the Released Parties and with respect to each of the foregoing parties, each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable, have acted fairly, in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the Disclosure Statement and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and consummation of the Plan, including the negotiation, execution, delivery, and performance of the Restructuring Support Agreement, the

solicitation and tabulation of votes on the Plan, the participation in the offer, issuance, sale or purchase of a security, offered or sold under the Plan, and the activities described in section 1125 of the Bankruptcy Code, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

9.      The Debtors, the Exculpated Parties, the parties to the Restructuring Support Agreement, the Released Parties and with respect to each of the foregoing parties, each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable, have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

10.      The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and applicable non-bankruptcy law.  Based on the record before the Bankruptcy Court, including the Voting Report, the Certificate of Solicitation, and the Certificate of Publication, the Debtors, the Exculpated Parties, and the Released Parties have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and not by any means forbidden by law.

**H.      Voting Report**

11.      As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, the Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.  As evidenced by the Voting Report, Classes 5, 6(a) and 6(f) have voted to accept the Plan.

**I.      Bankruptcy Rule 3016**

12.      The Plan is dated and identifies the Debtors as the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**J.      Modifications of the Plan**

13.      The modifications made to the Plan since the commencement of solicitation of votes thereon, including to the extent the terms of this Confirmation Order may be construed to constitute modifications to the Plan (collectively, the "Plan Modifications"), do not individually or in the aggregate materially or adversely affect or change the treatment of any Claim against or Interest in any Debtor.

14.      Accordingly, pursuant to Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code.  All references to the Plan in this Confirmation Order shall be to the Plan as modified.

**K.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

     1.      Sections 1122 and 1123(a)(1)—Proper Classification.

     15.      The classification of Claims and Equity Interests under the Plan is proper and satisfies the requirements of the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Equity Interests into sixteen Classes, based on differences in the legal nature or priority of such Claims and Equity Interests (other than Administrative Claims (including Professional Fee Claims, Restructuring Fees, and Expenses and Statutory Fees), Priority Tax Claims, and DIP Facility Claims, which are addressed in Article II of the Plan and which have not been classified in accordance with section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan, the classifications were not done for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Equity Interests.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.

     2.      Section 1123(a)(1)-(4)—Compliance.

     16.      In accordance with section 1123(a) of the Bankruptcy Code, the Court finds and concludes that the Plan:  (a) designates Classes of Claims and Equity Interests, other than Claims of a kind specified in sections 507(a)(2) and 507(a)(8) of the Bankruptcy Code; (b) specifies Classes of Claims and Equity Interests that are not Impaired under the Plan; (c) specifies the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; and (d) provides the same treatment for each Claim or Equity Interest of a particular Class, unless the

Holder of a particular Claim or Equity Interest agrees to less favorable treatment of such Claim or Equity Interest.  Therefore, the Plan satisfies the requirements of section 1123(a)(1)-(4) of the Bankruptcy Code.

   3.  <u>Section 1123(a)(5)—Adequate Means of Implementation.</u>

   17.  Article V and various other provisions of the Plan provide adequate and proper means for the Plan's implementation.  Those provisions relate to, among other things: (a) the appointment of a Plan Administrator for winding down the Debtors' Estates and distributing Estate proceeds as prescribed by the Plan; (b) the establishment of the Liquidation Trust; appointment of the Liquidation Trustee and the vesting of the Liquidation Trust Assets in the Liquidation Trust, (c) the sources of consideration for Distributions under the Plan; (d) the cancellation of notes, instruments and Existing Equity Interests; (e) the payment of certain fees and expenses; (f) the authority to undertake corporate actions necessary to effectuate the Plan (including authorization to consummate the Sale Transaction); (g) the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases; and (h) the establishment of certain escrows and reserves to secure the payment of certain Claims and contingent obligations.  Moreover, on the Effective Date, the Debtors, through access to the Wind-Down Reserve (as may be funded from time to time by the Purchaser in accordance with the terms of the Plan and the Sale Order), will have sufficient Cash to make all payments required under the Plan.  For the avoidance of doubt, the Liquidation Trustee shall be compensated solely by the Post-Effective Date Debtors and solely from the Wind-Down Amount, which shall include $250,000 to compensate the Liquidating Trustee and any Professionals retained by the Liquidating Trustee pursuant to the Liquidation Trust Agreement. The Plan therefore complies with section 1123(a)(5) of the Bankruptcy Code.

4.     Section 1123(a)(6)—Prohibition Against the Issuance of Nonvoting Securities and Adequate Provisions for Voting Power of Classes of Securities.

18.    Section 1123(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases because the Plan contemplates (a) the merger or dissolution of the Debtors' corporate existences as soon as practicable after the Effective Date; and (b) no issuance of new securities of the Debtors.

5.     Section 1123(a)(7)—Directors & Officers.

19.    The Debtors disclosed the identity of and the material terms of engagement for the Plan Administrator in the Plan Supplement.  In accordance with the Plan, the Debtors and the Ad Hoc Group, in consultation with ORC and the Committee, selected Stephen Spitzer of AlixPartners LLP to serve as the Plan Administrator.  On the Effective Date, Mr. Spitzer, without the need for further action or approval, shall be appointed as Plan Administrator pursuant to the terms of an agreement filed with the Bankruptcy Court as part of the Plan Supplement (the "Plan Administration Agreement").   The Plan Administration Agreement and the terms thereof are hereby approved and the Debtors and the Plan Administrator are each authorized to enter into and perform under the Plan Administration Agreement.

20.    After the Effective Date, pursuant to section 1124(b) of the Bankruptcy Code, the Plan Administrator shall be authorized to file each Debtor's tax returns, consistent with the terms of the Plan and the Plan Administration Agreement.  Pursuant to Article V.J. of the Plan, following the Confirmation Date and prior to the occurrence of the Effective Date, the then-current officers, directors and managers of each of the Debtors shall continue in their respective capacities in accordance with the applicable by-laws or other organizational documents of each Debtor, unless otherwise agreed between the Debtors and the Purchaser, and the Debtors shall execute such documents and take such other action as is necessary to effectuate the actions provided for in the

Plan.  On and after the Effective Date, the Plan Administrator shall serve as the sole shareholder, interest holder, officer, director, or manager of each of the Debtors, as applicable, under applicable state law.

21.    In addition, on the Effective Date, the Liquidation Trust shall be formed for the benefit of Holders of the Allowed General Unsecured claims in Class 5 and Allowed First-Out Funded Debt Deficiency Claims in Class 6a of the Plan, in accordance with Article V of the Plan. The manner and selection of the Liquidation Trustee and the Liquidation Trust Board (as defined in the Liquidation Trust Agreement) is set forth in the Liquidation Trust Agreement filed as part of the Plan Supplement.

22.    The manner of selection of the Plan Administrator, the Liquidation Trustee and the Liquidation Trust Board is consistent with the interests of creditors and other stakeholders, as well as with public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

6.    Section 1123(b)—Discretionary Contents of the Plan.

23.    The Plan contains various provisions that may be construed as discretionary but are not required for confirmation under the Bankruptcy Code.  As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code.  As a result thereof, the requirements of section 1123(b) of the Bankruptcy Code have been satisfied.

i.    *Section 1123(b)(1)-(2)—Claims and Equity Interests; Executory Contracts and Unexpired Leases.*

24.    Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, respectively, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Equity Interests, and Article VI of the Plan provides for the assumption or rejection

of the Executory Contracts and Unexpired Leases of the Debtors to the extent not previously assumed or rejected pursuant to section 365 of the Bankruptcy Code or otherwise provided under the Plan, and provides appropriate authorizing orders of the Court.

      ii.        *Section 1123(b)(3)—Release, Exculpation, Third-Party Release, Injunction, and Preservation of Claims Provisions*

25.    **Settlement of Claims and Interests**.  In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan (the "Plan Settlements").  The compromises and settlements embodied in the Plan, including the Committee Settlement, are the result of extensive, arm's length, good faith negotiations that, in addition to the Plan, resulted in the execution of the Restructuring Support Agreement, which preserves value for the Debtors, their Estates, and all their stakeholders, avoid extended, uncertain, time consuming, and value-destructive litigation that has the possibility of derailing the Debtors' reorganization efforts and the loss of the benefits to the Debtors and their Estates of the transactions contemplated by the Restructuring Support Agreement and the Plan, and represent a fair and reasonable compromise of all Claims, Interests, and controversies and entry into which represented a sound exercise of the Debtors' business judgment.  The compromises and settlements in the Plan, including the Committee Settlement, are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and satisfy the requirements of applicable law for approval pursuant to Bankruptcy Rule 9019.

26.     **Release by the Debtors**.  The release of Claims and Causes of Action by the Debtors, the Post-Effective Date Debtors, and Representatives described in Article X.B of the Plan (the "Debtor Release") is an essential and critical provision of the Plan, and formed an integral part of the agreement embodied in the Plan among all parties in interest.  The Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, is:  (a) within the jurisdiction of the Bankruptcy Court pursuant to 28 U.S.C. § 1334; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good faith settlement and compromise of the Claims and Causes of Action released by such release; (d) in the best interests of the Debtors and their creditors; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) appropriately narrow in scope given that they expressly exclude any Causes of Action arising from any act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct (other than with respect to or relating to the Adversary Actions) and (h) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

27.     The Debtor Release appropriately offers protection to parties that constructively participated in the Debtors' chapter 11 efforts.  Such protections from liability facilitated the participation of the Debtors' stakeholders in the negotiations and compromises that led to the Plan (including, without limitation, the Committee Settlement) and Sale Transaction.  In addition, the Debtors are not aware of any (a) significant potential claims that are being released; or (b) pending litigation that would be discontinued as a result of the Debtor Release.

28.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by the

Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

29.     **Exculpation**.  The exculpation provisions contained in Article X.D of the Plan are appropriately tailored to the circumstances of these chapter 11 cases and are appropriate under applicable law, including *In re Highland Capital Mgmt., L.P.*, 48 F. 4th 419 (5th Cir. 2022), because they are supported by proper evidence, proposed in good faith, formulated following extensive good faith, arm's-length negotiations with key constituents, and appropriately limited in scope.  The Exculpated Parties reasonably relied upon the exculpation provisions as a material inducement to engage in postpetition negotiations with the Debtors that culminated in the Plan, the Committee Settlement and all other settlements and compromises therein that maximize value for the Debtors' Estates.  The record in these Chapter 11 Cases fully supports the exculpation provisions, which provisions are supported by the Settlement Parties, are appropriately tailored to protect the Exculpated Parties from unnecessary litigation, and contain appropriate carve outs for actions determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

30.     **Release by Holders of Claims and Equity Interests**.  The release of Claims and Causes of Action by Holders of Claims and Equity Interests described in Article X.C of the Plan, including the releases of non-Debtors (the "Third-Party Release") constitutes an essential and critical provision of the Plan and formed an integral part of the agreement embodied in the Plan among all parties in interest.  The Third-Party Release is:  (a) consensual on the part of the Releasing Parties; (b) within the jurisdiction of the Bankruptcy Court pursuant to 28 U.S.C. § 1334; (c) in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by such

release; (e) in the best interests of the Debtors and their creditors; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) appropriately narrow in scope given that it expressly excludes any Causes of Action arising from any act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct (other than with respect to or relating to the Adversary Actions); and (i) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

31.      Like the Debtor Release, the Third-Party Release and its protections were necessary inducements to the participation of the Debtors' stakeholders in the negotiations and compromises that led to the Plan and the structure thereof, including the Committee Settlement.  Specifically, the Released Parties, individually and collectively, made significant contributions to the Chapter 11 Cases, including compromising Claims and accepting diminished recoveries, permitting the use of encumbered assets and cash collateral during these Chapter 11 Cases, providing liquidity through the DIP Credit Agreement that funded these Chapter 11 Cases, negotiating and supporting the plan and Sale Transaction, negotiating consensual resolutions (including the Committee Settlement) of various disputes, and otherwise actively supporting the Debtors' chapter 11 objectives.  The Third-Party Release therefore appropriately offers protection to parties who actively and constructively participated in and contributed to the Plan and without whom the Sale Transaction could not have been achieved.  In addition, the Debtors are not aware of any (a) significant potential claims that are being released; or (b) pending litigation that would be discontinued as a result of the Third-Party Release.

32.      The scope of the Third-Party Release in the Plan is appropriately tailored to the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of

the Third-Party Release and, to the extent provided under the Plan, the opportunity to opt out of or object to the Third-Party Release, as applicable.  In light of, among other things, the value provide by the Released Parties to the Debtors' Estates, the consensual nature of the Third-Party Release, and the critical nature of the Third-Party Release to the Plan, the Third-Party Release is appropriate. **For the avoidance of doubt, and notwithstanding anything to the contrary, Invesco and any other party who timely opted-out of the Third-Party Release is not bound by the Third-Party Release.**

33.     **Injunction**.   The injunction provision set forth in Article X.E of the Plan is narrowly tailored and necessary to implement the terms of the Plan, including the release and exculpation provisions, and the Committee Settlement.

34.     The Committee Settlement and each of the release and exculpation provisions set forth in the Plan:  (a) are within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) are an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) are an integral element of the transactions incorporated into the Plan; (d) confer material benefits on, and are in the best interest of the Debtors, their estates, and the Holders of Claims and Equity Interests; (e) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in these Chapter 11 Cases with respect to the Debtors; and (f) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, and other applicable provisions in the Bankruptcy Code.  The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the Committee Settlement and the release, exculpation, and injunction provisions contained in Article X of the Plan.

35.     **Preservation of Rights of Action**.  Article X.H of the Plan appropriately provides that all Retained Causes of Action shall be conveyed to the Liquidation Trust with the Liquidation Trustee appointed as the representative of the Debtors' Estates with respect to the Retained Causes of Action, and the Plan and Plan Supplement provide meaningful disclosure with respect to the

potential Retained Causes of Action that the Liquidation Trust may retain. All parties in interest received adequate notice with respect to such Retained Causes of Action. The provisions regarding the Retained Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and holders of Claims and Interests. For the avoidance of doubt, except with respect to the Retained Causes of Action and as otherwise provided in the Plan, all Claims and Causes of Action released or exculpated under the Plan and/or released and/or waived pursuant to the DIP Order will not be retained by the Debtors, the Post-Effective Date Debtors, or the Liquidation Trust.

36.    The provisions regarding Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests.

iii.    *Section 1123(b)(4)—Sale of All or Substantially All of the Property of the Estate.*

37.    Consistent with section 1123(b)(4) of the Bankruptcy Code, the Plan authorizes consummation of the Sale Transaction and effectuates the Distribution of the proceeds of the Sale Transaction. The Plan is therefore consistent with section 1123(b)(4) of the Bankruptcy Code.

**L.    Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code**

38.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including sections 1123, 1125, and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019. As a result thereof, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

**M.    Section 1129(a)(3)—Proposal of Plan in Good Faith.**

39.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders, and not by any means forbidden by law. In determining that the Plan has been proposed in good faith,

the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Restructuring Support Agreement, the Plan itself, and the process leading to its formulation.  The good faith of each of the entities who negotiated the Plan is evident from the facts and records of these Chapter 11 Cases and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases (including the Adversary Actions).  The Plan is the result of extensive, good-faith, and arm's-length negotiations among the Debtors and their principal constituencies, including for the avoidance of doubt, each of the Released Parties and Exculpated Parties and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys, each of whom shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.  The Plan itself, and the process leading to its formulation, provide independent evidence of the good faith of the entities who negotiated the Plan, serve the public interest, and assure fair treatment of Holders of Claims and Equity Interests.  The transactions contemplated by the Plan are proposed in good faith, are in the best interests of the Debtors' Estates, and will serve to maximize value for all stakeholders.  Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to complete a value-maximizing sale of their assets and have their business carry on with a capital structure that will allow the go-forward business to satisfy its obligations while maintaining sufficient liquidity and capital resources and preserving value for the benefit of all stakeholders.

40.     Based on the record before this Court in these Chapter 11 Cases each of (a) the Debtors, (b) the Released Parties, and (c) the Exculpated Parties, as of or after the Petition Date have acted in good faith and will continue to act in good faith within the meaning of section 1125(e)

if they proceed to: (a) consummate the Plan and Sale Transaction and the agreements, including, without limitation, the agreements contained in the Plan Supplement, settlements, transactions and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order and the Plan to reorganize the Debtors' businesses and effectuate the Definitive Documents related thereto.

**N.    Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

41.    The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code. As a result thereof, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

**O.    Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders, and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

42.    The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. Pursuant to Article V.H.1 of the Plan, the Debtors disclosed the identity of the Plan Administrator in the Plan Supplement, who shall serve as the sole manager, sole director, and sole officer of the Post-Effective Date Debtors. The Plan Administrator is competent, has relevant and valuable business and industry experience, and will assist with the wind down of the Debtors' Estates. Additionally, the Debtors filed the Liquidation Trust Agreement as part of the Plan Supplement. The Liquidation Trustee shall administer the Liquidation Trust Assets and shall pursue, abandon, litigate, or settle the Retained Causes of Action vested in the Liquidation Trust, as appropriate. Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**P.**     **Section 1129(a)(6)—No Rate Changes.**

43.     In accordance with section 1129(a)(6) of the Bankruptcy Code, the Court finds and concludes that the Debtors are not subject to any governmental regulation of any rates.  Therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable.

**Q.**     **Section 1129(a)(7)—Best Interests of Holders of Claims and Equity Interests.**

44.     The Liquidation Analysis included as **Exhibit C** to the Disclosure Statement and the other evidence related thereto that was proffered or adduced at or prior to the Confirmation Hearing: (a) are reasonable, persuasive, and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each Holder of an Allowed Claim or Equity Interest in such Class has voted to accept the Plan or will receive under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

**R.**     **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes.**

45.     Classes 1, 2, 3, and 4 are composed of Unimpaired Claims and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

46.     As described in the Voting Report, Holders of Claims in Class 5 and Classes 6a, 6b, 6c, 6d, 6e, 6f, and 6g were entitled to vote to accept or reject the Plan.  Holders of Claims in Classes 5, 6a, and 6f voted to accept the Plan.  All other Classes of Claims and Interests either rejected the Plan or were not entitled to vote on the Plan pursuant to section 1126 of the Bankruptcy Code.  All procedures used to tabulate the Ballots were fair, reasonable, and conducted in

accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations.

47.     Although the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to all Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to any rejecting Class of Claims, and thus satisfies section 1129(b) of the Bankruptcy Code.

**S.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

48.     Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed DIP Facility Claims are Unimpaired under Article II of the Plan.  As a result thereof, the requirements of section 1129(a)(9) of the Bankruptcy Code with respect to such Classes have been satisfied.

**T.      Section 1129(a)(10)—Acceptance by At Least One Impaired Class.**

49.     As set forth in the Voting Report, Classes 5, 6a and 6f have voted to accept the Plan.  As such, at least one Class of Claims that is Impaired under the Plan has accepted the Plan at each Debtor, determined without including any acceptance of the Plan by any insider.  As a result thereof, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

**U.      Section 1129(a)(11)—Feasibility of the Plan.**

50.     The evidence proffered or adduced at, or prior to, the Confirmation Hearing in connection with the feasibility of the Plan is reasonable, persuasive and credible.  The Plan provides for the distribution of the proceeds from the sale of substantially all of the Debtors' assets in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. Any assets remaining in the Debtors' Estates as of the Effective Date will vest (a) in the Post-Effective Date Debtors, for the administration, liquidation, and distribution by the Plan Administrator, in accordance with the Plan Administration Agreement; or (b) in the Liquidation

Trust for the administration, liquidation, and distribution by the Liquidation Trustee, in accordance with the Liquidation Trust Agreement. As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

**V.      Section 1129(a)(12)—Payment of Bankruptcy Fees.**

51.      The Plan provides that each of the Debtors (or the Disbursing Agent on behalf of each of the Debtors) shall pay all fees payable under section 1930 of title 28, United States Code on and after the Effective Date until the entry of a final decree in each Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed. As a result thereof, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

**W.      Section 1129(a)(13)—Retiree Benefits.**

52.      Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. The Debtors do not have obligations to pay retiree benefits and, therefore, section 1129(a)(13) of the Bankruptcy Code, to the extent applicable to the Debtors, is satisfied.

**X.      Sections 1129(a)(14), (15), and (16)—Domestic Support Obligations; Unsecured Claims Against Individual Debtors; Transfers by Nonprofit Organizations.**

53.      None of the Debtors have domestic support obligations, are individuals, or are nonprofit organizations. Therefore, sections 1129(a)(14), (15), and (16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**Y.      Section 1129(b)—"Cram Down" Requirements.**

54.      The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that not all Classes voted to accept the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is

24

fair and equitable with respect to each Impaired Class that did not vote to accept the Plan. The Plan has been proposed in good faith, is reasonable, and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims or Interests in Impaired Classes that did not vote to accept the Plan. Third, the Plan does not discriminate unfairly with respect to Impaired Classes that did not vote to accept the Plan because similarly situated Holders will receive substantially similar treatment on account of their Claims or Interests in such class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**Z.      Section 1129(c)—Only One Plan.**

55.      Other than the Plan (including any previous versions thereof), which Plan constitutes a separate chapter 11 plan for each of the eight Debtors, no other plan has been filed in these Chapter 11 Cases. As a result thereof, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**AA.     Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Securities Law.**

56.      No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. As a result thereof, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**BB.    Satisfaction of Confirmation Requirements**

57.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**CC.    Rejection of Executory Contracts and Unexpired Leases**

58.    Each rejection of an Executory Contract or Unexpired Lease pursuant to Article VI of the Plan shall be legal, valid, and binding upon the applicable Debtor and all non-Debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such rejection had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered prior to the Effective Date under section 365 of the Bankruptcy Code.

**DD.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

59.    Without limiting or modifying the rights of the Debtors, the Committee, and the Ad Hoc Group under Article IX.C of the Plan, each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

**EE.    Implementation**

60.    All documents and agreements necessary to implement the Plan or consummate the Sale Transaction, including those contained in the Plan Supplement, the Sale Transaction Documents, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The Debtors and other parties in interest have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have been and are continuing to be negotiated in

good faith, at arm's length, are fair and reasonable, and are appropriate. The Debtors, the Purchaser and the Plan Administrator, as applicable, including their respective officers, are authorized, without any further notice to or action, order, or approval of the Bankruptcy Court, to finalize and execute and deliver all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder in accordance with the Plan so long as such documents are consistent with the Plan.

61. Pursuant to Article V.F of the Plan:

(a) On the Effective Date, the Debtors shall be authorized to consummate the Sale Transaction to the Purchaser pursuant to the terms of the Sale Order and the applicable Sale Transaction Documents, subject to the Implementation Memorandum, including, without limitation, (i) selling the Acquired Assets (as defined in the Asset Purchase Agreement) free and clear of claims, liens and encumbrances except to the extent set forth in the Asset Purchase Agreement and (ii) assuming and assigning to the Purchaser pursuant to the Asset Purchase Agreement in connection with the Sale Transaction certain Executory Contracts and Unexpired Leases.

(b) In accordance with the Sale Order and the Implementation Memorandum, all corporate actions necessary to implement the Sale Transaction as contemplated in the Sale Order, including, without limitation, entry into the Sale Transaction Documents shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person.

62.     The Super-Priority Agent, is authorized and directed (with the consent of the Ad Hoc Group) to assign its right to credit bid up to $217,000,000 in Prepetition First Out Indebtedness (as defined in the DIP Order) to the Purchaser.  Additionally, the DIP Agent, is authorized and directed (with the consent of the Ad Hoc Group) to assign its right to credit bid all DIP Obligations (as defined in the DIP Order) to the Purchaser.

63.     Upon consummation of the Sale Transaction and pursuant to the transaction steps set forth in the Implementation Memorandum (the "Transaction Steps"), to the fullest extent permitted by sections 1141(b) and (c) of the Bankruptcy Code, the equity interests in Range Red Acquisition, LLC and the loans under the Exit Financing Agreement (as defined in the Asset Purchase Agreement) shall be transferred or vest in the appropriate party (as contemplated in the Transaction Steps and the relevant Sale Transaction Documents) free and clear of all Liens, Claims, charges, interests, or other encumbrances (other than as expressly set forth in the Plan), including, without limitation, mortgages, deeds of trust, pledges, charges, security interests, of whatever kind or nature, rights of first refusal, rights of offset, royalties, conditional sales or title retention agreements, hypothecations, preferences, debts, easements, suits, licenses, options, right of recovery.  None of the transactions contemplated under the Transaction Steps, the Plan and the Sale Transaction Documents, shall be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.      Confirmation of the Plan**

64.      The Plan, a copy of which is attached hereto as **<u>Exhibit A</u>**, as may be amended by this Confirmation Order, is confirmed pursuant to section 1129 of the Bankruptcy Code.  The terms of the Plan, the documents contained in the Plan Supplement, the Sale Transaction Documents, and any other documents filed in connection with the Plan and/or executed or to be executed to effectuate, implement or consummate the transactions contemplated by the Plan (including the Sale Transaction), and all amendments and modifications thereof made in accordance with the Plan and this Confirmation Order, are hereby approved by this Confirmation Order; *provided* that, the Debtors may make modifications to the Plan prior to the Effective Date subject to the limitations and consents set forth in Article XII.E of the Plan and further described herein.

65.      Any and all objections to confirmation of the Plan that have not been withdrawn or resolved prior to the Confirmation Hearing are hereby overruled, except to the extent sustained by the Court on the record at the Confirmation Hearing.

66.      The documents contained in the Plan Supplement and the Sale Transaction Documents are integral to the Plan and are approved by the Bankruptcy Court and the Debtors are authorized to take all actions required under the Plan, the Sale Transaction Documents, and the Plan Supplement documents to effectuate the Plan and consummate the transactions (including the Sale Transaction) contemplated thereby.

67.      The terms of the Plan, the Plan Supplement, the Sale Transaction Documents and the exhibits thereto are incorporated herein by reference, and are an integral part of this Confirmation Order.  The terms of the Plan, the Plan Supplement, the Sale Transaction Documents, all exhibits thereto, and all other relevant and necessary documents shall be valid, binding and

enforceable in accordance with their terms as of the Effective Date, and in each case without need for execution by any party thereto other than the Post-Effective Date Debtors.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, the Sale Transaction Documents, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

68.    The compromises, settlements, releases, exculpations, and injunctions set forth in Article X of the Plan are approved, and will be effective immediately and binding on the Effective Date.

69.    The Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in form attached hereto as **Exhibit B** (the "Confirmation Notice"), on all parties served with the Confirmation Hearing Notice as soon as reasonably practicable after the Effective Date; *provided that,* no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  The Debtors shall cause the Confirmation Notice to be posted on the website of these Chapter 11 Cases: https://cases.ra.kroll.com/Robertshaw.  Such service in the time and manner set forth herein will provide good, adequate, and sufficient notice under the circumstances, and shall be deemed to comply with Bankruptcy Rules 2002(a)(7), 2002(f)(3) and (f)(7), 2002(1), 3002(c)(4), and 3020(c)(2).

## B.    Immediate Binding Effect

70.    Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, from and after the entry of this Confirmation Order and upon the occurrence of the Effective Date, the

terms of the Plan, and the documents and instruments contained in the Plan Supplement and this Confirmation Order shall be deemed immediately effective, enforceable, and binding upon: (a) the Debtors; (b) any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan); (c) any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors; (d) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan; and (e) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

## C.    Plan Classification Controlling

71.    The terms of the Plan shall govern the classification of Claims and Interests for purposes of the Distributions to be made thereunder. The classifications and amounts set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification or amounts of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification or amount of such Claim under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

## D.    General Settlement of Claims

72.    The Plan is a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual and legal rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

73.     The entry of this Confirmation Order constitutes this Court's approval of the compromise or settlement of all such Claims, Interests, and controversies referenced in paragraph 69 above, as well as a finding by this Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests and is fair, equitable, and reasonable.  The compromises, settlements, and releases described herein and in the Plan are nonseverable from each other and from all other terms of the Plan.  In accordance with and subject to the provisions of the Plan (including the consent rights thereunder), pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of this Court, after the Effective Date, (a) the Plan Administrator may compromise and settle any Claims against, and Interests in, the Debtors and their Estates; and (b) the Liquidation Trustee, subject to the Liquidation Trust Agreement, may compromise and settle Retained Causes of Action against other Persons or Entities.

74.     Certain Claims and Causes of Action may exist between one or more of the Debtors and one or more of their Affiliates, which Claims and Causes of Action have been settled, and such settlement is reflected in the treatment of the Intercompany Claims and the Claims against and Interests in each Debtor entity.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of such Claims and Causes of Action pursuant to Bankruptcy Rule 9019.

75.     The provisions of the Plan Settlements constitute a good faith compromise and settlement among the Debtors and the Consenting Lenders (as defined in the Restructuring Support Agreement) of all Claims, Causes of Action, Interests, and controversies among such parties, including all potential Claims, Causes of Action, Interests, and controversies between the Debtors and the Consenting Lenders, and are in consideration of the value provided to the Estates by the

Consenting Lenders pursuant to the Plan Settlements.  The Plan shall be deemed a motion to approve the Plan Settlements as a good faith compromise and settlement of all of the Claims, Interests, Causes of Action and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.  Entry of this Confirmation Order constitutes this Court's approval of the Plan Settlements, as well as a finding by this Court that the Plan Settlements are in the best interests of the Debtors, their Estates, and holders of Claims and Interests and are fair, equitable, and reasonable.

76.     **Committee Settlement.**  The provisions of the Committee Settlement constitute a good faith compromise and settlement among the Settlement Parties of all Claims, Causes of Action, Interests, and controversies among such parties, including all potential Claims, Causes of Action, Interests, and controversies between the Settlement Parties, and are in consideration of the value provided to the Estates by the Settlement Parties pursuant to the Committee Settlement.  The Plan shall be deemed to be a motion to approve the Committee Settlement as a good faith compromise and settlement of all of the Claims, Interests, Causes of Action and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.  Entry of this Confirmation Order constitutes this Court's approval of the Committee Settlement in all respects, as well as a finding by this Court that the Committee Settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

77.     Solely with respect to the exculpation provisions in the Plan, notwithstanding anything to the contrary in the Plan or Plan Supplement, the Settlement Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, the solicitation of acceptance or rejection of the Plan in

good faith and in compliance with the applicable provisions of the Bankruptcy Code.  No entity or person may commence or pursue a Claim or Cause of Action of any kind against any Settlement Party that arose or arises from, in whole or in part, a Claim or Cause of Action subject to this paragraph of this Confirmation Order, without this Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim that is not otherwise inconsistent with the terms and provisions of the Plan and this Confirmation Order or the Restructuring Transactions implemented by the Plan for actual fraud, gross negligence, or willful misconduct against any such Settlement Party and such party is not exculpated pursuant to this provision; and (b) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against such Settlement Party.

## E.      Treatment of Executory Contracts and Unexpired Leases

78.      The rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases as set forth in Article VI of the Plan is hereby authorized.  Except as otherwise set forth in the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date without the need for any further action or consents that may otherwise be required under applicable non-bankruptcy law.

## F.      Vesting of Assets in the Post-Effective Date Debtors

79.      On the Effective Date, the Debtors shall execute the Plan Administration Agreement.  On the Effective Date, except as otherwise provided in the Plan and except to the extent sold or transferred pursuant to the Sale Order and the Sale Transaction Documents or to the extent they constitute Liquidation Trust Assets, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all Plan Administration Assets, and any property acquired by any of the Debtors pursuant to the Plan, shall vest in the Post-Effective Date Debtors free and clear of all Liens,

Claims, and Interests except as otherwise provided in the Plan, the Plan Administration Agreement, or in this Confirmation Order.

**G.      Vesting of Assets in Liquidation Trust**

80.      The Liquidation Trust Agreement, substantially in the form filed in the Plan Supplement, is hereby approved in all respects.  On or before the Effective Date, the Debtors and the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall take all steps necessary or desirable to establish the Liquidation Trust and the beneficial interests therein, pursuant to, and in accordance with, the terms of the Plan and the Liquidation Trust Agreement. On the Effective Date, the Debtors shall irrevocably assign, transfer, convey and deliver (and shall be deemed to have irrevocably assigned, transferred, conveyed and delivered) all of their rights, title, and interest in and to all of the Liquidation Trust Assets to the Liquidation Trust, free and clear of all Claims, Liens, charges, and other encumbrances, and in accordance with section 1141 of the Bankruptcy Code, and the Liquidation Trust Assets shall automatically vest in the Liquidation Trust without further action by any Person.  The Liquidation Trust Assets shall be held by the Liquidation Trust as of the Effective Date in trust for the benefit of the Beneficiaries (as defined in the Liquidation Trust Agreement).  In pursuing any claim, right, or Retained Cause of Action that constitutes a Liquidation Trust Asset, the Liquidation Trust shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtors' rights with respect to the time periods in which a Cause of Action may be brought under the Bankruptcy Code or other applicable law.  The Debtors, the Post-Effective Date Debtors, the Purchaser, or anyone acting on their behalf, or any holder of a Claim against or Interest in any of the Debtors or the Post-Effective Date Debtors shall not be responsible for any expenses of the Liquidation Trust and shall incur no liability in connection with the Liquidation Trust (subject to any obligations of the Debtors, Post-Effective Date Debtors, or Purchaser, as applicable, pursuant

to the Plan or Liquidation Trust Agreement).  The appointment of Stephen Gray as Liquidation Trustee pursuant to the terms of the Liquidation Trust Agreement is hereby approved and the Liquidation Trustee is hereby (a) authorized to execute and perform under the Liquidation Trust Agreement, to appear and be heard before the Bankruptcy Court on all matters related to the Chapter 11 Cases (as a representative of the Liquidation Trust and/or under section 1123(b) of the Bankruptcy Code, as applicable); and (b) vested with all of the powers and authority set forth in the Plan and Liquidation Trust Agreement.

**H.     DIP Claims**

81.     In accordance with Article II.C of the Plan, (a) the DIP Claims will be Allowed under the Plan; and (b) all Allowed DIP Facility Claims will be repaid and satisfied in full by the Purchaser in accordance with the terms of the Asset Purchase Agreement.

**I.     Cancellation of Notes, Instruments and Equity Interests**

82.     On the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents evidencing or creating any prepetition Claim or Interest shall be deemed cancelled and of no further force and effect, except that each of the foregoing shall continue in effect solely to the extent necessary to:  (a) allow Holders of such Claims or Interests to receive Distributions under the Plan; (b) allow the Debtors, the Plan Administrator, the Disbursing Agent and the Administrative and collateral Agents, as applicable, to make post-Effective Date Distributions or take such other actions pursuant to the Plan on account of such Claims or Interests; (c) allow Holders of Claims or Interests to retain their respective rights and obligations vis-à-vis other Holders of Claims or Interests pursuant to any such applicable document or instrument (including the Intercreditor Agreements or any turnover provisions contained in the Super-Priority Credit Documents, Sixth Out Credit Documents or Seventh Out Credit Documents); (d) allow the Administrative and Collateral Agents to enforce

their rights, claims, and interests vis-à-vis any party other than the Debtors, including, but not limited to, any indemnification rights or any rights with respect to priority or payment or to exercise charging liens; (e) preserve any rights of the Administrative and Collateral Agents to payment of fees, expenses and indemnification obligations against money or property distributed to the lenders under the DIP Documents, Super-Priority Credit Documents, Sixth Out Credit Documents or the Seventh Out Credit Documents, as applicable, including any rights of enforcement, rights to priority of payment or to maintain, exercise, and/or enforce charging liens; (f) preserve the rights of the Administrative and Collateral Agents to appear and be heard in these Chapter 11 Cases to the extent such rights exist; and (g) permit the Administrative and Collateral Agents to perform any function necessary to effectuate the foregoing.

**J.      Release of Liens**

83.      Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of an Other Secured Claim, satisfaction in full of the portion of the Other Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and cancelled, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their Estates.

**K.      Corporate Action**

84.      Upon the Effective Date, by virtue of entry of this Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator or the Liquidation Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or

Interests, the Debtors, or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Purchaser, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or their Estates.

**L.     Settlement of Claims and Debtor Release**

85.     The provisions of Article X.A and X.B of the Plan are hereby approved in their entirety.  The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the integrated and global good faith compromise, resolution, or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such global compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

**M.     Third-Party Release**

86.     The provisions of Article X.C of the Plan are hereby approved in their entirety. Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which include by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual on the part of the Releasing Parties; (b) essential to the Confirmation of the Plan; (c) given in exchange for good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Third-Party Released Claim.

**N.     Injunction**

87.     The provisions of Article X.E of the Plan are hereby approved in their entirety.

**O.      Administrative Claims Bar Date**

88.      Unless previously filed or paid, requests for payment of Administrative Claims that arose after June 7, 2024 (other than DIP Facility Claims, Professional Fee Claims, claims arising under section 503(b)(1)(D) of the Bankruptcy Code, and Administrative Claims of the Bankruptcy Court or U.S. Trustee) must be filed and served on the Debtors or Plan Administrator, as applicable, pursuant to the procedures specified in the Confirmation Notice, substantially in the form annexed to this Confirmation Order as **Exhibit B**, no later than the Administrative Claims Bar Date.  If a Holder of an Administrative Claim (other than DIP Facility Claims, Professional Fee Claims, claims arising under section 503(b)(1)(D) of the Bankruptcy Code, and Administrative Claims of the Bankruptcy Court or U.S. Trustee) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Administrative Claim shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Litigation Trustee, or the Plan Administrator.  For the avoidance of doubt, nothing in this Confirmation Order or the Plan extends any deadline for the filing of any claims established in any previously entered order of the Court, including the *Order (I) Establishing (A) Bar Dates and (B) Related Procedures for Filing Proofs of Claim, (II) Approving the Form and Manner of Notice Thereof and (III) Granting Related Relief* [Docket No. 431] (the "Claims Bar Date Order") and the *Order (I) Setting a Bar Date for Filing Proofs of Administrative Claims (II) Establishing Administrative Claims Procedures, (III) Approving the Form and Manner of Filing Proofs of Administrative Claims, (IV) Approving Notice of the First Administrative Claims Bar Date, and (V) Granting Related Relief* [Docket No. 675] (the "First Administrative Claims Bar Date Order").

**P.      Deadline to File Professional Fee Claims**

89.     As provided in Article II.A.2 of the Plan, all Professional Persons seeking an award by the Bankruptcy Court of Professional Fee Claims (a) must file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date; and (b) must be paid in full from the Professional Fee Escrow Account in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Professional Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Plan Administrator. For the avoidance of doubt, the Plan Administrator is authorized to pay Professional Fee Claims incurred after the Effective Date (including Professional Fee Claims incurred in accordance with Article XII.C of the Plan) in the ordinary course from the Professional Fee Escrow Account, without approval from the Bankruptcy Court approval.  Objections to any final requests for payment of Professional Fee Claims must be filed no later than twenty-one (21) days from the date of the filing of such final requests for payment of Professional Fee Claims.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

**Q.      Deadline to File Rejection Claims**

90.     As provided in Article VI.E of the Plan, unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases by virtue of the Plan must be filed with the Claims and Noticing Agent and served upon the Debtors or the Plan Administrator, as applicable, within thirty (30) days after the Effective Date; *provided*, that the foregoing deadline shall apply only to Executory

Contracts or Unexpired Leases that are rejected automatically by operation of Article VI.A of the Plan, and the deadline for filing any rejection damage Claims relating to any Executory Contracts or Unexpired Leases rejected pursuant to a separate order of the Bankruptcy Court shall be the applicable deadline under such order or the Claims Bar Date Order, as applicable.  The deadline for Governmental Units to File any such Proofs of Claim is August 13, 2024 as set forth in the Claims Bar Date Order.  Any Proof of Claim arising from the rejection of an Executory Contract or Unexpired Lease must be filed in accordance with the requirements and procedures for filing a Proof of Claim set forth in the Claims Bar Date Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely filed shall be forever disallowed and barred, absent order of the Bankruptcy Court to the contrary.  All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

**R.      Exemption from Certain Transfer Taxes**

91.      To the fullest extent permitted by section 1146(a) of the Bankruptcy Code or pursuant to any other applicable law:  (a) the Sale Transaction; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; and/or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan and the Sale Transaction, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real

estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## S.    Preservation of Causes of Action

92.    Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan, pursuant to the Sale Transaction, or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action.  On and after the Effective Date, the Liquidation Trustee shall be the representative of the Debtors' Estates with respect to the Retained Causes of Action and may abandon, pursue, litigate, or settle any Retained Causes of Action.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Liquidation Trustee will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to the Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation of the Plan.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidation Trustee, as

applicable, shall retain and shall have, including through their authorized agents or representatives, the right, authority, and discretion to determine and to Initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, except as otherwise provided by the Plan.  Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of the Plan and the occurrence of the Effective Date.

**T.      Non-Severability of Plan Provisions Upon Confirmation**

93.      This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted, is valid and enforceable pursuant to its terms.   For the avoidance of doubt, the terms of the Committee Settlement as set forth in the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing the Sale of Assets, (III) Authorizing the Assumption and Assignment of Contracts and Leases, and (IV) Granting Related Relief* [Docket No. 681], approved under this Order, and implemented under the Plan are integrated with one another and the Plan and are non-severable.

**U.      Post-Confirmation Modifications**

94.      Without need for further order or authorization of the Bankruptcy Court, the Debtors are authorized to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein). Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their respective rights to materially alter, amend, or modify the Plan with respect

to such Debtors, one or more times, after Confirmation, and, to the extent necessary or required under section 1127 of the Bankruptcy Code and/or Bankruptcy Rule 3019, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XII.F of the Plan.

### V.   Governmental Agencies

95.     Except as expressly provided for in the Plan, nothing in the Plan, or this Confirmation Order, or other related Plan documents shall affect a release or limit any claim arising solely under the enforcement of the police powers or regulatory activities of the United States Government or any of its agencies, or any state and local authority, whatsoever.

### W.   Conflicts

96.     To the extent that any provision of the Disclosure Statement or any order (other than this Confirmation Order or the Sale Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided* that, in the event of any conflict with any provision of the Plan and this Confirmation Order, this Confirmation Order shall govern; *provided further* that, in the event of any conflict between the Plan, on the one hand, and the Sale Order, on the other hand, with respect to the Sale Transaction, the Sale Order shall govern.

### X.   Dissolution of the Committee

97.     The Committee shall dissolve, and the current and former members of the Committee shall be released and discharged from all rights and duties arising from, or related to,

these Chapter 11 Cases on the Effective Date; *provided* that, the Committee will continue in existence and have standing and a right to be heard for the following limited purposes:  (a) pursuing claims and final fee applications filed pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with Article II.A of the Plan; and (b) any appeals of the Confirmation Order related to the Committee Settlement.  Following the completion of the Committee's remaining duties set forth above, the Committee will be dissolved, and the retention or employment of the Committee's respective attorneys, accountants and other agents will terminate without further notice to, or action by, any Entity.

**Y.      Reservation of Rights**

98.     None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**Z.      Authorization to Consummate**

99.     The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (with the consent of the applicable parties and in accordance with Article IX.C of the Plan) of the conditions precedent to the Effective Date set forth in Article IX.B of the Plan.  Further, notwithstanding any stay of this Confirmation Order generally, the Debtors are authorized, with the consent of the Ad Hoc Group, to consummate steps one through nine contained in the Implementation Memorandum filed as part of the Plan Supplement.

**AA.     Substantial Consummation**

100.     Substantial consummation of the Plan under sections 1101(2) and 1127(b) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

**BB.**    **Reversal**

101.    If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' or Post-Effective Date Debtors' and Plan Administrator's receipt of written notice of such order, as applicable, and shall have no effect in any way on the Sale Order, the Sale Transaction, and the Sale Transaction Documents.  Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

**CC.**    **Retention of Jurisdiction**

102.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including those matters set forth in Article XI of the Plan.

**DD.**    **Terms of Injunctions and Stays**

103.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (including the Adversary Actions) pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays

contained in the Plan and this Confirmation Order shall remain in full force and effect in accordance with their terms.

**EE.    Stay of Confirmation**

104.    Any applicable stay of effectiveness provided in Bankruptcy Rules 3020(e), 6004(g), 6004(h), 6006(d), and 7062, or otherwise shall not apply to this Confirmation Order.  This Confirmation Order shall be effective and enforceable immediately upon its entry.  Subject to the occurrence of the Effective Date, the provisions of the Plan shall be immediately effective and enforceable and deemed binding upon any Holder of a Claim against or Interest in the Debtors, such Holder's respective heirs, executors, administrators, successors, and assigns (whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a Distribution under the Plan), all Entities that are party or subject to the settlements, compromises, releases, and injunctions described in the Plan, and any and all non-Debtor counterparties to Executory Contracts, Unexpired Leases, and any other prepetition agreements.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of the conditions precedent to the Effective Date set forth in Article IX of the Plan. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Supplement, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**FF.     Final Order**

105.    This Confirmation Order is a final order and the period within which an appeal must be filed commences upon the entry hereof.

Signed:  August 16, 2024

Christopher Lopez
United States Bankruptcy Judge

# Exhibit A

## (Plan)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ROBERTSHAW US HOLDING CORP., *et al.*, | : | Case No. 24-90052 (CML) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |

**FIRST AMENDED JOINT PLAN OF LIQUIDATION OF**
**ROBERTSHAW US HOLDING CORP. AND ITS AFFILIATED DEBTORS**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

George A. Davis
George Klidonas
Adam S. Ravin
Misha E. Ross
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
        george.klidonas@lw.com
        adam.ravin@lw.com
        misha.ross@lw.com

Timothy A. ("Tad") Davidson II
Ashley L. Harper
Philip M. Guffy
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: 713-220-4200
Email: taddavidson@HuntonAK.com
        ashleyharper@HuntonAK.com
        pguffy@HuntonAK.com

*Counsel for Debtors and Debtors in Possession*

Dated: July 31, 2024
Houston, Texas

---

[1]     The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are as follows: Range Parent, Inc. (7956); Robertshaw US Holding Corp. (1898); Robertshaw Controls Company (9531); Burner Systems International, Inc. (8603); Robertshaw Mexican Holdings LLC (9531); Controles Temex Holdings LLC (9531); Universal Tubular Systems, LLC (8603); and Robertshaw Europe Holdings LLC (8843). The primary mailing address used for each of the foregoing debtors is 1222 Hamilton Parkway, Itasca, Illinois 60143.

TABLE OF CONTENTS

Page

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME AND
    DEFINED TERMS .................................................................................................... 2

    **A.**    Rules of Interpretation; Computation of Time .................................................. 2
    **B.**    Consent Rights ................................................................................................... 3
    **C.**    Defined Terms ................................................................................................... 3

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS,  AND DIP
    FACILITY CLAIMS ............................................................................................ 22

    **A.**    Administrative Claims ...................................................................................... 23
        1.    General Administrative Claims ........................................................... 23
        2.    Professional Fee Claims ...................................................................... 23
        3.    Restructuring Fees and Expenses ........................................................ 24
        4.    Statutory Fees ...................................................................................... 25
    **B.**    Priority Tax Claims ........................................................................................... 25
    **C.**    DIP Facility Claims .......................................................................................... 25

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
    AND INTERESTS ............................................................................................... 26

    **A.**    Summary ........................................................................................................... 26
    **B.**    Classification and Treatment of Claims ........................................................... 27
        1.    Class 1 — Other Priority Claims ........................................................ 27
        2.    Class 2 — Other Secured Claims ........................................................ 27
        3.    Class 3 — Prepetition Secured Superpriority Claims .......................... 28
        4.    Class 4 — Prepetition FGI Mexican Promissory Note Claims ............ 28
        5.    Class 5 — General Unsecured Claims ................................................ 28
        6.    Class 6a — First-Out Funded Debt Deficiency Claims ....................... 29
        7.    Class 6b — Second-Out Funded Debt Deficiency Claims ................... 29
        8.    Class 6c — Third-Out Funded Debt Deficiency Claims ..................... 29
        9.    Class 6d — Fourth-Out Funded Debt Deficiency Claims ................... 30
        10.    Class 6e — Fifth-Out Funded Debt Deficiency Claims ..................... 30
        11.    Class 6f — Sixth-Out Funded Debt Deficiency Claims ..................... 30
        12.    Class 6g — Seventh-Out Funded Debt Deficiency Claims ................. 31
        13.    Class 7 — Intercompany Claims ......................................................... 31
        14.    Class 8 — Intercompany Interests ...................................................... 31
        15.    Class 9 — Subordinated Claims .......................................................... 31
        16.    Class 10 — Existing Equity Interests ................................................. 32
    **C.**    Special Provision Governing Unimpaired Claims ............................................ 32
    **D.**    Elimination of Vacant Classes ......................................................................... 32

ARTICLE IV. ACCEPTANCE OR REJECTION OF THIS PLAN ....................................... 32

    **A.**    Acceptance or Rejection of this Plan .............................................................. 32
            1.    Presumed Acceptance of Plan ............................................................ 32
            2.    Voting Classes .................................................................................. 33
            3.    Deemed Rejection of this Plan ......................................................... 33
    **B.**    Nonconsensual Confirmation ........................................................................ 33
    **C.**    Subordinated Claims .................................................................................... 33

ARTICLE V. MEANS FOR IMPLEMENTATION OF THIS PLAN ................................... 33

    **A.**    Transactions Effective as of the Effective Date ............................................ 33
    **B.**    General Settlement of Claims and Interests .................................................. 34
    **C.**    Intercreditor Agreements ............................................................................. 34
    **D.**    Committee Settlement .................................................................................. 34
    **E.**    Administrative Consolidation for Voting and Distribution Purposes Only ...... 35
    **F.**    Closing of Sale Transaction and Uses of Cash ............................................. 36
    **G.**    GUC Recovery Pool. .................................................................................... 36
    **H.**    Plan Administrator ....................................................................................... 37
            1.    Appointment ..................................................................................... 37
            2.    Authority .......................................................................................... 37
            3.    Indemnification ................................................................................ 38
    **I.**    The Plan Administration Assets .................................................................... 39
    **J.**    The Liquidation Trust .................................................................................. 39
            1.    Establishment of the Liquidation Trust and Vesting of the
                    Liquidation Trust Assets ................................................................... 39
            2.    Purpose of the Liquidation Trust ...................................................... 40
            3.    Appointment of the Liquidation Trustee ........................................... 40
            4.    Responsibilities and Authority .......................................................... 40
            5.    Powers of the Liquidation Trustee .................................................... 41
             6.    Compensation of the Liquidation Trustee and Professionals and
                    Consultants ....................................................................................... 42
            7.    Limitations on the Liquidation Trustee ............................................. 42
            8.    U.S. Federal Income Tax Treatment of the Liquidation Trust ............ 43
    **K.**    Merger of Debtors; Closing Cases of Debtor Affiliates ................................. 44
    **L.**    Cancellation of Existing Securities and Agreements ...................................... 44
    **M.**    Corporate Action ......................................................................................... 45
    **N.**    Exemption From Transfer Taxes ................................................................... 45
    **O.**    Effectuating Documents; Further Transactions ............................................. 45
    **P.**    Directors, Managers, and Officers of the Debtors ......................................... 46
    **Q.**    Insurance Policies ........................................................................................ 46
    **R.**    Preservation of Retained Causes of Action .................................................. 47
    **S.**    Closing of the Chapter 11 Cases .................................................................. 47
    **T.**    Cooperation Between Plan Administrator, Liquidation Trustee, and
            Purchaser ..................................................................................................... 48

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................................................................................. 48

    **A.**    Assumption or Rejection of Executory Contracts and Unexpired Leases ........ 48
    **B.**    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases .............................................................................. 49
    **C.**    Assumption of the D&O Policies ............................................................ 49
    **D.**    Payments Related to Assumption of Executory Contracts and Unexpired Leases ................................................................................... 49
    **E.**    Rejection Damages Claims .................................................................... 50
    **F.**    Reservation of Rights ........................................................................... 50
    **G.**    Nonoccurrence of Effective Date ........................................................... 50

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ........................................ 50

    **A.**    Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions ...................................................................................... 50
        1.    Timing and Calculation of Amounts to Be Distributed and Date of Distributions ............................................................................. 50
        2.    Entitlement to Distributions ................................................................ 51
    **B.**    Disbursing Agent .................................................................................. 51
    **C.**    Distributions on Account of Claims Allowed After the Effective Date .......... 51
        1.    Payments and Distributions on Disputed Claims................................. 51
        2.    Special Rules for Distributions to Holders of Disputed Claims ........... 51
    **D.**    Delivery of Distributions and Undeliverable or Unclaimed Distributions ....... 52
        1.    Delivery of Distributions in General.................................................... 52
        2.    Undeliverable Distributions and Unclaimed Property ......................... 52
        3.    Record Date for Distributions ............................................................ 52
        4.    Delivery of Distributions on Account of First- Through Fifth-Out Funded Debt Deficiency Claims ....................................................... 53
        5.    Delivery of Distributions on Sixth-Out Funded Debt Deficiency Claims ........................................................................................... 53
        6.    Delivery of Distributions on Seventh-Out Funded Debt Deficiency Claims ........................................................................................... 53
        7.    Fractional Distributions ..................................................................... 54
        8.    De Minimis Distributions ................................................................... 54
    **E.**    Compliance with Tax Requirement; Allocations...................................... 54
    **F.**    Surrender of Cancelled Instruments or Securities .................................... 55
    **G.**    Claims Paid or Payable by Third Parties ................................................ 55
        1.    Claims Paid by Third Parties ............................................................. 55
        2.    Claims Payable to Third Parties......................................................... 55
        3.    Applicability of Insurance Policies ..................................................... 56
    **H.**    Allocation of Plan Distributions between Principal and Interest.................. 56

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ........................................................ 56

    **A.**    Allowance and Disallowance of Claims ...................................... 56
    **B.**    Prosecution of Objections to Claims .......................................... 56
    **C.**    Estimation of Claims .................................................................. 57
    **D.**    Disputed Claims Reserves .......................................................... 57
    **E.**    Equitably Subordinated Funded Debt Claim Reserve ................. 58
    **F.**    Distributions After Allowance .................................................... 59
    **G.**    Disallowance of Certain Claims ................................................. 59

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN .......................................................... 59

    **A.**    Conditions Precedent to Confirmation ........................................ 59
    **B.**    Conditions Precedent to the Effective Date ................................ 60
    **C.**    Waiver of Conditions ................................................................. 61
    **D.**    Effect of Non-Occurrence of Conditions to Confirmation or Consummation .......................................................................... 62
    **E.**    Substantial Consummation ........................................................ 62

ARTICLE X. RELEASE, EXCULPATION, INJUNCTION AND RELATED PROVISIONS ........................................................................................ 62

    **A.**    General ....................................................................................... 62
    **B.**    **Debtor Release** ....................................................................... 63
    **C.**    **Release by Holders of Claims and Interests** ......................... 64
    **D.**    **Exculpation** ........................................................................... 65
    **E.**    Permanent Injunction ................................................................. 66
    **F.**    Setoffs ....................................................................................... 66
    **G.**    Release of Liens ......................................................................... 67
    **H.**    Preservation of All Causes of Action Not Expressly Settled or Released ........ 67
    **I.**    Compromise of GUC Causes of Action ..................................... 68
    **J.**    Integral Part of Plan ................................................................... 68

ARTICLE XI. RETENTION OF JURISDICTION ..................................................... 68

ARTICLE XII. MISCELLANEOUS PROVISIONS ..................................................... 70

    **A.**    Reservation of Rights ................................................................. 70
    **B.**    No Government Releases ............................................................ 70
    **C.**    Payment of Statutory Fees ......................................................... 70
    **D.**    Agent Expenses ......................................................................... 70
    **E.**    Statutory Committee ................................................................... 71
    **F.**    Modification of Plan .................................................................. 71
    **G.**    Revocation or Withdrawal of Plan ............................................. 72
    **H.**    Successors and Assigns .............................................................. 72
    **I.**    Further Assurances ..................................................................... 72

**J.**   Severability ................................................................................................ 72
**K.**   Votes Solicited in Good Faith.................................................................... 73
**L.**   Service of Documents ................................................................................ 73
**M.**   Governing Law ........................................................................................... 74
**N.**   Tax Reporting and Compliance ................................................................. 74
**O.**   Schedules ................................................................................................... 74
**P.**   Conflicts .................................................................................................... 74
**Q.**   Entire Agreement ....................................................................................... 75
**R.**   2002 Notice Parties.................................................................................... 75

**JOINT PLAN OF LIQUIDATION OF
ROBERTSHAW US HOLDING CORP. AND ITS AFFILIATED DEBTORS
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Robertshaw US Holding Corp., Range Parent, Inc., and certain of Range Parent, Inc.'s direct and indirect subsidiaries, as debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors," and the Debtors and their direct and indirect subsidiaries, collectively, "Robertshaw"), jointly propose the following chapter 11 plan of liquidation (as may be amended, modified or supplemented from time to time in accordance with the terms hereof, this *"Plan"*) for the resolution of the outstanding Claims (as defined below) against and Interests (as defined below) in each of the Debtors.  This Plan is a liquidating plan.  Pursuant to a separate order to be entered by the Court, the Debtors intend to sell substantially all of their assets to the Purchaser (defined below).  The Plan provides for the distribution of any proceeds from such sale, as well as the distribution of other cash, the appointment of a plan administrator to make certain distributions and wind up the Debtors' estates, and the creation of a liquidating trust that will administer and liquidate certain property of the Debtors, including the Retained Causes of Action, and make certain distributions.  The Plan further provides for the substantive consolidation of all of the Debtors solely for the purposes of voting, determining which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and Plan Distributions.

The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.  Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, and historical financial information, and for a summary and analysis of this Plan, the treatment provided for herein and certain related matters.  There also are other agreements and documents, which will be filed with the Bankruptcy Court (as defined below), that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Schedules (each as defined below).  All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Fed. R. Bankr. P. 3019 and the terms and conditions set forth in this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

This Plan reflects the terms of the Committee Settlement among the Debtors, the Committee, the Ad Hoc Group, and ORC (each as defined below) to be implemented in conjunction with the consummation of the Sale Transaction pursuant to which, in exchange for the receipt of certain releases set forth herein:

(a) Subject in all respects to the Consenting Lender Consent Rights, the Ad Hoc Group and ORC each agree to cause the Purchaser to transfer to the Debtors, the following amounts (which amounts may be satisfied from the cash proceeds acquired by the Purchaser under the Sale Transaction):

i. cash sufficient to satisfy Administrative Claims, Professional Fee Claims, Priority Tax Claims,

1

      ii.   cash that will be earmarked for the GUC Recovery Pool;

      iii.  cash that will be earmarked for the Funded Debt Deficiency Claim Pool; and

      iv.  cash sufficient to cover the Wind Down; and

(b) Go-Forward Trade Claims shall be assumed by the Purchaser under the Asset Purchase Agreement pursuant to the terms of the Sale Transaction and the Asset Purchase Agreement with the consent of the Purchaser and the Debtors.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS

*A.*    *Rules of Interpretation; Computation of Time*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced item will be substantially in that form or substantially on those terms and conditions; (c) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, or other agreement or document will mean as it may be amended, modified or supplemented from time to time; (d) any reference to an Entity as a Holder of a Claim or an Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; (f) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, indenture, or other agreement or document entered into in connection with this Plan and except as expressly provided in herein, the rights and obligations arising pursuant to this Plan will be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to this Plan; (j) references to a specific article, section, or subsection of any statute, rule, or regulation expressly referenced herein will, unless otherwise specified, include any amendments to or successor provisions of such article, section, or subsection; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) references to "shareholders," "directors," and/or "officers" will also include

"members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (m) all references to statutes, regulations, orders, rules of courts, and the like will mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) will apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan will occur on a day that is not a Business Day (as defined below), then such transaction will instead occur on the next succeeding Business Day.

**B.** *Consent Rights*

Notwithstanding anything in the Plan to the contrary, any and all consultation, information, notice, and consent rights set forth in the Restructuring Support Agreement (including the exhibits thereto), the DIP Order, and the DIP Credit Agreement, including any Consenting Lender Consent Rights, with respect to the form and substance of this Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents (as defined in the Restructuring Support Agreement), including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be (a) incorporated herein by this reference (including to the applicable definitions in Article I.C hereof) and (b) fully enforceable as if stated in full herein.

**C.** *Defined Terms*

Unless the context otherwise requires, the following terms will have the following meanings when used in capitalized form herein:

"*Ad Hoc Group*" means the ad hoc group of certain existing secured lenders under the Prepetition Super-Priority Credit Agreement (and/or investment advisors to secured lenders) represented by the Ad Hoc Group Advisors.

"*Ad Hoc Group Advisors*" means (i) Gibson, Dunn & Crutcher LLP, counsel to the Ad Hoc Group, (ii) Munsch Hardt Kopf & Harr, P.C., counsel to the Ad Hoc Group, (iii) O'Melveney and Myers LLP, litigation counsel to the Ad Hoc Group, and (iv) Houlihan Lokey Capital, Inc., as investment banker to the Ad Hoc Group.

"*Additional Sale Consideration*" means, in accordance with and without modifying the terms of the Committee Settlement, the GUC Recovery Pool and the Funded Debt Deficiency Claim Pool to be paid by the Purchaser or funded by Retained Cash on or prior to the Effective Date.

"*Additional Sale Consideration Escrow Account*" means a segregated interest-bearing account to be established by the Debtors into which the Additional Sale Consideration shall be deposited on or prior to the Effective Date.

"*Adjourned Objections*" has the meaning set forth in the Sale Order.

"*Administrative and Collateral Agents*" means the DIP Agent, the First Lien Agent, Second Lien Agent, and the Super-Priority Agent and their respective agents.

"*Administrative Claim*" means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2), 507(b) of the Bankruptcy Code other than the DIP Facility Claims and Professional Fee Claims, including, without limitation: (a) any actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Claims pursuant to section 503(b)(9) of the Bankruptcy Code; and (c) all fees and charges assessed against the Estates pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code and (d) the Restructuring Fees and Expenses.

"*Administrative Claims Bar Date*" means (a) with respect to any Administrative Claim arising on or prior to June 7, 2024, July 26, 2024, and (b) with respect to any Administrative Claim arising after June 7, 2024, the Business Day that is thirty (30) days after the Effective Date, or such other date as approved by Final Order of the Bankruptcy Court, which shall be the deadline to file Administrative Claims.

"*Administrative Claims Objection Deadline*" means the Business Day that is 120 days after the Effective Date; *provided* that the Administrative Claims Objection Deadline may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Plan Administrator after notice and a hearing.

"*Adversary Actions*" means the Guardian Action and the Invesco Action.

"*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"*Agent Expenses*" means the reasonable and documented fees and expenses of ArentFox Schiff LLP as counsel to the First Lien Agent, Second Lien Agent, and Super-Priority Agent.

"*Allowed*" means, all or a portion of any Claim or Interest (a) that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Proof of Claim or proof of Interest has been timely filed as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (b) that is evidenced by a Proof of Claim or proof of Interest filed by the applicable Claims Bar Date as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtors prior to the Effective Date, or the Plan Administrator on or after the Effective Date or (iii) pursuant to the terms of this Plan. For purposes of computing Distributions under this Plan, a Claim that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code, as may be required to effectuate the waterfall provisions of the Prepetition Super-Priority Credit Agreement or the Intercreditor Agreements, or

as otherwise expressly set forth in this Plan.  For the avoidance of doubt, any Claim that relates to obligations that were assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be an Allowed Claim for purposes of this Plan.  Any Equitably Subordinated Funded Debt Claim shall not be an Allowed Claim until its priority is established by a Final Order.

"*Asset Purchase Agreement*" means the asset purchase agreement by and between the Debtors and the Purchaser, attached to the Sale Order as Exhibit A.

"*Assigned Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases that may be assumed and assigned to the Purchaser in accordance with any Asset Purchase Agreement approved by a Sale Order, as the same may be amended, modified, or supplemented from time to time and subject in all respects to the Consenting Lender Consent Rights.

"*Assumed Liabilities*" has the meaning set forth in the Sale Transaction Documents (or such other similar term as may be used in the Sale Transaction Documents).

"*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, and which shall not include any Executory Contract or Unexpired Lease assumed in accordance with any Asset Purchase Agreement approved by a Sale Order and shall be subject to the Consenting Lender Consent Rights.

"*Avoidance Action*" means any avoidance, recovery, subordination claims or causes of action commenced, or that may be commenced, before or after the Effective Date pursuant to sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code or under applicable law.

"*Ballot*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of this Plan in accordance with this Plan and the procedures governing the solicitation process, and which must be actually received by the Balloting Agent on or before the Voting Deadline.

"*Balloting Agent*" means Kroll Restructuring Administration LLC in its capacity as notice and balloting agent for the Debtors.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended from time to time, as applicable to the Chapter 11 Cases.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

"*Bidding Procedures Order*" means the *Order (I) Approving Asset Purchase Agreement for Sale of Substantially All of Debtors' Assets; (II) Approving Bidding Procedures; (III) Approving Bidding Protections; (IV) Scheduling an Auction and a Sale Hearing; (V) Approving the Form and Manner of Notice Thereof; (VI) Approving Assumption and Assignment Procedures for Executory Contracts and Unexpired Leases; and (VII) Granting Related Relief* entered by the Bankruptcy Court on March 21, 2024 [Docket No. 359].

"*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Cash Collateral*" has the meaning set forth in the DIP Order.

"*Causes of Action*" means any action, Claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law; *provided* that Causes of Action shall not include any causes of action transferred or sold pursuant to the Sale Order (including, without limitation, Avoidance Actions).  For the avoidance of doubt, Causes of Action include (to the extent not transferred or sold pursuant to the Sale Order): (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; and (c) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

"*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered and procedurally consolidated chapter 11 cases pending for all of the Debtors in the Bankruptcy Court.

"*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates, whether or not asserted or Allowed.

"*Claims and Noticing Agent*" means Kroll Restructuring Administration LLC, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

"*Claims Bar Date*" means the applicable deadline by which Proofs of Claim must be filed under the Claims Bar Date Order.

"*Claims Bar Date Order*" means the *Order (I) Establishing (A) Bar Dates and (B) Related Procedures for Filing Proofs of Claim, (II) Approving the Form and Manner of Notice Thereof and (III) Granting Related Relief* entered by the Bankruptcy Court on April 4, 2024 [Docket No. 431].

"*Claims Objection Deadline*" means the date that is ninety (90) days after the Effective Date, which date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Plan Administrator.

"*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

"*Closing Date*" has the meaning set forth in the Asset Purchase Agreement.

"*Committee*" means the Official Committee of Unsecured Creditors (and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code pursuant to that certain *Notice of Appointment of Creditors' Committee* filed by the U.S. Trustee on February 23, 2024 [Docket No. 211], as amended by the *United States Trustee's Notice of Reconsolidated Committee of Unsecured Creditors* [Docket No. 218], as such committee may be reconstituted from time to time.

"*Committee Professionals*" means (i) McDermott Will & Emery LLP and (ii) FTI Consulting, Inc.

"*Committee Settlement*" means the settlement reached between the Debtors, the Committee, the Ad Hoc Group, and ORC that is embodied in this Plan pursuant to which, among other things, the Additional Sale Consideration is provided to Holders of General Unsecured Claims in exchange for certain releases provided under the Plan.

"*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been: (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

"*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court regarding Confirmation of this Plan pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

"*Confirmation Order*" means the final, non-appealable order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, supplemented, or modified from time to time, which order shall be in form and substance reasonably acceptable to the Debtors and the Committee and subject to the Consenting Lender Consent Rights.

"*Consenting Lender Consent Rights*" means any applicable consent, approval, and/or consultation right of the Requisite Consenting Creditors and/or the Sponsor as set forth in the Restructuring Support Agreement.

7

"*Consummation*" means the occurrence of the Effective Date of this Plan.

"*Contract/Lease Notice*" has the meaning set forth in the Disclosure Statement Order.

"*Cure*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.  For the avoidance of doubt, except as otherwise provided herein, this term shall not apply to any cure amounts attributable to an Executory Contract or Unexpired Lease assumed and assigned to the Purchaser under the Sale Order.

"*Cure Claim*" means the Claim of any counterparty to any Executory Contract or Unexpired Lease, based upon a monetary default, if any, by any Debtor on such Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

"*Cure Notice*" means, with respect to an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, a notice that (a) sets forth the proposed amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under the Plan; and (c) sets forth the procedures for objecting to the proposed assumption of Executory Contracts and Unexpired Leases, including the proposed objection deadline, and for the resolution by the Bankruptcy Court of any such disputes.

"*Cure/Assumption Objection Deadline*" means the date that is fourteen (14) days after filing of the Assumed Executory Contracts and Unexpired Leases Schedule and service of the Cure Notice; *provided* that if any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedule after the filing of the initial Assumed Executory Contracts and Unexpired Leases Schedule, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtors is proposed to be assigned to a third party after the filing of the initial Assumed Executory Contracts and Unexpired Leases Schedule, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) fourteen (14) days after service of the amended Assumed Executory Contracts and Unexpired Leases Schedule with such modification and (b) the date of the scheduled Confirmation Hearing; *provided further that* the forgoing shall not apply to any Executory Contract or Unexpired Lease that has been assumed and assigned pursuant to a Final Order of the Bankruptcy Court, including the Sale Order.

"*D&O Insurance Coverage*" means coverage for insureds under any applicable D&O Policies.

"*D&O Policies*" means all insurance policies (including policies providing D&O Insurance Coverage and D&O Tail Coverage) and related agreements of indemnity for directors', members',

trustees' and officers' liability issued or providing coverage at any time to any of the Debtors or their Representatives and all agreements, documents or instruments relating thereto, for any policy period whatsoever.

"*D&O Tail Coverage*" means the extension of the D&O Insurance Coverage for any period beyond the end of the applicable policy period, including but not limited to any extension for a period of six (6) years after the Effective Date for claims based on conduct occurring prior to the Effective Date.

"*Debtor Release*" has the meaning set forth in Article X.B herein.

"*December Transaction*" means a series of refinancing transactions between the Debtors, the Ad Hoc Group, and ORC entered into on or around December 11, 2023.

"*Definitive Documents*" has the meaning set forth in the Restructuring Support Agreement. Each Definitive Document shall be consistent with the Restructuring Support Agreement and, in each case, reasonably acceptable to the Debtors and the Committee and subject to the Consenting Lender Consent Rights.

"*Delaware Trust*" means Delaware Trust Company as administrative and collateral agent under the DIP Credit Agreement, Prepetition Super-Priority Credit Agreement, the Prepetition First Lien Credit Agreement, and the Prepetition Second Lien Credit Agreement.

"*DIP Agent*" has the meaning set forth in the DIP Order.

"*DIP Credit Agreement*" has the meaning set forth in the DIP Order.

"*DIP Documents*" has the meaning set forth in the DIP Order.

"*DIP Facility Claim*" means any Claim held by any DIP Secured Party derived from or based upon the DIP Credit Agreement or the DIP Order, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, indemnification, and other charges arising under or related to the DIP Credit Agreement.

"*DIP Lenders*" has the meaning set forth in the DIP Order.

"*DIP Order*" means the *Final Order (I) Authorizing Debtors to Obtain Post-Petition Financing; (II) Authorizing Debtors to Continue the Use of Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection to Prepetition First Out Super-Priority Secured Parties; (V) Modifying Automatic Stay; and (VI) Granting Related Relief* entered by the Bankruptcy Court on March 21, 2024 [Docket No. 357].

"*DIP Secured Parties*" has the meaning set forth in the DIP Order.

"*Disallowed*" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtors or Plan Administrator in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if

listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim or a proof of Interest, as applicable, has not been timely filed or deemed timely filed pursuant to this Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any proof of Claim or proof of Interest; (vi) is evidenced by a proof of Claim or a proof of Interest which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (viii) where the holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code.  In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"*Disbursing Agent*" means the Debtors, or the Entity or Entities, chosen (at any time) by the Debtors or the Plan Administrator to make or facilitate Distributions pursuant to this Plan.  For the avoidance of doubt, the Plan Administrator may serve as the Disbursing Agent.

"*Disclosure Statement*" means the *Disclosure Statement for First Amended Joint Plan of Liquidation for Robertshaw US Holding Corp. and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code*, dated June 21, 2024, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law, which shall be in form and substance reasonably acceptable to the Debtors and subject to the Consenting Lender Consent Rights.

"*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement and the procedures for soliciting and tabulating votes on the Plan, which shall be in form and substance reasonably acceptable to the Debtors and the Committee and subject to the Consenting Lender Consent Rights.

"*Disputed*" means, with respect to any Claim or Interest, a Claim or Interest that (a) is neither Allowed nor Disallowed under this Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; or (b) any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.

"*Disputed Administrative Claims Reserve*" means the reserve established pursuant to and governed by Article VIII.D of the Plan.

"*Disputed Claims Reserve*" means any reserve established pursuant to and governed by Article VIII.D of the Plan.

10

"*Disputed General Unsecured Claims Reserve*" means the reserve established pursuant to and governed by Article VIII.D of the Plan.

"*Distribution*" means a distribution made or facilitated by the Disbursing Agent pursuant to this Plan which, for the avoidance of doubt, may include a disbursement from the Liquidation Trust.

"*Distribution Date*" means a date or dates, including the Initial Distribution Date, as determined by the Disbursing Agent in accordance with the terms of this Plan, on which the Disbursing Agent makes a Distribution to Holders of Allowed Claims.

"*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims are eligible to receive Distributions under this Plan, which date shall be two (2) Business Days prior to the Effective Date.

"*Effective Date*" means the first Business Day on which all of the conditions specified in Article IX.B hereof have been satisfied or waived pursuant to Article IX.C hereof.

"*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

"*Equitably Subordinated Funded Debt Claim*" means any Funded Debt Deficiency Claim that the Debtors, the Committee, the Ad Hoc Group or ORC identifies in good-faith as being subject to a colorable claim for subordination under section 510(c) of the Bankruptcy Code.

"*Equitably Subordinated Funded Debt Claim Reserve*" means the reserve established pursuant to and governed by Article VIII.F of the Plan.

"*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

"*Exculpated Parties*" means collectively: (a) the Debtors; and (b) the Committee and each of the members of the Committee.

"*Exculpation*" means the exculpation provision set forth in Article X.D hereof.

"*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"*Exhibit*" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

"*Existing Equity Interests*" means, collectively, (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) or any other equity or ownership interest (including any such interest in a partnership, limited liability company, or other Entity) in any Debtor, and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, earn-out rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, including arrangements or commitments of any

character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor, other than Intercompany Interests.

"*Fifth-Out Funded Debt Deficiency Claim*" means any Claim on account of Prepetition Fifth Out Term Loans arising under the Prepetition Super-Priority Credit Agreement that is not a Secured Claim, including the principal amount plus any accrued and unpaid interest thereon.

"*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

"*First Lien Agent*" means Delaware Trust, as administrative and collateral agent under the Prepetition First Lien Credit Agreement.

"*First-Out Funded Debt Deficiency Claim*" means any Claim on account of Prepetition First Out Term Loans arising under the Prepetition Super-Priority Credit Agreement that is not a Secured Claim, including the principal amount plus any accrued and unpaid interest thereon; *provided* that for purposes of the Liquidation Trust, First-Out Funded Debt Deficiency Claims shall include without limitation, interest payable pursuant thereto, whether accruing pre or postpetition and whether or not Allowed.

"*Fourth-Out Funded Debt Deficiency Claim*" means any Claim on account of Prepetition Fourth Out Term Loans arising under the Prepetition Super-Priority Credit Agreement that is not a Secured Claim, including the principal amount plus any accrued and unpaid interest thereon.

"*Funded Debt Deficiency Claim*" means any First-Out Funded Debt Deficiency Claim, Second-Out Funded Debt Deficiency Claim, Third-Out Funded Debt Deficiency Claim, Fourth-Out Funded Debt Deficiency Claim, Fifth-Out Funded Debt Deficiency Claim, Sixth-Out Funded Debt Deficiency Claim, or Seventh-Out Funded Debt Deficiency Claim. For the avoidance of doubt, any claim held by Invesco Senior Secured Management Inc. or its affiliates shall constitute a Funded Debt Deficiency Claim and not a General Unsecured Claim.

"*Funded Debt Deficiency Claim Pool*" means cash equal to $10 million, which cash shall be (a) provided by the Purchaser utilizing the cash proceeds acquired by the Purchaser pursuant to the Sale Order, (b) included in the Wind-Down Amount as a carve-out from collateral, and (c) held, subject to Article VIII hereof, in the Additional Sale Consideration Escrow Account.

"*General Unsecured Claim*" means any Unsecured Claim against any of the Debtors that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) a Professional Fee Claim; (f) a Funded Debt Deficiency Claim; (g) an Intercompany Claim; (h) a Go-Forward Trade Claim paid pursuant to the Asset Purchase Agreement; or (i) a Subordinated Claim.

"*Go-Forward Trade Claims*" means any prepetition General Unsecured Claim held by a claimant that provides, or will provide, goods and services necessary to the operation of the business following the consummation of the Sale Transaction, as determined by the Debtors and the Purchaser, in consultation with the Committee, and which claimant will continue to do business with the Purchaser after the consummation of the Sale Transaction. Go-Forward Trade Claims shall be identified through an Exhibit that is annexed to the Sale Order, the Asset Purchase Agreement, or the Plan Supplement and may be amended up until the Plan Effective Date.

"*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"*Guardian Action*" means that certain adversary proceeding commenced in these Chapter 11 Cases on February 15, 2024, Adv. Proc. No. 24-03025 (CML), against Guardian Life Insurance Company of America, *et al*.

"*GUC Causes of Action*" means all Claims or Causes of Action, other than Retained Causes of Action owned by the Debtors' Estates and arising under section 547 of the Bankruptcy Code.

"*GUC Recovery Pool*" means cash equal to $11 million minus the amount paid on account of Go-Forward Trade Claims pursuant to the Asset Purchase Agreement, which cash shall be held, subject to Article VIII hereof, in the Additional Sale Consideration Escrow Account, and shall solely be available to fund recoveries to Holders of General Unsecured Claims.

"*Hewitt Declaration*" means the *Declaration of John Hewitt in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 19].

"*Holder*" means any Person or Entity that is the owner of record of a Claim or an Interest, as applicable.

"*Impaired*" means, with respect to a Claim or Interest, or Class of Claims or Interests, a Claim or Class that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Implementation Memorandum*" means the memorandum describing the sequencing of transfers and other corporate transactions making up or otherwise contemplated by the Sale Transaction and this Plan that are to be effectuated pursuant to the Plan in compliance with the Bankruptcy Code and other applicable United States law, in a tax efficient manner, and in accordance with the procedures to be followed in connection therewith.

"*Initial Distribution*" means the first Distribution that the Disbursing Agent, makes to Holders of Allowed Claims.

"*Initial Distribution Date*" means the date selected by the Debtors on or as soon as reasonably practicable after the Effective Date on which the Initial Distribution occurs.

"*Insurance Policies*" means all insurance policies and related agreements issued or providing coverage at any time to any of the Debtors or any of their predecessors and all agreements, documents, or instruments relating thereto, including any D&O Policies.

"*Insurer*" means any non-Debtor company or other Entity that issued or entered into an Insurance Policy (including any third party administrator) and any respective predecessors and/or affiliates thereof.

"*Intercompany Claim*" means a Claim against any Debtor by an Affiliate of such Debtor, which Affiliate may be another Debtor.

"*Intercompany Interest*" means, collectively, (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) or any other equity or ownership interest (including any such interest in a partnership, limited liability company, or other Entity) in any Debtor, and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, earn-out rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, including arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor held by an Affiliate of such Debtor, which Affiliate may be another Debtor.

"*Intercreditor Agreements*" has the meaning set forth in the DIP Order.

"*Interests*" means, collectively, Equity Interests and Intercompany Interests.

"*Invesco Action*" means that certain adversary proceeding commenced in these Chapter 11 Cases on February 15, 2024, Adv. Proc. No. 24-03024 (CML), against Invesco Senior Secured Management Inc., *et al*.

"*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"*Liquidation Trust*" means the trust that will come into existence upon the Effective Date and into which all of the Liquidation Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Liquidation Trust Agreement.

"*Liquidation Trust Agreement*" means the agreement governing the Liquidation Trust dated on or about the Effective Date, substantially in the form included in the Plan Supplement, and reasonably acceptable to the Settlement Parties.

"*Liquidation Trust Assets*" means the Retained Causes of Action.

"*Liquidation Trust Beneficiaries*" means the Holders of (i) Allowed General Unsecured claims in Class 5 and (ii) Allowed First-Out Funded Debt Deficiency Claims in Class 6a but, as to clause (ii), such First-Out Funded Debt Deficiency Claims shall include, without limitation, interest payable pursuant thereto, whether accruing pre or postpetition and whether or not Allowed.

"*Liquidation Trustee*" means an individual appointed by the Committee, in consultation with the Debtors, the Ad Hoc Group and ORC, and disclosed in the Plan Supplement, or any successor(s) thereto, to act as trustee of the Liquidation Trust.

"*May Ad Hoc Group*" has the meaning set forth in the Hewitt Declaration.

"*May Transaction*" means a series of financing transactions entered into between the Debtors and the May Ad Hoc Group on May 9, 2023.

"*ORC*" means Range Investor Holdings, LLC, Range Finance Investors, L.P., One Rock Capital Partners II, LP, One Rock Capital Partners, LLC and, where applicable, their Affiliates.

"*ORC Advisors*" means (i) Debevoise & Plimpton LLP, counsel to ORC and (ii) Kelley, Drye & Warren, counsel to ORC.

"*Opt-Out Release Form*" has the meaning set forth in the Disclosure Statement Order.

"*Other Priority Claim*" means any Claim against any of the Debtors entitled to priority in payment as specified in section 507(a)(4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

"*Other Secured Claim*" means any Secured Claim against any of the Debtors other than a Prepetition Secured Superpriority Claim, a Prepetition FGI Mexican Promissory Note Claim, or a DIP Facility Claim.

"*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

"*Petition Date*" means February 15, 2024.

"*Plan Administration Agreement*" means the agreement to be entered into by and among the Debtors and the Plan Administrator with respect to the Plan Administration Process, which shall be included in the Plan Supplement and be in form and substance reasonably acceptable to the Debtors and subject to the Consenting Lender Consent Rights.

"*Plan Administration Assets*" has the meaning set forth in Article V.I of this Plan.

"*Plan Administration Expenses*" means all reasonable and documented fees, expenses, and costs incurred by the Plan Administrator in connection with carrying out the obligations under the Plan Administration Agreement in accordance with the Post-Effective Date Budget and with the consent of the Purchaser and subject to the Consenting Lender Consent Rights, including the maintenance or disposition of the Plan Administration Assets (including, but not limited to, Plan Administrator fees, attorneys' fees, the fees of professionals, and other Persons retained by the Plan Administrator, personnel-related expenses, any Taxes imposed in respect of the Plan Administration Assets), which shall be funded as part of the Wind-Down Reserve in accordance with the terms of this Plan.

"*Plan Administration Indemnified Parties*" has the meaning set forth in Article V.H.3 of this Plan.

"*Plan Administration Process*" means the process for resolving and paying Claims described in Article VIII of this Plan.

"*Plan Administrator*" means an individual selected by the Debtors and the Ad Hoc Group in consultation with the Committee and ORC, and disclosed in the Plan Supplement, or any successor(s) thereto, to be the representative of the Post-Effective Date Debtors on and after the Effective Date, and who shall have the rights, powers, duties and responsibilities set forth in this Plan and in the Plan Administration Agreement.

"*Plan Schedule*" means a schedule annexed to this Plan or an appendix to the Disclosure Statement (as amended, modified or otherwise supplemented from time to time).

"*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules and the Implementation Memorandum, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, supplemented, or modified from time to time, which, in each case, shall be in form and substance reasonably acceptable to the Debtors in consultation with the Committee and subject to the Consenting Lender Consent Rights. The Exhibits and Plan Schedules (or substantially final forms thereof) will be filed with the Bankruptcy Court at least seven (7) days prior to the deadline to object to Confirmation.

"*Post-Effective Date Budget*" means the budget, which shall be subject to the Consenting Lender Consent Rights, setting forth, among other things, (a) the aggregate amounts of Administrative Claims, Other Priority Claims, Priority Tax Claims, and Other Secured Claims, in each case against the Debtors, to be paid under this Plan; (b) the Professional Fee Escrow Amount; and (c) the expenses of the Wind-Down from and after the Effective Date, including the Plan Administration Expenses; *provided* that, pursuant to the Committee Settlement, the Post-Effective Date Budget shall be funded by the Purchaser in accordance with the Sale Order and the Asset Purchase Agreement to ensure the satisfaction of all Administrative Claims, Other Priority Claims, Priority Tax Claims, and Professional Fee Claims, to provide for payment in full of (i) all Professional Fee Claims, (ii) all Taxes incurred in connection with the Wind-Down (including Taxes incurred by the Debtors prior to the consummation of the Wind-Down), and (iii) all Administrative Claims, Other Priority Claims, and Priority Tax Claims required to be paid pursuant to this Plan, including the anticipated expenses of the Wind-Down from and after the Effective Date (including Plan Administration Expenses as contemplated in the Post-Effective Date Budget); *provided*, *further*, *however*, that any Retained Cash shall reduce, on a dollar-for-dollar basis but without duplication, the Wind-Down Amount to be paid by the Purchaser on or prior to the Effective Date to fund the Wind-Down pursuant to the Post-Effective Date Budget.

"*Post-Effective Date Debtors*" means the Debtors after the Effective Date.

"*Prepetition Fifth Out Term Loans*" means the loans borrowed under the fifth-out secured term loan facility provided pursuant to the Prepetition Super-Priority Credit Agreement.

"*Prepetition First Lien Credit Agreement*" means that certain first lien credit agreement dated as of February 28, 2018 (as amended supplemented, restated, replaced or otherwise modified from time to time) among Robertshaw US Holding Corp., Range Parent as the holding company guarantor, the other Debtors party thereto as borrowers and guarantors, the Prepetition First Lien

Lenders, and Acquiom Agency Services LLC and Seaport Loan Products LLC, as co-administrative agents.

"*Prepetition First Lien Lenders*" means the lenders under the Prepetition First Lien Credit Agreement and any party that becomes a lender thereunder thereto from time to time.

"*Prepetition First Out Term Loans*" means the loans borrowed under the first-out secured term loan facility provided pursuant to the Prepetition Super-Priority Credit Agreement.

"*Prepetition FGI Mexican Promissory Note*" means that certain Promissory Note, dated as of November 10, 2022 (as amended, restated, supplemented, or otherwise modified from time to time) between Robertshaw Controls Company and FGI Equipment Finance LLC.

"*Prepetition FGI Mexican Promissory Note Claim*" means claims arising under Prepetition FGI Mexican Promissory Note, including the principal amount plus any accrued and unpaid interest thereon.

"*Prepetition Fourth Out Term Loans*" means the loans borrowed under the fourth-out secured term loan facility provided pursuant to the Prepetition Super-Priority Credit Agreement.

"*Prepetition Second Lien Credit Agreement*" means that certain second lien credit agreement dated as of February 28, 2018 (as amended, supplemented, restated, replaced or modified from time to time), among Range Parent as the holding company guarantor, the other Debtors party thereto as borrowers and guarantors, and the Prepetition Second Lien Lenders.

"*Prepetition Second Lien Lenders*" means the lenders under the Prepetition Second Lien Credit Agreement and any party that becomes a lender thereunder thereto from time to time.

"*Prepetition Second Out Term Loans*" means the loans borrowed under the second-out secured term loan facility provided pursuant to the Prepetition Super-Priority Credit Agreement.

"*Prepetition Secured Superpriority Claim*" means any Secured Claim arising under the Prepetition Super-Priority Credit Agreement.

"*Prepetition Super-Priority Credit Agreement*" means that certain Super-Priority Credit Agreement, dated as of May 9, 2023, by and among Robertshaw US Holding Corp., the other borrowers party thereto, Range Parent, Inc., a Delaware corporation, as holdings, the guarantors party thereto, the lenders from time to time party thereto, and Acquiom Agency Services LLC and Seaport Loan Products LLC, as co-administrative agents, as amended pursuant to that certain Amendment No. 1 to Super-Priority Credit Agreement dated as of October 5, 2023, that certain Amendment No. 2 to Super-Priority Credit Agreement and First Amendment to Pledge and Security Agreement dated as of October 13, 2023, that certain Amendment No. 3 to Super-Priority Credit Agreement dated as of November 8, 2023, that certain Amendment No. 4 to Super-Priority Credit Agreement dated as of November 13, 2023, and that certain Amendment No. 5 to Super-Priority Credit Agreement dated as of December 11, 2023, and as further amended, supplemented, restated, replaced or otherwise modified from time to time.

"*Prepetition Third Out Term Loans*" means the loans borrowed under the third-out secured term loan facility provided pursuant to the Prepetition Super-Priority Credit Agreement.

"*Priority Tax Claim*" means any Secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"*Pro Rata Share*" means, with respect to any Distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

"*Professional Fee Claim*" means a Claim for professional services, including legal, financial, investment banking, advisory, accounting, and other services rendered or costs incurred by Professional Persons (a) on or after the Petition Date through the Effective Date or (b) to the extent consistent with this Plan, including Article XII.C hereof, after the Effective Date, by Professional Persons.

"*Professional Fee Escrow Account*" means a segregated interest-bearing account to be established by the Debtors into which the Professional Fee Escrow Amount shall be deposited on or prior to the Effective Date.

"*Professional Fee Escrow Amount*" means the aggregate amount of (a) Professional Fee Claims incurred or estimated in good faith to be incurred in connection with the Chapter 11 Cases prior to and as of the Effective Date and (b) Professional Fee Claims following the Effective Date, as determined by the Debtors, the Ad Hoc Group, and ORC, consistent with the terms of this Plan (including pursuant to Article XII.C hereof) and the Sale Order, which, for the avoidance of doubt, shall (i) be funded by the Purchaser into the Professional Fee Escrow Account, and (ii) otherwise be consistent with the Sale Order and the Asset Purchase Agreement.

"*Professional Persons*" means any Person retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

"*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

"*Purchaser*" has the meaning set forth in the Sale Order.

"*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the holder's legal, equitable, and contractual rights on account of such Claim or Interest shall remain unaltered by the Plan in accordance with section 1124(1) of the Bankruptcy Code.

"*Released Parties*" means collectively: (a) each Debtor and Post-Effective Date Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the Ad Hoc Group; (d) ORC (as defined in Paragraph 39 of the DIP Order); (e) Delaware Trust; (f) the DIP Secured Parties; (g) the Plan Administrator; (h) the Liquidation Trustee; (i) the Committee and its members;

and (j) with respect to each of the foregoing Entities in clauses (a) through (i), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), interest holders, predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

"*Releasing Parties*" means collectively: (a) the Released Parties; (b) all Holders of Claims that vote to accept the Plan; (c) all Holders of Claims that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (d) all Holders of Claims and Interests that (i) vote to reject the Plan, (ii) are deemed to reject the Plan, or (iii) are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Solicitation Procedures Order; and (e) with respect to each of the Debtors, the Post-Effective Date Debtors, and each of the foregoing Entities in clauses (a) through (d), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), interest holders, predecessors, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively.

"*Representatives*" means, with respect to a Person, such Person's current and former (i) officers, (ii) directors, (iii) managers, (iv) principals, (v) members, (vi) employees, (vii) agents, (viii) advisory board members, (ix) financial advisors, (x) partners, (xi) attorneys, (xii) accountants, (xiii) investment bankers, (xiv) consultants, (xv) representatives, and (xvi) other professionals, each in their capacity as such.

"*Restructuring Fees and Expenses*" means all out of pocket third party reasonable and documented fees and expenses of the Ad Hoc Group Advisors and the ORC Advisors (including all fees and expenses that are invoiced pursuant to and in accordance with the terms of an engagement or fee letter between the Debtors and any Ad Hoc Group Advisor or ORC Advisor) in each case that are due and owing after receipt of applicable invoices.

"*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of February 14, 2024, by and among the Debtors, the Consenting Lenders (as defined therein), and the Sponsor (as defined therein), as amended, modified, or supplemented from time to time in accordance with its terms.

"*Retained Cash*" has the meaning set forth in the Asset Purchase Agreement.

"*Retained Causes of Action*" means all Causes of Action owned by the Debtors' Estates that are not released, waived, or transferred pursuant to this Plan or the Sale Order and listed on the Schedule of Retained Causes of Action.

"*Sale Order*" means that certain *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing the Sale of Assets, (III) Authorizing the Assumption and Assignment of Contracts and Leases, and (IV) Granting Related Relief* entered on June 21, 2024, by the Bankruptcy Court.

"*Sale Transaction*" means the sale of substantially all of the Debtors' assets to Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

"*Sale Transaction Documents*" means the Asset Purchase Agreement and related documents (including (a) the Amended and Restated Limited Liability Company Agreement of Red Range Acquisition, LLC, to be dated as of the Effective Date and (b) the Term Loan Credit Agreement, to be dated as of the Effective Date, by and among Range Red Intermediate, Inc., as Holdings, Red Range Operating, Inc., the other Borrowers from time to time party thereto, the other Subsidiaries of Holdings from time to time party thereto, the financial institutions and other persons party thereto, as Lenders, and CSC Delaware Trust Company, as Administrative Agent) pursuant to which the Debtors will effectuate the Sale Transaction.

"*Schedules of Assumed Contracts*" means the Assumed Executory Contracts and Unexpired Leases Schedule and the Assigned Executory Contracts and Unexpired Leases Schedule.

"*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

"*Schedules*" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

"*Second Lien Agent*" means Delaware Trust, as administrative and collateral agent under the Prepetition Second Lien Credit Agreement.

"*Second-Out Funded Debt Deficiency Claim*" means any Claim on account of Prepetition Second Out Term Loans arising under the Prepetition Super-Priority Credit Agreement that is not a Secured Claim.

"*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

20

"*Secured Claim*" means a Claim that is Secured.

"*Settlement Parties*" means the Debtors, the Committee, the Ad Hoc Group, and ORC who have agreed to the releases and other settlement terms embodied herein.

"*Seventh Out Credit Documents*" has the meaning set forth in the DIP Order.

"*Seventh-Out Funded Debt Deficiency Claim*" means any Claim arising under the Prepetition Second Lien Credit Agreement that is not a Secured Claim, including the principal amount plus any accrued and unpaid interest thereon.

"*Sixth Out Credit Documents*" has the meaning set forth in the DIP Order.

"*Sixth-Out Funded Debt Deficiency Claim*" means any Claim arising under the Prepetition First Lien Credit Agreement that is not a Secured Claim, including the principal amount plus any accrued and unpaid interest thereon.

"*Solicitation*" means the solicitation of votes on this Plan.

"*Solicitation Procedures*" means the procedures concerning Solicitation established pursuant to a motion of the Debtors for an order, *inter alia*, (a) approving the adequacy of the Disclosure Statement, (b) approving the Solicitation and voting procedures with respect to this Plan, (c) approving the forms of ballots and notices in connection with this Plan, (d) scheduling certain dates with respect to the Solicitation and approval of this Plan, and (e) granting related relief, to be filed by the Debtors.

"*Sponsor*" has the meaning set for the Restructuring Support Agreement.

"*Statutory Fees*" means all fees and charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

"*Subordinated Claim*" means any Claim (i) arising from: (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim or (ii) subject to subordination in accordance with section 510(c) of the Bankruptcy Code or otherwise.

"*Super-Priority Agent*" means Delaware Trust, as administrative and collateral agent under the Prepetition Super-Priority Credit Agreement.

"*Third-Out Funded Debt Deficiency Claim*" means any Claim on account of Prepetition Third Out Term Loans arising under the Prepetition Super-Priority Credit Agreement that is not a Secured Claim, including the principal amount plus any accrued and unpaid interest thereon.

"*Third-Party Release*" means the Releases by Holders of Claims as set forth in Article X.C herein.

"*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

"*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"*Unimpaired*" means, with respect to a Claim, or Class of Claims, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

"*Unsecured Claim*" means any Claim that is not a Secured Claim.

"*Voting Class*" means Classes 5, 6a, 6b, 6c, 6d, 6e, 6f, and 6g.

"*Voting Deadline*" means July 26, 2024, at 4:00 p.m. (Prevailing Central Time).

"*Voting Record Date*" means June 20, 2024.

"*Wind-Down*" means the process of winding down the Debtors' businesses and Estates, and winding down and dissolving the Debtor-entities, after the Effective Date and/or closing of the Sale Transaction, and all actions related to, necessary for, or otherwise appropriate to effectuate the foregoing.

"*Wind-Down Amount*" means an amount in Cash equal to the Post-Effective Date Budget.

"*Wind-Down Reserve*" means a segregated account to be established by the Debtors into which the Wind-Down Amount, as reflected in the Post-Effective Date Budget *less* the Professional Fee Escrow Amount, shall be deposited on or prior to the Effective Date, which account shall vest in the Post-Effective Date Debtors and their Estates as of the Effective Date; *provided*, *however*, that if the Debtors, the Committee, the Ad Hoc Group, and ORC mutually agree, a portion of the Wind-Down Amount, as reflected in the Post-Effective Date Budget, may be directly disbursed on the Effective Date consistent with the terms of this Plan and not funded into the Wind-Down Reserve and any such amounts disbursed on the Effective Date shall reduce the Wind-Down Amount, as reflected in the Post-Effective Date Budget, on a dollar for dollar basis.

"*Wind-Down Summary*" means the summary of the amounts needed to effectuate the Wind Down, which summary shall be attached as an Exhibit to the Disclosure Statement.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP FACILITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and DIP Facility Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

***A.***      *Administrative Claims*

     1. <u>General Administrative Claims</u>

Except (a) with respect to Administrative Claims that are Professional Fee Claims or Statutory Fees, (b) to the extent an Administrative Claim constitutes an "Assumed Liability" pursuant to section 2.02 of the Asset Purchase Agreement, or (c) to the extent that a Holder of an Allowed Administrative Claim and the Debtors agree to less favorable treatment for such Holder's Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall be paid in full in Cash from the Wind-Down Reserve on or as soon as reasonably practicable after the latest of: (a) the Effective Date; (b) the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable.  For the avoidance of doubt, any Allowed Administrative Expense Claim that has been expressly assumed by the Purchaser under the Sale Transaction Documents shall not be an obligation of the Debtors and shall be paid by the Purchaser in accordance with the Sale Transaction Documents.

Except as otherwise provided in this Plan and section 503(b)(1)(D) of the Bankruptcy Code, unless previously filed or paid, requests for payment of Administrative Claims must be filed and served on the Debtors or Plan Administrator, as applicable, pursuant to the procedures specified herein, in the Confirmation Order, the notice of entry of the Confirmation Order, the notice of occurrence of the Effective Date, or any other order entered by the Court (as applicable) no later than the Administrative Claims Bar Date; *provided*, that the foregoing shall not apply to either (a) the Holders of Claims under section 503(b)(1)(D) of the Bankruptcy Code or (b) the Bankruptcy Court or U.S. Trustee as Holders of Administrative Claims.  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims that do not file and serve such request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors and their respective Estates and property, and such Administrative Claims shall be deemed satisfied as of the Effective Date.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article X.E hereof.  Nothing in this Article II.A shall limit, alter, or impair the terms and conditions of the Claims Bar Date Order with respect to the Claims Bar Date for filing administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code.

Objections to requests for payment of Administrative Claims must be filed and served on the Debtors or Plan Administrator, as applicable, and the requesting party by the Administrative Claims Objection Deadline.

     2. <u>Professional Fee Claims</u>

All Professional Persons seeking an award by the Bankruptcy Court of Professional Fee Claims (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date, and (b) shall be paid in full from the Professional Fee Escrow Account in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Professional Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Plan Administrator.  The Plan Administrator is authorized to pay

23

Professional Fee Claims incurred after the Effective Date (including Professional Fee Claims incurred in accordance with Article XII.C hereof) in the ordinary course from the Professional Fee Escrow Account, without the need for Bankruptcy Court approval.

On or prior to the Effective Date, the Debtors shall establish the Professional Fee Escrow Account and the Purchaser shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. Funds held in the Professional Fee Escrow Account shall not be considered property of the Debtors' Estates or property of the Plan Administrator but, pursuant to Article V.H hereof, the Purchaser shall have a reversionary interest in any unused portion of the Professional Fee Escrow Account after all Professional Fee Claims (other than any Professional Fee Claims that have been Disallowed by the Bankruptcy Court) have been irrevocably paid in full. On and after the Effective Date, the Professional Fee Escrow Account shall be held by the Plan Administrator on behalf of the Post-Effective Date Debtors for Professional Persons and for no other parties until all Professional Fee Claims (other than any Professional Fee Claims that have been Disallowed by the Bankruptcy Court) have been paid in full. Professional Fee Claims owing to the applicable Professional Persons shall be paid in full, in Cash, to such Professional Persons from funds held in the Professional Fee Escrow Account when such Claims are (a) Allowed by an order of the Bankruptcy Court or (b) authorized to be paid under (i) the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 365] or (ii) with respect to Professional Fee Claims incurred after the Effective Date (including Professional Fee Claims incurred in accordance with Article XII.C hereof), this Plan. The Post-Effective Date Debtors' obligations with respect to Professional Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Professional Fee Escrow Account as of the Effective Date. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account in any way, other than customary liens in favor of the depository bank at which the Professional Fee Escrow Account is maintained.

Objections to any final requests for payment of Professional Fee Claims must be filed no later than twenty-one (21) days from the date of the filing of such final requests for payment of Professional Fee Claims. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

3. Restructuring Fees and Expenses

The Restructuring Fees and Expenses incurred, or estimated to be incurred, up to and through the Effective Date, shall be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid or satisfied during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms of the Restructuring Support Agreement, without any requirement to file a fee application with the Bankruptcy Court or without any requirement for Bankruptcy Court review or approval. All Restructuring Fees and Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least one (1) Business Day before the anticipated Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Fees and Expenses. On the Effective Date, or as soon as practicable thereafter, final invoices for all Restructuring Fees and Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.

After the Effective Date, subject to the Post-Effective Date Budget, the Plan Administrator and the Post-Effective Date Debtors (as applicable) may continue to pay in the ordinary course, if applicable and if due and payable, Restructuring Fees and Expenses arising out of the implementation of the Plan, the Consummation thereof, the Sale Transaction, any litigation stemming from the December Transaction or the May Transaction (including, for the avoidance of doubt, the Adversary Actions) and any appeals from any of the foregoing, solely to the extent agreed, pursuant to the Post-Effective Date Budget, to be payable by the Post-Effective Date Debtors, without any requirement for review or approval by the Bankruptcy Court or for any party to File a fee application with the Bankruptcy Court.

4.  Statutory Fees

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Disbursing Agent, whether the Plan Administrator or Liquidation Trustee, shall pay any and all such fees when due and payable from the Wind-Down Reserve or the Liquidation Trust Assets, as applicable.  After the Effective Date, the Disbursing Agent, whether the Plan Administrator or Liquidation Trustee, shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Disbursing Agent, whether the Plan Administrator or Liquidation Trustee, during the applicable period, attested to by an authorized representative of the Disbursing Agent.  Each and every one of the Debtors and the Liquidating Trustee shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

**B.**     *Priority Tax Claims*

Except to the extent a Priority Tax Claim constitutes an "Assumed Liability" pursuant to section 2.02 of the Asset Purchase Agreement, or to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will either (1) be paid in full in Cash from the Wind-Down Reserve on or as soon as reasonably practicable after the latest of: (a) the Effective Date; (b) the date such Priority Tax Claim is Allowed; and (c) the date such Allowed Priority Tax Claim becomes due and payable in accordance with non-bankruptcy law or (2) paid in Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five (5) years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  For the avoidance of doubt, any Allowed Priority Tax Claim that has been expressly assumed by the Purchaser under the Sale Transaction Documents shall not be an obligation of the Debtors and shall be paid by the Purchaser in accordance with the Sale Transaction Documents.

**C.**     *DIP Facility Claims*

The DIP Facility Claims shall be deemed Allowed under this Plan.

Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement and release of and in exchange for release of all Allowed DIP Facility Claims, all Allowed DIP Facility Claims shall be repaid and satisfied in full by the Purchaser in accordance with the terms of the Asset Purchase Agreement. Upon the foregoing satisfaction of all Allowed DIP Facility Claims, all Liens and security interests granted by the Debtors to secure the obligations under the DIP Facility shall be of no further force or effect.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

*A.*      *Summary*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions, if any, pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. If there are no Claims or Interests in a particular Class for a particular Debtor, then such Class of Claims or Interests shall not exist for all purposes of this Plan for that Debtor.

The Debtors shall be substantively consolidated solely for the purposes of voting, determining which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and Plan Distributions.

### Summary of Classification and Treatment of Claims

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1. | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2. | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3. | Prepetition Secured Superpriority Claims | Unimpaired | Presumed to Accept |
| 4. | Prepetition FGI Mexican Promissory Note Claims | Unimpaired | Presumed to Accept |
| 5. | General Unsecured Claims | Impaired | Entitled to Vote |
| 6a. | First-Out Funded Debt Deficiency Claims | Impaired | Entitled to Vote |
| 6b. | Second-Out Funded Debt Deficiency Claims | Impaired | Entitled to Vote |
| 6c. | Third-Out Funded Debt Deficiency Claims | Impaired | Entitled to Vote |
| 6d. | Fourth-Out Funded Debt Deficiency Claims | Impaired | Entitled to Vote |

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 6e. | Fifth-Out Funded Debt Deficiency Claims | Impaired | Entitled to Vote |
| 6f. | Sixth-Out Funded Debt Deficiency Claims | Impaired | Entitled to Vote |
| 6g. | Seventh-Out Funded Debt Deficiency Claims | Impaired | Entitled to Vote |
| 7. | Intercompany Claims | Impaired | Deemed to Reject |
| 8. | Intercompany Interests | Impaired | Deemed to Reject |
| 9. | Subordinated Claims | Impaired | Deemed to Reject |
| 10. | Existing Equity Interests | Impaired | Deemed to Reject |

**B.**   *Classification and Treatment of Claims*

1.   <u>Class 1 — Other Priority Claims</u>

(a)   *Classification*: Class 1 consists of all Other Priority Claims.

(b)   *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtor against which such Allowed Other Priority Claim is asserted agree to less favorable treatment for such Holder, in full satisfaction of each Allowed Other Priority Claim, each Holder thereof shall receive payment in full in cash or other treatment rendering such Other Priority Claim unimpaired. Any Allowed Other Priority Claim that has been expressly assumed by the Purchaser under the Sale Order shall not be an obligation of the Debtors.

(c)   *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Other Priority Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2.   <u>Class 2 — Other Secured Claims</u>

(a)   *Classification*:  Class 2 consists of all Other Secured Claims.

(b)   *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim and the Debtor against which such Allowed Other Secured Claim is asserted, agree to less favorable treatment for such Holder, each Allowed Other Secured Claim shall, at the option of the applicable Debtor (i) be paid in full in cash, (ii) receive the collateral securing its Allowed Other Secured Claim, or (iii) receive any other treatment that would render such claim unimpaired. Any Allowed Other

Secured Claim that has been expressly assumed by the Purchaser under the Sale Order shall not be an obligation of the Debtors.

(c)   *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Other Secured Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

3.   Class 3 — Prepetition Secured Superpriority Claims

(a)   *Classification*:   Class 3 consists of Prepetition Secured Superpriority Claims.

(b)   *Treatment*: Except to the extent that a Holder of an Allowed Prepetition Secured Superpriority Claim agrees in writing to less favorable treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its Prepetition Secured Superpriority Claim, each Holder of an Allowed Prepetition Secured Superpriority Claim shall receive through an ownership interest in the Purchaser, their allocable share of the Purchased Assets and will receive no additional recovery on account of such Allowed Prepetition Secured Superpriority Claim.

(c)   *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Prepetition Secured Superpriority Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

4.   Class 4 — Prepetition FGI Mexican Promissory Note Claims

(a)   *Classification*:  Class 4 consists of all Prepetition FGI Mexican Promissory Note Claims.

(b)   *Treatment*:  Each Prepetition FGI Mexican Promissory Note Claim shall be Reinstated.

(c)   *Voting*:  Class 4 is Unimpaired under the Plan.  Holders of Prepetition FGI Mexican Promissory Note Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

5.   Class 5 — General Unsecured Claims

(a)   *Classification*:  Class 5 consists of all General Unsecured Claims.

(b)   *Treatment*:  On the Effective Date, each General Unsecured Claim shall be discharged and released, and each Holder of an Allowed General Unsecured Claim shall be entitled to receive (i) its Pro Rata Share of the GUC Recovery Pool, and (ii) its pro rata share of proceeds (if any) realized from the Liquidation Trustee's pursuit of the Retained Causes of Action.

28

Distributions of the GUC Recovery Pool and the Liquidation Trust Assets shall be made by the Liquidation Trustee in accordance with the terms and conditions set forth in the Plan.

(c)     *Voting*:  Class 5 is Impaired under the Plan.  Holders of General Unsecured Claims are entitled to vote on the Plan and shall receive Ballots.

6.     <u>Class 6a — First-Out Funded Debt Deficiency Claims</u>

(a)     *Classification*:  6a consists of all First-Out Funded Debt Deficiency Claims

(b)     *Treatment*:     On the Effective Date, each First-Out Funded Debt Deficiency Claim shall receive (i) its Pro Rata Share of the Funded Debt Deficiency Claim Pool, subject in all respects to the waterfall provisions of the Prepetition Super-Priority Credit Agreement including, without limitation, the treatment of interest pursuant thereto, whether accruing pre or postpetition and whether or not Allowed, and (ii) its pro rata share of proceeds (if any) realized from the Liquidation Trustee's pursuit of the Retained Causes of Action. Distributions of the Liquidation Trust Assets shall be made by the Liquidation Trustee in accordance with the terms and conditions set forth in the Plan.

(c)     *Voting*:  Class 6a is Impaired under the Plan.  Holders of First-Out Funded Debt Deficiency Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

7.     <u>Class 6b — Second-Out Funded Debt Deficiency Claims</u>

(a)     *Classification*:  6b consists of all Second-Out Funded Debt Deficiency Claims

(b)     *Treatment*:     On the Effective Date, each Second-Out Funded Debt Deficiency Claim shall receive its Pro Rata Share of the Funded Debt Deficiency Claim Pool, subject in all respects to the waterfall provisions of the Prepetition Super-Priority Credit Agreement including, without limitation, the treatment of interest pursuant thereto, whether accruing pre or postpetition and whether or not Allowed.

(c)     *Voting*:  Class 6b is Impaired under the Plan.  Holders of Second-Out Funded Debt Deficiency Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

8.     <u>Class 6c — Third-Out Funded Debt Deficiency Claims</u>

(a)     *Classification*:  6c consists of all Third-Out Funded Debt Deficiency Claims

(b)     *Treatment*:     On the Effective Date, each Third-Out Funded Debt Deficiency Claim shall receive its Pro Rata Share of the Funded Debt Deficiency Claim Pool, subject in all respects to the waterfall provisions of

the Prepetition Super-Priority Credit Agreement including, without limitation, the treatment of interest pursuant thereto, whether accruing pre or postpetition and whether or not Allowed.

(c)   *Voting*: Class 6c is Impaired under the Plan. Holders of Third-Out Funded Debt Deficiency Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

9.   <u>Class 6d — Fourth-Out Funded Debt Deficiency Claims</u>

(a)   *Classification*:   6d consists of all Fourth-Out Funded Debt Deficiency Claims

(b)   *Treatment*:   On the Effective Date, each Fourth-Out Funded Debt Deficiency Claim shall receive its Pro Rata Share of the Funded Debt Deficiency Claim Pool, subject in all respects to the waterfall provisions of the Prepetition Super-Priority Credit Agreement including, without limitation, the treatment of interest pursuant thereto, whether accruing pre or postpetition and whether or not Allowed.

(c)   *Voting*:  Class 6d is Impaired under the Plan. Holders of Fourth-Out Funded Debt Deficiency Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

10.   <u>Class 6e — Fifth-Out Funded Debt Deficiency Claims</u>

(a)   *Classification*: 6e consists of all Fifth-Out Funded Debt Deficiency Claims

(b)   *Treatment*:   On the Effective Date, each Fifth-Out Funded Debt Deficiency Claim shall receive its Pro Rata Share of the Funded Debt Deficiency Claim Pool, subject in all respects to the waterfall provisions of the Prepetition Super-Priority Credit Agreement including, without limitation, the treatment of interest pursuant thereto, whether accruing pre or postpetition and whether or not Allowed.

(c)   *Voting*:  Class 6e is Impaired under the Plan. Holders of Fifth-Out Funded Debt Deficiency Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

11.   <u>Class 6f — Sixth-Out Funded Debt Deficiency Claims</u>

(a)   *Classification*: 6f consists of all Sixth-Out Funded Debt Deficiency Claims

(b)   *Treatment*:   On the Effective Date, each Sixth-Out Funded Debt Deficiency Claim shall receive its Pro Rata Share of the Funded Debt Deficiency Claim Pool, subject in all respects to the waterfall provisions of the Prepetition Super-Priority Credit Agreement and the Intercreditor Agreements.

30

(c)  *Voting*:  Class 6f is Impaired under the Plan. Holders of Sixth-Out Funded Debt Deficiency Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

12.  <u>Class 6g — Seventh-Out Funded Debt Deficiency Claims</u>

(a)  *Classification*:  6g consists of all Seventh-Out Funded Debt Deficiency Claims

(b)  *Treatment*:  On the Effective Date, each Seventh-Out Funded Debt Deficiency Claims shall receive its Pro Rata Share of the Funded Debt Deficiency Claim Pool, subject in all respects to the waterfall provisions of the Prepetition Super-Priority Credit Agreement and the Intercreditor Agreements.

(c)  *Voting*:  Class 6g is Impaired under the Plan. Holders of Seventh-Out Funded Debt Deficiency Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

13.  <u>Class 7 — Intercompany Claims</u>

(a)  *Classification*:  Class 7 consists of all Intercompany Claims.

(b)  *Treatment*:  On the Effective Date, each Intercompany Claim shall be cancelled, released and extinguished, and each holder of an Intercompany Claim shall not receive or retain any distribution, property, or other value on account of its Intercompany Claim.

(c)  *Voting*:  Class 7 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

14.  <u>Class 8 — Intercompany Interests</u>

(a)  *Classification*:  Class 8 consists of all Intercompany Interests.

(b)  *Treatment*:  On the Effective Date, each Intercompany Interest shall be cancelled, released and extinguished, and each holder of an Intercompany Interest shall not receive or retain any distribution, property, or other value on account of its Intercompany Interest.

(c)  *Voting*:  Class 8 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

15.  <u>Class 9 — Subordinated Claims</u>

(a)  *Classification*:  Class 9 consists of all Subordinated Claims.

(b)     *Treatment*:  On the Effective Date, each Subordinated Claim shall be cancelled, released and extinguished, and each holder of a Subordinated Claim shall not receive or retain any distribution, property, or other value on account of its Subordinated Claim.

(c)     *Voting*:  Class 9 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Subordinated Claims are not entitled to vote to accept or reject the Plan.

16.     Class 10 — Existing Equity Interests

(a)     *Classification*:  Class 10 consists of all Existing Equity Interests.

(b)     *Treatment*:  On the Effective Date, all Existing Equity Interests shall be cancelled, released and extinguished, and each holder of an Existing Equity Interest shall not receive or retain any distribution, property, or other value on account of its Equity Interest.

(c)     *Voting*:  Class 10 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Exiting Equity Interests are not entitled to vote to accept or reject the Plan.

**C.**     *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in this Plan, nothing under this Plan shall affect, diminish, or impair the rights of the Debtors or the Purchaser, as applicable, with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**D.**     *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, will be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THIS PLAN

**A.**     *Acceptance or Rejection of this Plan*

1.     Presumed Acceptance of Plan

Claims in Classes 1, 2, 3, and 4 are Unimpaired under this Plan and, therefore, Holders of such Claims are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Classes 1, 2, 3, and 4 are not entitled to vote on this Plan and the votes of such Holders shall not be solicited.

32

2.      Voting Classes

Claims in Classes 5, 6a, 6b, 6c, 6d, 6e, 6f, and 6g are Impaired under this Plan, and the Holders of Allowed Claims in Classes 5, 6a, 6b, 6c, 6d, 6e, 6f, and 6g are entitled to vote to accept or reject this Plan.

3.      Deemed Rejection of this Plan

Claims and Interests in Classes 7, 8, 9, and 10 are Impaired under this Plan and Holders of such Claims or Interests shall receive no Distributions under this Plan on account of their Claims or Interests (as applicable) and are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Claims and Interests in Classes 7, 8, 9, and 10 are not entitled to vote on this Plan and the votes of such Holders shall not be solicited.

**B.**      *Nonconsensual Confirmation*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

**C.**      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective Distributions (if any) and treatments under this Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Plan Administrator, subject to the consent of the Ad Hoc Group and ORC, reserves the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination rights relating thereto; *provided* that subject to the terms of the Committee Settlement (a) the Debtors, the Committee, or the Ad Hoc Group may, in their discretion seek to reclassify any Allowed Claim, and (b) the Debtors, the Committee, or the Ad Hoc Group also shall have the right to timely seek reclassification or subordination of any Equitably Subordinated Funded Debt Claim as a Subordinated Claim.

# ARTICLE V.

# MEANS FOR IMPLEMENTATION OF THIS PLAN

**A.**      *Transactions Effective as of the Effective Date*

The transactions contemplated by this Plan shall be subject to the Implementation Memorandum and shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, their board of directors, their stockholders, or any other Person or Entity.  Notwithstanding anything to the contrary in the Plan, the means and

timing for implementation of the Plan will be subject, in all respects, to the provisions of the Implementation Memorandum.

**B.**     *General Settlement of Claims and Interests*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan. For the avoidance of doubt, such settlement and compromise shall not include or affect any Causes of Action listed in the Schedule of Retained Causes of Action.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VII hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

As part of the settlement embodied herein, upon entry of the Confirmation Order, the Committee agrees to withdraw any objection to any motion, application, or filing of the Debtors, the Ad Hoc Group, or ORC; not make or file any objection contrary to or against the relief sought by the Debtors, Ad Hoc Group, or ORC that is inconsistent with the settlements embodied in the Plan; support the Sale Order; and withdraw all document production requests and deposition notices and limit all participation in any depositions to only observance.

**C.**     *Intercreditor Agreements*

Except as expressly provided in the Plan, all rights, entitlements, and distributions shall be subject to the Intercreditor Agreements, the priorities and payment waterfalls of which shall be incorporated, preserved, and enforced by the Plan, the Debtors, the Plan Administrator and, as applicable, the Post-Effective Date Debtors, pursuant to section 510 of the Bankruptcy Code.

**D.**     *Committee Settlement*

The Plan incorporates the Committee Settlement, a compromise and settlement of numerous issues and disputes between and among (a) the Debtors, the Ad Hoc Group, and ORC, and (b) the Committee designed to achieve a reasonable and effective resolution of the Chapter 11 Cases. Except as expressly set forth herein or the Confirmation Order, the Committee Settlement constitutes a settlement of all potential issues and Claims between and among (a) the Debtors, the Ad Hoc Group, and ORC, and (b) the Committee.

The key terms of the Committee Settlement include:

- establishment of the Liquidation Trust, which shall be vested with the Liquidation Trust Assets;

- assumption by the Purchaser of the Go-Forward Trade Claims;

- establishment of the Funded Debt Deficiency Claim Pool;

- discharge, release, and injunction of the GUC Causes of Action;

- resolution of all objections raised by the Committee and agreement by the Committee to support the Sale Transaction and confirmation of the Plan; and

- certain releases set forth herein.

Contingent on approval of the Committee Settlement and consummation of the Sale Transaction, the respective First-Out Funded Debt Deficiency Claims and Second-Out Funded Debt Deficiency Claims that the Ad Hoc Group and ORC hold shall not receive any payment from the Funded Debt Deficiency Claim Pool; *provided* that the Ad Hoc Group Members and ORC shall not waive their Second-Out Funded Debt Deficiency Claims in the event of any re-classification or equitable subordination of any Second-Out Funded Debt Deficiency Claims under this Plan.

**E.**     *Administrative Consolidation for Voting and Distribution Purposes Only*

The Plan is premised upon the substantive consolidation of the Debtors solely for the purposes of voting, determining which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and Plan Distributions. Each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims and Interests under the Plan. On the Effective Date, and except as otherwise expressly provided in the Plan, solely for voting, confirmation, and distribution purposes with respect to each Class of Claims or Interests: (a) all Claims or Interests in each respective Class shall be deemed merged or consolidated and treated as Claims or Interests against the Debtors on a consolidated basis; (b) each Claim or Interest in each respective Class will be deemed a single Claim against, or Interest in, the consolidated Debtors; (c) any Claim in a given Class based on a guaranty by any Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished, so that any Claim against any Debtor and any guarantee thereof by any other Debtor, and any joint or several liability of any of the Debtors, shall be deemed to be one obligation of the consolidated Debtors; and (d) each Holder of any Allowed Claim or Interest in a given Class shall be entitled to a single recovery on account of such Claim or Interest, in accordance with the treatment provided under the Plan for such Class, regardless of whether such Holder filed Proofs of Claim against multiple Debtors or has Claims against multiple Debtors based on the same or similar debt.

Such substantive consolidation is solely for voting, confirmation and distribution purposes with respect to each Class and shall not constitute a transfer of assets or liabilities between the Debtors for any other purpose.

35

Moreover, the Plan's treatment shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Post-Effective Date Debtors or Plan Administrator to seek to have any Claim subordinated in accordance with section 510 of the Bankruptcy Code or other applicable law.

**F.**     *Closing of Sale Transaction and Uses of Cash*

On the Effective Date, the Debtors shall be authorized to consummate the Sale Transaction to the Purchaser pursuant to the terms of the Sale Order and the applicable Sale Transaction Documents, subject to the Implementation Memorandum, including, without limitation, (i) selling the Acquired Assets (as defined in the Asset Purchase Agreement) free and clear of claims, liens and encumbrances except to the extent set forth in the Asset Purchase Agreement and (ii) assuming and assigning to the Purchaser pursuant to the Asset Purchase Agreement in connection with the Sale Transaction certain Executory Contracts and Unexpired Leases.

In accordance with the Sale Order and the Implementation Memorandum, all corporate actions necessary to implement the Sale Transaction as contemplated in the Sale Order, shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims, the Debtors, or any other Entity or Person.

On or prior to the Effective Date, the Retained Cash shall be placed into accounts established and maintained by the Debtors, including, as applicable, the Additional Sale Consideration Escrow Account, the Professional Fee Escrow Account, and the Wind-Down Reserve; *provided* that if the Retained Cash is insufficient to fund the Additional Sale Consideration, the Professional Fee Escrow Amount and the Wind-Down Reserve, the Purchaser shall fund all necessary additional amounts on or prior to the Effective Date.  On the Effective Date, the Wind-Down Reserve and the Additional Sale Consideration Escrow Account, but not the Professional Fee Escrow Account, shall vest in the Post-Effective Date Debtors and their Estates pursuant to Article V.I of this Plan.

For the avoidance of doubt, pursuant to the Committee Settlement, the Post-Effective Date Budget shall be funded by the Purchaser in accordance with the Sale Order and the Asset Purchase Agreement, and subject to the Restructuring Support Agreement, in order to ensure the satisfaction of all Administrative Claims, Other Priority Claims, Priority Tax Claims, and Professional Fee Claims, to provide for payment in full of (i) all Professional Fee Claims, (ii) all Administrative Claims, Other Priority Claims, and Priority Tax Claims required to be paid pursuant to this Plan, including the agreed expenses of the Wind-Down from and after the Effective Date (including anticipated Plan Administration Expenses) and (iii) any Restructuring Fees and Expenses, if any, to be incurred after the Effective Date that will be payable by the Post-Effective Date Debtors.

**G.**     *GUC Recovery Pool.*

Consistent with the settlements embodied herein and as part of the Wind-Down Amount, on the Effective Date, members of the Ad Hoc Group and ORC shall cause the Purchaser to transfer to the Debtors Cash in the amount of the GUC Recovery Pool for the benefit of Holders of Allowed General Unsecured Claims; *provided* that, notwithstanding anything to the contrary, contingent upon approval of the Committee Settlement and consummation of the Sale Transaction, any

Allowed General Unsecured Claim held by ORC shall not share pro rata in the foregoing treatment of Allowed General Unsecured Claims. The Purchaser shall not have any reversionary or other interest in the GUC Recovery Pool.

**H.**     *Plan Administrator*

1.  <u>Appointment</u>        As part of the Wind-Down, the Debtors in consultation with the Ad Hoc Group and ORC, shall appoint the Plan Administrator to administer all aspects of this Plan other than those specific duties delegated hereunder to the Liquidation Trustee, including the administration of the Liquidation Trust. The Person designated in the Plan Supplement shall serve as Plan Administrator for each of the Post-Effective Date Debtors.

2.  <u>Authority</u>   On and after the Effective Date, the Plan Administrator shall have the authority and right on behalf of each of the Debtors and Post-Effective Date Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of this Plan other than those specifically delegated to the Liquidation Trustee, including, without limitation, to:

    (a)     except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including the exclusive authority to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

    (b)     make Distributions to Holders of Allowed Claims in accordance with this Plan, including, without limitation, to establish sufficient reserves (including the Disputed Claims Reserves) necessary to make distributions on account of Claims that may become Allowed after the Effective Date;

    (c)     receive, manage, invest, supervise, abandon and protect any and all property of the Post-Effective Debtors, including the Plan Administration Assets, consistent with the terms of the Plan and this Agreement, and take all actions necessary to effectuate same;

    (d)     exercise their reasonable business judgment to direct and control the Wind-Down, liquidation, sale, or abandonment of the remaining assets of the Debtors under this Plan and in accordance with applicable law as necessary to maximize Distributions to Holders of Allowed Claims;

    (e)     authorize payment of unpaid Professional Fee Claims (once Allowed pursuant an order of the Bankruptcy Court or otherwise authorized to be paid) and distribute any remaining amounts in the Professional Fee Escrow Account to the Purchaser after all Professional Fee Claims (other than any Professional Fee Claims that have been disallowed by Final Order) have been irrevocably paid in full;

    (f)     retain and compensate professionals to assist the Plan Administrator in performance of their duties under the Plan;

(g)      compensate the Liquidation Trustee and any professionals retained by the Liquidation Trustee pursuant to the terms of the Plan up to $250,000;

(h)      facilitate maintenance of the books and records and accounts of the Debtors and obtain any necessary insurance;

(i)      incur and pay all Plan Administration Expenses;

(j)      facilitate administration of the tax-related obligations of each Debtor or its Estate, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws, and (iii) representing the interest and account of each Debtor or its Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(k)      prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(l)      facilitate payment of Statutory Fees in accordance with Article II.A.3 of this Plan;

(m)      undertake all administrative functions in the Chapter 11 Cases for the Post-Effective Date Debtors pursuant to the terms of the Plan and Confirmation Order, including the closing of the Chapter 11 Cases;

(n)      appear and be heard on behalf of the Post-Effective Date Debtors before any court, tribunal, agency, commission, or other body of any governmental entity;

(o)      perform other duties and functions that are consistent with the implementation of this Plan; and

(p)      exercise such other powers as may be vested in them pursuant to an order of the Bankruptcy Court or pursuant to the Plan, or as they reasonably deem to be necessary and proper to carry out the provisions of the Plan.

3.    <u>Indemnification</u>The Debtors or Post-Effective Date Debtors, as applicable, shall indemnify and hold harmless (i) the Plan Administrator in connection with carrying out the obligations under the Plan Administration Agreement, including the maintenance or disposition of the Plan Administration Assets, and (ii) such other Persons retained by the Plan Administrator (collectively, the "<u>Plan Administration Indemnified Parties</u>"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts

or omissions resulting from such Plan Administration Indemnified Party's willful misconduct or gross negligence, with respect to the Debtors or the implementation or administration of the Plan. To the extent a Plan Administration Indemnified Party asserts a claim for indemnification as provided above, the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Plan Administration Indemnified Party (and such Plan Administration Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Plan Administration Indemnified Party is not entitled to be indemnified therefore) out of the Wind-Down Reserve or any insurance purchased using the Wind-Down Reserve.

**I.**      *The Plan Administration Assets*

On the Effective Date, the Plan Administrator shall sign the Plan Administration Agreement and accept the Wind-Down Reserve, the Professional Fee Escrow Account, the Additional Sale Consideration Escrow Account, and the Cash therein (the "Plan Administration Assets"). As of the Effective Date, all Plan Administration Assets and all assets dealt with in this Plan shall be free and clear of all Liens, Claims, and Interests except as otherwise further provided in this Plan or in the Confirmation Order. The Plan Administrator shall be authorized to use any proceeds of the Wind-Down Reserve in connection with the Wind-Down and use the Professional Fee Escrow Account and the Additional Sale Consideration Escrow Account for the purposes as explicitly set forth in the Plan. For the avoidance of doubt, the Plan Administrator cannot use any funds in the Additional Sale Consideration Escrow Account without the express written consent of the Liquidation Trustee.

After the Effective Date, upon payment of all Administrative Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, Plan Administration Expenses, and Liquidation Trust Expenses (up to $250,000), and as required from the Additional Sale Consideration Escrow Account, and to the extent that the Plan Administrator determines in good faith, in consultation with the Liquidation Trustee, the Ad Hoc Group, and ORC, and on a reasonable basis, that substantially all of the claims and expenses for which the Wind-Down Amount was held in escrow are no longer outstanding or otherwise satisfied in full, the Plan Administrator shall remit any remaining unused Wind-Down Amount and Plan Administration Assets (or proceeds thereof) to the Purchaser; *provided*, *however*, that in no event shall any amounts in the Additional Sale Consideration Escrow Account be remitted to the Purchaser.

**J.**      *The Liquidation Trust*

1. Establishment of the Liquidation Trust and Vesting of the Liquidation Trust Assets

On the Effective Date, the Debtors shall take any and all actions as may be necessary or appropriate to establish the Liquidation Trust and, except as otherwise provided in this Plan, to cause the transfer and assignment of the Liquidation Trust Assets to the Liquidation Trust. Upon the Effective Date, the Liquidation Trust shall be vested with all right, title, and interest in the Liquidation Trust Assets, and such property shall become the property of the Liquidation Trust free and clear of all Claims, Liens, charges, other encumbrances, and interests.

The sole beneficiaries of the Liquidation Trust shall be the Liquidation Trust Beneficiaries. The proceeds of the Liquidation Trust Assets shall be held in trust by the Liquidation Trust and shall not be considered property of the Liquidating Trustee or of any Debtor's Estate. The Liquidation Trustee shall be obligated to distribute the Liquidation Trust Assets and the proceeds thereof to the Liquidation Trust Beneficiaries until the earlier of (i) such beneficiaries being repaid in full and (ii) the Liquidation Trust Assets being exhausted or otherwise depleted; *provided*, that the Liquidation Trust Assets may be used by the Liquidation Trustee to fund the expenses of the Liquidation Trust as determined by the Liquidation Trustee in its sole discretion.

2. Purpose of the Liquidation Trust

The Liquidation Trust shall be established for the primary purpose of liquidating and distributing the Liquidation Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and this Plan. The Liquidation Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of any Debtor or Estate.

3. Appointment of the Liquidation Trustee

Consistent with the settlements embodied herein, the Committee, in consultation with the Debtors, the Ad Hoc Group, and ORC, shall appoint the Liquidation Trustee and its identity shall be disclosed by the Debtors prior to the Confirmation Hearing. Any successor Liquidation Trustee shall be appointed pursuant to the Liquidation Trust Agreement. On the Effective Date, the Liquidation Trustee shall be the sole authorized representative and signatory of the Liquidation Trust, with authority to render all services necessary to effectuate the terms of this Plan as they relate to the Liquidation Trust. From and after the Effective Date, the Liquidation Trustee shall be deemed to have been appointed as the representative of each of the Debtors' Estates by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely for purposes of administering the Liquidation Trust Assets, including the Retained Causes of Action. The powers, authority, responsibilities, and duties of the Liquidation Trustee shall be governed by this Plan, the Confirmation Order, and the Liquidation Trust Agreement. The Liquidation Trustee may execute, deliver, file, or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan as they relate to the Liquidation Trust.

4. Responsibilities and Authority

The responsibilities and authority of the Liquidation Trustee shall include:

(a)     calculating and implementing all distributions from the Liquidation Trust in accordance with this Plan;

(b)     filing all required tax returns and paying taxes and all other obligations on behalf of the Liquidation Trust from funds held by the Liquidation Trust;

(c)     periodic reporting to the Liquidation Trust Beneficiaries as required by the Liquidation Trust Agreement;

(d)      liquidating and distributing the Liquidation Trust Assets in accordance with the provisions of this Plan and subject to any agreed discounts;

(e)      retaining and paying at normal and customary rates (or on a contingency fee basis) professionals and consultants in connection with the Liquidation Trustee's duties;

(f)      administering the liquidation of any assets held by the Liquidation Trust;

(g)      analyzing Retained Causes of Action and deciding whether to abandon, pursue, litigate, or settle such claims;

(h)      prosecuting, as a representative of the Debtors' Estates, any Retained Cause of Action vested in the Liquidation Trust; and

(i)      such other responsibilities as may be vested in the Liquidation Trustee pursuant to the Plan, the Liquidation Trust Agreement or the Confirmation Order or as may be necessary and proper to carry out the provisions of this Plan.

The Liquidation Trust and the Liquidation Trustee shall not be required to post a bond.

5. <u>Powers of the Liquidation Trustee</u>

The powers of the Liquidation Trustee to administer the Liquidation Trust shall, without any need for approval of the Bankruptcy Court in each of the following instances, include *inter alia*,

(a)      the power to invest Liquidation Trust funds as set forth below and permitted in the Liquidation Trust Agreement, withdraw funds, make distributions and pay taxes and other obligations owed by the Liquidation Trust from funds held by the Liquidation Trustee in accordance with this Plan and the Liquidation Trust Agreement;

(b)      the power to engage and compensate, without prior Bankruptcy Court order or approval, employees, professionals, and consultants to assist the Liquidation Trustee with respect to its responsibilities;

(c)      the power to liquidate or abandon the Liquidation Trust Assets;

(d)      the power to abandon, pursue, litigate, or settle any Retained Cause of Action belonging to the Liquidation Trust; *provided that*, no Additional Sale Consideration shall be used to pay costs and fees in connection with the pursuit or litigation of any Retained causes of Actions;

(e)      the power to abandon or destroy any of the relevant books and records of the Liquidation Trust when they are no longer necessary to administer the Liquidation Trust; and

(f)        such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to this Plan, the Liquidation Trust Agreement, order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of this Plan.

The Liquidation Trustee shall have the discretion and exclusive authority to pursue or not to pursue any and all Retained Causes of Action, as the Liquidation Trustee determines is in the best interests of the Liquidation Trust Beneficiaries and consistent with the purposes of the Liquidation Trust, and shall have no liability for the outcome of its decision, other than those decisions constituting gross negligence or willful misconduct. Any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidation Trust shall be conclusive. For the avoidance of doubt, on the Effective Date, the Liquidation Trustee, on behalf of the Liquidation Trust, shall have standing as the representative of each Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to commence and prosecute any Cause of Action belonging to the Liquidation Trust on behalf of such Debtor's Estate without the need for notice or order of the Bankruptcy Court.

6.   <u>Compensation of the Liquidation Trustee and Professionals and Consultants</u>

The Liquidation Trustee shall serve on the terms, conditions, and rights set forth in this Plan, the Confirmation Order and the Liquidation Trust Agreement. The compensation for the Liquidation Trustee shall be set forth in the Liquidation Trust Agreement or otherwise disclosed in a filing with the Bankruptcy Court. Any professionals or consultant retained by the Liquidation Trustee shall not be required to file a fee application to receive compensation. All compensation to the Liquidation Trustee and any professionals or consultant retained by the Liquidation Trustee shall be paid from the Liquidation Trust Assets.

7.   <u>Limitations on the Liquidation Trustee</u>

The Liquidation Trustee, in such capacity, shall not at any time: (a) enter into or engage in any trade or business (except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidation Trust, such as managing and disposing of the Liquidation Trust Assets), and no part of the Liquidation Trust Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Liquidation Trust in furtherance of any trade or business, or (b) except as provided below, invest any Liquidation Trust Assets.

The Liquidation Trustee may only invest funds held in the Liquidating Trust consistent with the requirements of the Liquidation Trust Agreement, the Bankruptcy Code, or any order of the Bankruptcy Court modifying such requirements and, *provided* that the Liquidation Trustee does so, it shall have no liability in the event of insolvency of any institution in which it has invested any funds of the Liquidation Trust. Notwithstanding the above, the Liquidation Trustee may only invest funds held in the Liquidation Trust in investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

The Liquidation Trustee shall hold, collect, conserve, protect, and administer the Liquidation Trust in accordance with the provisions of this Plan and the Liquidation Trust

Agreement, and pay and distribute amounts as set forth herein for the purposes set forth in this Plan and the Liquidation Trust Agreement.

8. <u>U.S. Federal Income Tax Treatment of the Liquidation Trust</u>The Liquidation Trust (other than the portion which is treated as a disputed ownership fund, which may be subject to different treatment, as described below) shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code of which the holders who become the holders of beneficial interests in the applicable Liquidation Trust Assets (as determined for U.S. federal income tax purposes) are the owners and grantors, consistent with the terms of the Plan. All parties (including the applicable Debtors, holders of beneficial interests in the applicable Liquidation Trust Assets, and the Liquidation Trustee) shall report consistently with such treatment (including the deemed receipt of the relevant Liquidation Trust Assets, subject to applicable liabilities and obligations, by the holders who will own beneficial interests in such Liquidation Trust Assets, as applicable, followed by the deemed transfer of such assets to the Liquidation Trust). All parties shall report consistently with the valuation of the Liquidation Trust Assets as determined by the Liquidation Trustee (or its designee). The Liquidation Trustee shall be responsible for filing returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Liquidation Trustee shall annually send to each holder of an interest in the Liquidation Trust a separate statement regarding the receipts and expenditures of the Liquidation Trust as relevant for U.S. federal income tax purposes.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidation Trustee of a private letter ruling if the Liquidation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidation Trustee), the Liquidation Trustee may timely elect to (y) treat any portion of the Liquidation Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations section 1.468B-9 (and make any appropriate elections) and (z) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made pursuant to Treasury Regulations section 1.468B-9(c), (i) all parties (including the Debtors, holders of General Unsecured Claims, and the Liquidation Trustee) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing, and (ii) any tax imposed on the Liquidation Trust with respect to assets allocable to Disputed Claims (including any earnings thereon and any gain recognized upon the actual or deemed disposition of such assets) will be payable out of such assets and, in the event of insufficient Cash to pay any such taxes, the Liquidation Trustee may sell all or part of such assets to pay the taxes. The Liquidation Trust will be subject to a termination date not more than five (5) years from the date of its creation. The Liquidation Trustee may request an expedited determination of taxes of the Liquidation Trust, including the Disputed General Unsecured Claims Reserve, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

**K.**       *Merger of Debtors; Closing Cases of Debtor Affiliates*

On or after the Effective Date, the Plan Administrator, in consultation with the Ad Hoc Group and ORC, (i) may merge or dissolve such Affiliates of the Debtors and complete the winding up of such Affiliates of a Debtor without the necessity for any other or further actions to be taken by or on behalf of such Affiliates or their shareholders or any payments to be made in connection therewith, other than the filing of a certificate of merger or dissolution, as applicable, with the appropriate governmental authorities; (ii) may merge or dissolve any Debtor and complete the winding up of such Debtor without the necessity for any other or further actions to be taken by or on behalf of such Debtor or its shareholders or any payments to be made in connection therewith, other than the filing of a certificate of merger or dissolution, as applicable, with the appropriate governmental authorities; *provided* that upon any merger with another Debtor, all Claims filed or scheduled in the non-surviving Debtor's Chapter 11 Case shall be deemed to have been filed in the surviving Debtor's Chapter 11 Case; and (iii) may seek authority from the Bankruptcy Court to close any Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**L.**       *Cancellation of Existing Securities and Agreements*

On the Effective Date, subject to the Implementation Memorandum, all agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents evidencing or creating any prepetition Claim or Interest shall be cancelled and of no further force and effect, except that each of the foregoing shall continue in effect solely to the extent necessary to (a) allow Holders of such Claims or Interests to receive Distributions under this Plan; (b) allow the Debtors, the Plan Administrator, and the Administrative and Collateral Agents, as applicable, to make post-Effective Date Distributions or take such other actions pursuant to this Plan on account of such Claims; (c) allow Holders of Claims or Interests to retain their respective rights and obligations vis-à-vis other Holders of Claims or Interests pursuant to any such applicable document or instrument; (d) allow the Administrative and Collateral Agents to enforce their rights, claims, and interests vis-à-vis any party other than the Debtors, including, but not limited to, any indemnification rights or any rights with respect to priority or payment or to exercise charging liens; (e) preserve any rights of the DIP Agent, Super-Priority Agent, the First Lien Agent, and the Second Lien Agent to payment of fees, expenses and indemnification obligations against money or property distributed to the lenders under the DIP Documents, Super-Priority Documents, Sixth-Out Documents, or Seventh-Out Dockets, as applicable, including any rights of enforcement, rights to priority of payment or to maintain, exercise, and/or enforce charging liens; (f) preserve the rights of the DIP Agent, Super-Priority Agent, the First Lien Agent, and the Second Lien Agent to appear and be heard in these Chapter 11 Cases to the extent such rights exist, and (g) permit the DIP Agent, Super-Priority Agent, the First Lien Agent, and the Second Lien Agent to perform any function necessary to effectuate the foregoing. Notwithstanding the foregoing, any provision in any such agreement, instrument, note, certificates, indenture, mortgage, security document, or other instrument or document that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors of their interests as a result of the cancellations, terminations, satisfaction, or releases provided for in this Article V.L shall be deemed null and void and shall be of no force and effect.

Except for the foregoing, subsequent to the performance by the Administrative and Collateral Agents of their respective obligations pursuant to this Plan, all further duties, obligations, liability, and responsibilities of the Administrative and Collateral Agents related to the DIP Documents, the Prepetition First Lien Credit Agreement, the Prepetition Second Lien Credit Agreement, and the Prepetition Super-Priority Credit Agreement, as applicable, shall terminate.

**M.**     *Corporate Action*

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Plan Administrator) and the Implementation Memorandum shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

**N.**     *Exemption From Transfer Taxes and Fees*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer pursuant to, in contemplation of, or in connection with this Plan (including the Sale Transaction and the Wind-Down), including pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in connection with the transactions contemplated hereby; (2) the creation, modification, consolidation, termination, refinancing, release or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; (4) the grant of collateral security for any or all of any indebtedness; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan and the transactions contemplated hereby, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or fee, or other similar tax, fee or governmental assessment, and the appropriate state or local government officials, recording officers or agents (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code and shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee or governmental assessment.

**O.**     *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file or record (in consultation with the Ad Hoc Group and ORC) such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions

of this Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

**P.**        *Directors, Managers, and Officers of the Debtors*

Following the Confirmation Date and prior to the occurrence of the Effective Date, the then-current officers, directors and managers of each of the Debtors shall continue in their respective capacities in accordance with the applicable by-laws or other organizational documents, unless otherwise agreed between the Debtors and the Purchaser, and the Debtors shall execute such documents and take such other action as is necessary to effectuate the actions provided for in this Plan and the Implementation Memorandum.

On and after the Effective Date, the Plan Administrator shall serve as the sole shareholder, interest holder, officer, director or manager of each of the Debtors, as applicable, under applicable state law.  The Plan Administrator, subject to the terms and conditions of this Plan and the Plan Administration Agreement, shall be authorized to execute, deliver, file or record (in consultation with the Ad Hoc Group and ORC) such documents, contracts, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**Q.**        *Insurance Policies*

Before the Petition Date, the Debtors obtained the D&O Tail Coverage for their current and former directors, officers, and managers. After the Effective Date, all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Tail Coverage for the full term of such D&O Policy, subject to and in accordance with the terms and conditions of such D&O Tail Coverage and the D&O Policies in all respects.

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, to the extent any Insurance Policies have not already been assumed and assigned to the Purchaser pursuant to the Sale Order or Sale Transaction Documents, (i) on the Effective Date, the Debtors shall be deemed to have assumed all such Insurance Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code identified on the Schedules of Assumed Contracts, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; (ii) neither Confirmation nor Consummation of this Plan shall alter, impair or otherwise modify the terms and conditions of any such Insurance Policy or the coverage provided pursuant thereto (including any indemnity obligations assumed by the foregoing assumption of Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed) except that on and after the Effective Date, all Insurance Policies not transferred to the Purchaser pursuant to the Sale Order or the Sale Transaction Documents shall vest unaltered and in their entireties in the Post-Effective Date Debtors or the Plan Administrator, as applicable, who shall succeed to all of rights and obligations and shall become and remain liable in full for all of the Debtors' obligations under such Insurance Policies, regardless of whether such obligations arise before or after the Effective Date and without the need for an Insurer to file a Proof of Claim or Administrative Claim or to object to any Cure Notice; (iii) for the avoidance of doubt, neither Confirmation nor

Consummation of this Plan, nor the vesting of the Insurance Policies in the Post-Effective Date Debtors and their Estates or the Plan Administrator, as applicable, shall impair, alter, modify or otherwise affect (x) any parties' rights to coverage thereunder, including in respect of any claims pending as of the Effective Date or pursued or made thereafter, or (y) any available defenses of the Debtors or the Plan Administrator or any Insurer under the Insurance Policies; and (iv) on the Effective Date, the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article X of this Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) without altering clause (ii) and sub-clause (II) hereof, claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims solely as against the proceeds of the applicable Insurance Policies; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article X of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff), in each instance to the extent permissible under applicable non-bankruptcy law and in accordance with the terms of such Insurance Policies.

**R.**      *Preservation of Retained Causes of Action*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in this Plan, the Committee Settlement, pursuant to the Sale Transaction, or by a Bankruptcy Court order, the Debtors reserve the Retained Causes of Action. On and after the Effective Date, the Liquidation Trustee may pursue the Retained Causes of Action in its sole discretion. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtors or the Liquidation Trustee will not pursue any and all available Retained Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidation Trustee shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment the Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of this Plan itself and the occurrence of the Effective Date.

**S.**      *Closing of the Chapter 11 Cases*

After a Chapter 11 Case has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close that Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**T.**     *Cooperation Between Plan Administrator, Liquidation Trustee, and Purchaser[2]*

Prior to the completion of the Wind-Down and closing of the Chapter 11 Cases of the Post-Effective Date Debtors, the Plan Administrator and the Liquidation Trustee shall have reasonable access to, and the reasonable assistance of, the Purchaser, and to the assets, software, and systems of Robertshaw, to the extent necessary to (a) reconcile Claims in connection with the Chapter 11 Cases, and (b) with respect to the Plan Administrator, complete the Wind-Down, in each case consistent with the Asset Purchase Agreement, Plan Administration Agreement and the Liquidation Trust Agreement.  Prior to the completion of the Wind-Down and closing of the Chapter 11 Cases of the Post-Effective Date Debtors, the Purchaser shall have reasonable access to, and the reasonable assistance of, the Plan Administrator and the Liquidation Trustee, and to the assets, software, and systems of, as applicable, the Post-Effective Date Debtors and the Liquidation Trustee, (x) to continue to perform its obligations to holders of Go-Forward Trade Claims and any other obligations of the Debtors assumed by the Purchaser under this Plan or the Sale Order and (y) as otherwise necessary in the ordinary course of operations, in each case consistent with the Plan Administration Agreement and the Liquidation Trust Agreement.

The Plan Administration Agreement may set forth additional tasks to be completed by the Plan Administrator on behalf of Robertshaw or the Purchaser pursuant to Robertshaw's or the Purchaser's obligations under this Plan, as any such may be agreed between the Debtors and the Purchaser (prior to the Effective Date) or the Plan Administrator and the Purchaser (on and after the Effective Date).

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     *Assumption or Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, as of the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases that (1) have not been previously rejected, assumed, or assumed and assigned, including in connection with the Sale Transaction, and are not the subject of a pending motion or notice to reject, assume, or assume and assign as of the Effective Date, (2) are not identified on the Schedules of Assumed Contracts, and (3) have not expired under their own terms prior to the Effective Date.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Notwithstanding the foregoing, before the Effective Date, the Debtors (subject to the Consenting Lender Consent Rights) shall have the right to amend the Schedules of Assumed Executory Contracts and Unexpired Leases.

The Cure of all defaults under Executory Contracts and Unexpired Leases to be assumed and assigned under the Asset Purchase Agreement, including the resolution of all Adjourned Objections to the adequacy of amounts proposed to Cure such defaults under such Executory

---

[2]     For purposes of this paragraph, "Purchaser" includes any successor thereto that carries on the business of the Debtors after the Effective Date.

Contracts and Unexpired Leases, shall be governed by the terms and conditions of the Sale Order and the Asset Purchase Agreement.

**B.**      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any nonbankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

**C.**      *Assumption of the D&O Policies*

The Debtors, and upon the Effective Date, the Post-Effective Date Debtors, shall assume all of the D&O Policies pursuant to section 365(a) of the Bankruptcy Code that have not been assumed pursuant to the Sale Transaction.  Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Policies and authorization for the Debtors to take such actions, and to execute and deliver such documents, as may be reasonably necessary or appropriate to implement, maintain, cause the binding of, satisfy any terms or conditions of, or otherwise secured for the insureds the benefits of the D&O Policies.

In addition and for the avoidance of doubt, after the Effective Date, none of the Post-Effective Date Debtors shall terminate or otherwise reduce the coverage under D&O Tail Policies covering the Debtors' current boards of directors in effect on or after the Petition Date and, subject to the terms of the applicable D&O Tail Policies, all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

**D.**      *Payments Related to Assumption of Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to this Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding: (a) the amount of any Cure Claim; (b) the ability of the Post-Effective Date Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption, the Cure Claims shall be paid following the entry of a Final Order resolving any such dispute and approving the assumption of such Executory Contracts or Unexpired Leases; *provided, however*, that the Debtors or the Post-Effective Date Debtors, as applicable, may settle any dispute regarding the amount of any Cure Claim without any further notice to or action, order or approval of the Bankruptcy Court.

**E.**      *Rejection Damages Claims*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases under this Plan must be filed with the Balloting Agent and served upon the Plan Administrator and counsel for the Debtors, as applicable, within thirty (30) days after the occurrence of the Effective Date in accordance with the instructions and procedures set forth in the Confirmation Order; *provided*, that the foregoing deadline shall apply only to Executory Contracts or Unexpired Leases that are rejected automatically by operation of Article VI.A above, and the deadline for filing any rejection damage Claims relating to any Executory Contracts or Unexpired Leases rejected pursuant to a separate order of the Bankruptcy Court shall be the applicable deadline under such order or the Claims Bar Date Order, as applicable.  Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that becomes an Allowed Claim shall be classified and treated as a General Unsecured Claim against the applicable Debtor.

**F.**      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Schedules of Assumed Executory Contracts and Unexpired Leases, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Post-Effective Date Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Post-Effective Date Debtors, as applicable, shall have sixty (60) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

**G.**      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VII.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.**      *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

   1.   Timing and Calculation of Amounts to Be Distributed and Date of Distributions

Unless otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter, but in no event later than ninety (90) days after the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the amount of the Distribution that this Plan provides for Allowed Claims in the applicable Class which, with respect to Holders of Allowed Claims in Class 5, may be an initial amount subject to subsequent Distributions to the extent such Distribution is not the full applicable amount in the Additional Sale Consideration Escrow Account.  Subsequent

Distributions shall be made, if determined by the Plan Administrator to be practicable and appropriate, on a quarterly basis thereafter; *provided* that the Plan Administrator may refrain from making an interim Distribution to the extent the Plan Administrator reasonably determines that the costs of making such Distribution are not reasonable in comparison to the amount of such Distribution and instead may reserve making any subsequent Distributions until a future Distribution date.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VII and Article VIII.  Except only for DIP Facility Claims, Holders of Claims shall not be entitled to postpetition interest, dividends, or accruals on their Claims, regardless of whether Distributions on account of such Claims are delivered before, on or at any time after the Effective Date.

2. Entitlement to Distributions

On and after the Effective Date, the Disbursing Agent shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date.  Accordingly, the Disbursing Agent will have no obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute any securities, property, notices, and other documents only to those Holders of Allowed Claims who are Holders of Claims (or participants therein) as of the close of business on the Distribution Record Date.

**B.**     *Disbursing Agent*

Except as otherwise provided herein, all Distributions under this Plan shall be made by the Debtors as Disbursing Agent or such other Entity designated by the Debtors as a Disbursing Agent on the Effective Date, which may be the Plan Administrator.

**C.**     *Distributions on Account of Claims Allowed After the Effective Date*

1. Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims or Equitably Subordinated Funded Debt Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2. Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the Disbursing Agent, (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim or an Equitably Subordinated Funded Debt Claim until all disputes in connection with such Disputed Claim or Equitably Subordinated Funded Debt Claim have been resolved by settlement or Final Order and such claim becomes an Allowed Claim; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim or Equitably Subordinated Funded

Debt Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim or Equitably Subordinated Funded Debt Claim have been resolved by settlement or Final Order.  Any Distributions to Holders of Allowed Claims in a Class under this Plan shall be made, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such Distributions were earlier paid to Holders of Allowed Claims in such Class.

**D.**     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.   Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make Distributions to Holders of Allowed Claims at the address for each such Holder as indicated on (a) such Holders' address on its Proof of Claim, if applicable, (b) such Holders' address listed on a notice filed with the Bankruptcy Court, if applicable, or (c) if neither (a) or (b) are available, the address of record for the Holder listed on the Debtors' Schedules.

2.   Undeliverable Distributions and Unclaimed Property

(a)     Failure to Claim Undeliverable Distributions

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred and eighty (180) days from the date the Distribution was returned.  After such date, all unclaimed property or interests in property shall revert to the Post-Effective Date Debtors and their Estates (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be cancelled and forever barred.

(b)     Failure to Present Checks

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the relevant Allowed Claim for which such check was originally issued.  Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within one hundred and eighty (180) days after the issuance of such check shall have its Claim for such un-negotiated check cancelled, forever barred, and estopped, and such Holder shall be enjoined from asserting any such Claim against the Post-Effective Date Debtors and their Estates.  In such cases, any Cash held for payment on account of such Claims shall be property of the Post-Effective Date Debtors and their Estates as Plan Administration Assets free of the Claims of such Holder with respect thereto.  Nothing contained herein shall require the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

3.   Record Date for Distributions

For purposes of making Distributions on the Initial Distribution Date only, the Disbursing Agent shall be authorized and entitled to recognize only those Holders of Claims reflected in the Debtors' books and records as of the close of business on the Distribution Record Date. If a Claim is transferred (a) twenty-one (21) or more days before the Distribution Record Date and reasonably satisfactory documentation evidencing such transfer is filed with the Bankruptcy Court, the Disbursing Agent shall make the applicable Distributions to the applicable transferee, or (b) twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make Distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form is filed with the Bankruptcy Court and contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

4. Delivery of Distributions on Account of First- Through Fifth-Out Funded Debt Deficiency Claims

The Super-Priority Agent shall be deemed to be the Holder of all applicable Super-Priority Funded Debt Deficiency Claims for purposes of Distributions to be made hereunder, and all Distributions on account of such Super-Priority Funded Debt Deficiency Claims shall be made to the Super-Priority Agent. As soon as practicable following the Effective Date, the Super-Priority Agent shall arrange to deliver or direct the delivery of such Distributions to or on behalf of the applicable Holders of Allowed Super-Priority Funded Debt Deficiency Claims in accordance with the terms of the Prepetition Super-Priority Credit Agreement, subject to any modifications to such Distributions in accordance with the terms of this Plan. Notwithstanding anything in this Plan to the contrary, and without limiting the exculpation and release provisions of this Plan, the Super-Priority Agent shall not have any liability to any Entity with respect to Distributions made or directed to be made by the Super-Priority Agent, except liability resulting from gross negligence, actual fraud, or willful misconduct of the Super-Priority Agent or otherwise as set forth in the applicable Super-Priority Credit Documents (as defined in the DIP Order).

5. Delivery of Distributions on Sixth-Out Funded Debt Deficiency Claims

The First Lien Agent shall be deemed to be the Holder of all applicable Sixth-Out Funded Debt Deficiency Claims for purposes of Distributions to be made hereunder, and all Distributions on account of such Sixth-Out Funded Debt Deficiency Claims shall be made to the First Lien Agent. As soon as practicable following the Effective Date, the First Lien Agent shall arrange to deliver or direct the delivery of such Distributions to or on behalf of the applicable Holders of Allowed Sixth-Out Funded Debt Deficiency Claims in accordance with the terms of the Sixth Out Credit Documents, subject to any modifications to such Distributions in accordance with the terms of this Plan. Notwithstanding anything in this Plan to the contrary, and without limiting the exculpation and release provisions of this Plan, the First Lien Agent shall not have any liability to any Entity with respect to Distributions made or directed to be made by the First Lien Agent, except liability resulting from gross negligence, actual fraud, or willful misconduct of the First Lien Agent or otherwise as set forth in the Prepetition First Lien Credit Agreement.

6. Delivery of Distributions on Seventh-Out Funded Debt Deficiency Claims

The Second Lien Agent shall be deemed to be the Holder of all applicable Seventh-Out Funded Debt Deficiency Claims for purposes of distributions to be made hereunder, and all

Distributions on account of such Seventh-Out Funded Debt Deficiency Claims shall be made to the Second Lien Agent.  As soon as practicable following the Effective Date, the Second Lien Agent shall arrange to deliver or direct the delivery of such Distributions to or on behalf of the applicable Holders of Allowed Seventh-Out Funded Debt Deficiency Claims in accordance with the terms of the Seventh Out Credit Documents, subject to any modifications to such Distributions in accordance with the terms of the Plan.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Second Lien Agent shall not have any liability to any Entity with respect to Distributions made or directed to be made by the Second Lien Agent, except liability resulting from gross negligence, actual fraud, or willful misconduct of the Second Lien Agent.

       7.  <u>Fractional Distributions</u>

Notwithstanding anything in this Plan to the contrary, no payment of fractional cents shall be made pursuant to this Plan.  Whenever any payment of a fraction of a cent under this Plan would otherwise be required, the actual distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

       8.  <u>De Minimis Distributions</u>

Notwithstanding anything to the contrary contained in this Plan, the Disbursing Agent shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $50.  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $50 shall be forever barred from asserting such Claim against the Estates.

**E.**    *Compliance with Tax Requirement; Allocations*

In connection with this Plan and all Distributions hereunder, the Debtors and any other applicable Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed on them, and all Distributions hereunder and under all related agreements shall be subject to any such withholding and reporting requirements.  Notwithstanding any provision in this Plan to the contrary, the Debtors and any other applicable Disbursing Agent have the right, but not the obligation, to take any and all actions that may be necessary or appropriate to comply with such applicable withholding and reporting requirements, including (i) withholding distributions and amounts therefrom pending receipt of information necessary to facilitate such distributions, including properly executed withholding certification forms, (ii) in the case of a non-Cash distribution that is subject to withholding, withholding an appropriate portion of such property and either liquidating such withheld property to generate sufficient funds to pay applicable withholding taxes (or to reimburse the distributing party for any advance payment of the withholding tax) or to permit a relevant party to pay the withholding tax using its own funds and retain such withheld property, and (iii) making distributions conditional on the receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate.  Notwithstanding any provision in this Plan to the contrary, all Persons and Entities holding Claims shall be required to provide any information necessary to

effect information reporting and the withholding of applicable taxes (or establish eligibility for an exclusion for the withholding of taxes), and each Holder of an Allowed Claim will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations associated therewith, including income, withholding, and other tax obligations.  Any amounts withheld or reallocated pursuant to this Section E shall be treated as if distributed to the Holder of the Allowed Claim.  The Debtors and other applicable Disbursing Agent reserve the right to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

The Debtors, the Plan Administrator, or the Disbursing Agent may require, as a condition to the receipt of a Distribution, that a Holder furnish to the Debtors, Plan Administrator, or Disbursing Agent, as applicable, any necessary or appropriate tax documentation and information, including a Form W-8 or Form W-9, as applicable, and including any other forms or documents reasonably required by the Debtors, the Plan Administrator, or the Disbursing Agent.  If any Holder fails to comply with such a request within three (3) months thereof, such Distribution in respect of such Holder may be withheld and in such event shall be deemed an undeliverable Distribution and shall be treated in accordance with Article VII.D.2 hereof.

**F.**     *Surrender of Cancelled Instruments or Securities*

As a condition precedent to receiving any Distribution on account of its Allowed Claim, each Holder of a Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentations shall be deemed to be canceled, except to the extent otherwise provided herein.

**G.**     *Claims Paid or Payable by Third Parties*

1.     Claims Paid by Third Parties

The Debtors or the Plan Administrator, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed upon an order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Plan Administrator.  To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Plan Administrator to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the total Allowed amount of such Claim as of the Distribution Date.

2.     Claims Payable to Third Parties

No Distributions under this Plan shall be made on account of a Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon satisfaction by such Insurer, such Claim may be expunged to the extent of such satisfaction upon an order or approval of the Bankruptcy Court or deemed satisfied in full or in part, as applicable.

3.  Applicability of Insurance Policies

Except as otherwise provided in this Plan, payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any Insurers under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

**H.**     *Allocation of Plan Distributions between Principal and Interest*

To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest (or original issue discount) thereon, such Distribution shall, except as required by law (as reasonably determined by the Debtors), be allocated first to the principal amount of the Claim and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest (or original issue discount).

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

**A.**     *Allowance and Disallowance of Claims*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code or this Plan or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim.  Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Sale Order and Confirmation Order), the Plan Administrator after Consummation will have and retain any and all rights and defenses the Debtors had with respect to any Claim as of the Petition Date.

**B.**     *Prosecution of Objections to Claims*

The Plan Administrator shall have the authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan.  From and after the Effective Date, the Plan Administrator, may, subject to the consent of the Ad Hoc Group and ORC (not to be unreasonably withheld), settle or compromise any Disputed Claim or Equitably Subordinated Funded Debt Claim, and may administer and adjust the Claims Register to reflect such settlements or compromises, without notice to, action, order, or approval of the Bankruptcy Court; *provided* that the Ad Hoc Group and/or ORC may waive the consent obligation contemplated hereunder following the Effective Date.  The Plan Administrator may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law, as necessary; *provided*, *however*, that for the avoidance of doubt, the underlying Claim shall remain under the jurisdiction of the Bankruptcy Court and shall not be Disallowed other than by order of the Bankruptcy Court.

With respect to the foregoing duties of the Plan Administrator to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims (including Equitably Subordinated Funded Debt Claims), the Plan Administrator, as the case may be, shall stand in the same position as the Debtors with respect to any claim the Debtors may have to an attorney-client privilege, the work-product doctrine or any other privilege, and the Plan Administrator shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege.

**C.**   *Estimation of Claims*

The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Plan Administrator has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the applicable Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

**D.**   *Disputed Claims Reserves*

On or after the Effective Date, the Plan Administrator shall have the right, but is not required, to establish a Disputed Administrative Claims Reserve and a Disputed General Unsecured Claims Reserve, and to determine the amount of any Disputed Claims Reserves based on good faith estimates (in consultation with the Committee or Liquidation Trustee, as applicable, and the Ad Hoc Group and ORC) or an order of the Bankruptcy Court estimating such Disputed Claims, net of any taxes imposed thereon or otherwise payable by the Disputed Claims Reserves, and which may be held in the same account as the Wind-Down Amount.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination by the IRS, the Plan Administrator shall treat any Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and to the extent permitted by applicable law, report consistently the foregoing for state and local income tax purposes. All parties (including, to the extent applicable, the Debtors, the Post-Effective Date Debtors, the Plan Administrator and Holders of Disputed Claims) shall be required to report for tax purposes consistently with the foregoing.

The Plan Administrator shall hold in any Disputed Claims Reserve all payments to be made on account of Disputed Claims for the benefit of Holders of Disputed Claims whose Claims are subsequently Allowed. All taxes imposed on the assets or income of any Disputed Claims Reserve shall be payable by the Plan Administrator from the assets of such Disputed Claims Reserve.

The Disputed Claims Reserves shall be funded from the Wind-Down Reserve. In the event Cash in any Disputed Claims Reserve is insufficient to satisfy all of the applicable Disputed Claims

that have become Allowed, such Allowed Claims shall be satisfied from the Wind-Down Reserve. After all Cash has been distributed from a Disputed Claims Reserve, no further distributions shall be made in respect of the applicable Disputed Claims.  At such time as all Disputed Claims have been resolved, any remaining Cash in the applicable Disputed Claims Reserve shall be remitted to the Wind-Down Reserve.

The Plan Administrator may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Disputed Claims Reserves for all taxable periods through the date on which final distributions are made.

**E.**     *Equitably Subordinated Funded Debt Claim Reserve*

On or after the Effective Date, if necessary, the Plan Administrator shall have the right, but is not required, to establish an Equitably Subordinated Funded Debt Claim Reserve and to determine the amount of the Equitably Subordinated Funded Debt Claim Reserve based on the good faith estimates (in consultation with the Committee or Liquidation Trustee, as applicable, the Debtors, the Ad Hoc Group, and ORC), net of any taxes imposed thereon or otherwise payable by the Equitably Subordinated Funded Debt Claim Reserve, and which such amount shall be deposited in the Equitably Subordinated Funded Debt Claim Reserve.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination by the IRS, the Plan Administrator shall treat the Equitably Subordinated Funded Debt Claim Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and to the extent permitted by applicable law, report consistently the foregoing for state and local income tax purposes.  All parties (including, to the extent applicable, the Debtors, the Post-Effective Date Debtors, the Plan Administrator and Holders of Equitably Subordinated Funded Debt Claims) shall be required to report for tax purposes consistently with the foregoing.

The Plan Administrator shall hold in the Equitably Subordinated Funded Debt Claim Reserve all payments to be made on account of Equitably Subordinated Funded Debt Claims for the benefit of Holders of Equitably Subordinated Funded Debt Claims whose Claims are subsequently Allowed as Claims other than a Subordinated Claim.  All taxes imposed on the assets or income of the Equitably Subordinated Funded Debt Claim Reserve shall be payable by the Plan Administrator from the assets of the Equitably Subordinated Funded Debt Claim Reserve.

In the event Cash in the Equitably Subordinated Funded Debt Claim Reserve is insufficient to satisfy all of the Equitably Subordinated Funded Debt Claims that have become Allowed as Claims other than Subordinated Claims, such Allowed Claims shall be satisfied pro rata from such remaining Cash.  After all Cash has been distributed from the Equitably Subordinated Funded Debt Claim Reserve, no further distributions shall be made in respect of Equitably Subordinated Funded Debt Claims.  As such time as the priority of all Equitably Subordinated Funded Debt Claims have been resolved, any remaining Cash in the Equitably Subordinated Funded Debt Claim Reserve shall be distributed to holders of Allowed Funded Debt Deficiency Claims, subject to Article V.D hereof, and beginning with Second-Out Funded Debt Deficiency Claims, in accordance with this Plan and the waterfall provisions of the Super-Priority Prepetition Credit Agreement and the Intercreditor Agreements.

The Plan Administrator may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Equitably Subordinated Funded Debt Claim Reserve for all taxable periods through the date on which final distributions are made.

**F.**      *Distributions After Allowance*

To the extent that a Disputed Claim or Equitably Subordinated Funded Debt Claim ultimately becomes an Allowed Claim as a Claim other than a Subordinated Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or establishing the priority of an Equitably Subordinated Funded Debt Claim becomes a Final Order, the Plan Administrator shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any postpetition interest to be paid on account of such Claim.

**G.**      *Disallowance of Certain Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code unless expressly Allowed pursuant to this Plan, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Post-Effective Debtors or the Liquidation Trustee, as applicable.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

**A.**      *Conditions Precedent to Confirmation*

Unless satisfied or waived pursuant to the provisions of Article IX.C hereof, the following are conditions precedent to Confirmation of this Plan:

1. The Disclosure Statement Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtors and the Committee and in accordance with the Consenting Lender Consent Rights.

2. The Confirmation Order shall have been entered by the Bankruptcy Court and contain terms and conditions consistent in all material respects with the Sale Order and the Committee Settlement and otherwise be in form and substance reasonably acceptable to the Debtors and the Committee, and in accordance with the Consenting Lender Consent Rights and shall not have been vacated, amended or otherwise modified.

3.   The Sale Order shall constitute a Final Order and shall not have been vacated, amended or otherwise modified.

4.   The Sale Transaction Documents shall not have been terminated in accordance with their terms.

5.   The Bankruptcy Court shall have entered an order granting the relief sought in the Invesco Adversary Action.

6.   The Restructuring Support Agreement shall be in full force and effect, no termination event or event that would give rise to a termination event under the Restructuring Support Agreement upon the expiration of the applicable grace period shall have occurred, and the Restructuring Support Agreement shall not have been validly terminated prior to the Confirmation Date.

7.   The Bankruptcy Court shall have approved the Committee Settlement.

**B.**      *Conditions Precedent to the Effective Date*

In addition to the satisfaction of the provisions of Article IX.A hereof, unless satisfied or waived pursuant to the provisions of Article IX.C hereof, the following are conditions precedent to the occurrence of the Effective Date of this Plan:

1.   The Confirmation Order shall have been entered by the Bankruptcy Court and contain terms and conditions consistent in all material respects with the Sale Order and the Committee Settlement and otherwise be in form and substance reasonably acceptable to the Debtors and the Committee, and in accordance with the Consenting Lender Consent Rights and shall not have been vacated, amended or otherwise modified.

2.   This Plan, the Definitive Documents, and all other documents contemplated thereby, including any amendments, modifications, or supplements thereto, shall be consistent in all material respects with the Sale Order and the Committee Settlement and otherwise be in form and substance reasonably acceptable to the Debtors, the Committee and in accordance with the Consenting Lender Consent Rights.

3.   All conditions precedent to the effectiveness of the Sale Transaction Documents shall have been satisfied or waived pursuant to the terms thereof, and the consummation of such Sale Transaction will occur simultaneously with the Effective Date.

4.   All Definitive Documents shall have been executed, delivered, and filed (if applicable) and shall be in full force and effect, and all conditions precedent to effectiveness set forth in the Definitive Documents shall have been satisfied or waived in accordance with the terms thereof.

5.   The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate this Plan and the Definitive Documents and no order, injunction or judgment shall have been issued by any governmental authority or arbitrator to restrain, prohibit, enjoin or declare illegal the transactions contemplated by this Plan, and no law shall have been promulgated or enacted and be in effect that on a

temporary or permanent basis restrains, enjoins, or invalidates the transactions contemplated by this Plan.

6.  The Plan Administration Agreement shall have been executed and delivered by all of the Entities that are parties thereto, all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof, and the Plan Administration Agreement shall otherwise be in form and substance reasonably acceptable to the Debtors, the Ad Hoc Group, and ORC

7.  All actions, documents, certificates, and agreements necessary to implement this Plan shall (i) have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws and (ii) be in full force and effect.

8.  The Wind-Down Reserve shall have been established and funded in an amount consistent with the Post-Effective Date Budget.

9.  The Additional Sale Consideration Escrow Account shall have been established and funded with the Additional Sale Consideration.

10. The Restructuring Support Agreement shall be in full force and effect, no termination event or event that would give rise to a termination event under the Restructuring Support Agreement upon the expiration of the applicable grace period shall have occurred, and the Restructuring Support Agreement shall not have been validly terminated prior to the Effective Date.

11. The Restructuring Fees and Expenses and Agent Expenses shall have been paid in full in cash.

12. The Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount.

13. All Statutory Fees due and payable prior to the Effective Date shall have been paid by the Debtors.

14. All Allowed DIP Facility Claims shall be repaid or otherwise satisfied in full by the Purchaser in accordance with the terms of the Asset Purchase Agreement.

15. All unpaid reasonable and documented fees and expenses of the DIP Agent shall have been paid in full in Cash by the Debtors.

### C.    *Waiver of Conditions*

Subject to section 1127 of the Bankruptcy Code, the conditions to Confirmation and Consummation of this Plan set forth in this Article IX may, with the consent of the Ad Hoc Group and the Committee, be waived by the Debtors with or without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan; *provided* that the Debtors may not waive the conditions to Consummation set forth in paragraphs

1 (subject to the consent rights therein), 2 (subject to the consent rights therein), 3, 4, 5, 6, 8, 9, 10, 11, 12 and/or 13 of Article IX.B hereof without the prior written consent of the Committee and ORC (which consent may be given by email) and, solely with respect to paragraph 12, the prior written consent of the affected Professional(s) (which consent may be given by email). The failure of the Debtors to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

**D.**     *Effect of Non-Occurrence of Conditions to Confirmation or Consummation*

If the Confirmation or the Consummation of this Plan does not occur with respect to one or more of the Debtors, then this Plan will, with respect to such applicable Debtor or Debtors, be null and void in all respects and nothing contained in this Plan or the Disclosure Statement will: (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (3) constitute an Allowance of any Claim or Interest; or (4) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

**E.**     *Substantial Consummation*

On the Effective Date, this Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## ARTICLE X.

## RELEASE, EXCULPATION, INJUNCTION AND RELATED PROVISIONS

**A.**     *General*

Pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan and the Committee Settlement, the provisions of this Plan shall collectively constitute an integrated and global good faith compromise or settlement of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, any Distribution to be made on account of such Allowed Claim or Allowed Interest, including, without limitation, all controversies among the Debtors, the Ad Hoc Group, ORC, the Committee, and all other Holders of Claims against the Debtors, including, without limitation, (i) Claims, Interests and controversies relating to the settlements embodied in the Committee Settlement, which is integrated with, and non-severable from, the provisions of this Plan and the global comprise and settlement embodied herein, and (ii) in connection with the Committee Settlement, the distribution to which Holders of Claims in Class 5 are entitled. The Plan shall be deemed a motion to approve the compromises and settlements contained in the Plan and the good faith compromise and settlement of all of the Claims, Interests and controversies (other than Causes of Action specifically retained by the Debtors' estates) described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. The provisions of this Plan and the Committee Settlement, including, without limitation, the global settlement of all Claims, Interests and controversies and

the release, injunction, exculpation and compromise provisions provided herein, are mutually dependent.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of all of the provisions of this Plan and implementation of the Committee Settlement collectively as an integrated and global compromise and settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such integrated compromises and settlements are in the best interests of the Debtors, their Estates and Holders of Claims and Interests and are fair, equitable and reasonable.  In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against them and Causes of Action against other Entities.[3]

**B.      *Debtor Release***

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by this Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtors, the Post-Effective Date Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and Representatives and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Post-Effective Date Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "<u>Debtor Released Claims</u>"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the December Transaction, the May Transaction, the Prepetition Super-Priority Credit Agreement (including, for the avoidance of doubt, the first through fifth amendments related thereto), the Sixth Out Credit Documents, the Seventh Out Credit Documents (including any intercreditor agreements related to the foregoing), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the Debtors' in or out-of-court restructuring and recapitalization efforts, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Support Agreement, the documents in the Plan Supplement, the Asset**

---

[3]    The Debtors and their Estates are continuing their ongoing internal investigation.  Nothing herein shall constitute or be deemed a waiver of any rights related to such internal investigation.

Purchase Agreement, the Bidding Procedures Order, the Sale Transaction, the Sale Order, the Committee Settlement, the Disclosure Statement, the DIP Order and the DIP Documents, this Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission; **provided**, **however**, that the foregoing "<u>Debtor Release</u>" shall not operate to waive or release, and the "Debtor Released Claims" shall not include, any Cause of Action of any Debtor or its Estate: (1) against a Released Party arising from any obligations owed to the Debtors pursuant to an Executory Contract or Unexpired Lease that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (2)  expressly set forth in and preserved by this Plan or related documents; (3) that is of a commercial nature and arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (4) against a Holder of a Disputed Claim to the extent necessary to administer and resolve such Disputed Claim solely in accordance with this Plan; or (5) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct (other than with respect to or relating to the Adversary Actions).  Notwithstanding anything to the contrary in the foregoing, the "Debtor Release" set forth above does not release any post-Effective Date obligations of any Entity under this Plan or any document, instrument or agreement executed in connection with this Plan with respect to the Debtors, the Post-Effective Date Debtors, or the Estates.

## C.    *Release by Holders of Claims and Interests*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan, and the obligations contemplated by this Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person (collectively, the "<u>Third Party Released Claims</u>"), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the December Transaction, the May Transaction, the Prepetition Super-Priority Credit Agreement (including, for the avoidance of doubt, the first through fifth

amendments related thereto), the Sixth Out Credit Documents, the Seventh Out Credit Documents (including any intercreditor agreements related to the foregoing), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the Debtors' in or out-of-court restructuring and recapitalization efforts, intercompany transactions between or among a Debtor and another Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, the Asset Purchase Agreement, the Bidding Procedures Order, the Sale Transaction, the Committee Settlement, the Sale Order, the Disclosure Statement, the DIP Order and the DIP Documents, this Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission; **provided**, **however**, that the foregoing Third-Party Release shall not operate to waive or release, and the "Third-Party Released Claims" shall not include, any Cause of Action of any Releasing Party: (1) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors or the Post-Effective Date Debtors; (2) expressly set forth in and preserved by this Plan or related documents; or (3) arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct (other than with respect to or relating to the Adversary Actions). Notwithstanding anything to the contrary in the foregoing, the "Third-Party Release" set forth above does not release any post-Effective Date obligations of any Entity under this Plan or any document, instrument or agreement executed in connection with this Plan.

## D.    *Exculpation*

To the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article X.B. or Article X.C. of this Plan, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or entity for any claims, causes of action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with or arising out of: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, implementing the Wind-Down, the Disclosure Statement, the Sale Transaction, the Asset Purchase Agreement, the Committee Settlement, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions in furtherance of any of the foregoing; **provided**, **however**, that none of the foregoing provisions shall operate to waive or release (i) any Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, or willful misconduct, as determined by a Final Order, and (ii) the Exculpated Parties' rights and obligations under this Plan, the Plan Supplement documents, and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on this Plan and, therefore, are not, and will not be, liable at any time for the violation of any

**applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or Distributions made pursuant to this Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

*E.*     *Permanent Injunction*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article X.B, Article X.C, Article X.D, and Article X.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.**

*F.*     *Setoffs*

Except as otherwise expressly provided for in this Plan, each Debtor and the Plan Administrator, pursuant to the Bankruptcy Code (including section 558 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Interest, may set off against any Allowed Claim or Allowed Interest and the Distributions to be made pursuant to this Plan on account of such Allowed Claim or Allowed Interest (before any Distribution is made on account of such Allowed Claim or Allowed Interest), any Claims, rights and Causes of Action of any nature that such Debtor or the Plan Administrator, as applicable, may hold against

the Holder of such Allowed Claim or Allowed Interest, to the extent such Claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to this Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to this Plan shall constitute a waiver or release by such Debtor of any such Claims, rights and Causes of Action that such Debtor may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right or Cause of Action of the Debtor unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date.  For the avoidance of doubt, the filing of a Proof of Claim is sufficient to preserve a right of set off hereunder.

## G.      Release of Liens

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to this Plan and, in the case of an Other Secured Claim, satisfaction in full of the portion of the Other Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and cancelled, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their Estates.

## H.      Preservation of All Causes of Action Not Expressly Settled or Released

The Debtors expressly reserve all Retained Causes of Action not transferred to the Purchaser as part of the Sale Transaction or released hereunder for later adjudication by, as applicable, the Debtors or the Liquidation Trustee (including, without limitation, Retained Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action upon or after the Confirmation or Consummation of this Plan based on the Disclosure Statement, this Plan, or the Confirmation Order, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in this Plan (including, without limitation, and for the avoidance of doubt, the Debtor Release contained in Article X.B, the Third-Party Release contained in Article X.C and the Exculpation contained in Article X.D hereof) or any other Final Order (including, without limitation, the Sale Order or the Confirmation Order).  In addition, the Debtors and the Plan Administrator, as applicable, expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any of the Debtors are a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

*I.*     *Compromise of GUC Causes of Action*

All GUC Causes of Action, and all proceeds thereof, shall be discharged, released, and enjoined as to the Debtors and the other Released Parties; *provided*, *however*, that such compromise shall occur effective as of the Effective Date.

*J.*     *Integral Part of Plan*

Each of the provisions set forth in this Plan with respect to the settlement, release, cancellation, exculpation, injunction, indemnification and insurance of, for or with respect to Claims and/or Causes of Action is an integral part of this Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and in addition to the matters over which the Bankruptcy Court shall have retained jurisdiction pursuant to the Sale Order, the Bankruptcy Court will, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as legally permissible, including, without limitation, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Interest, including equitable subordination or other subordination of any Claim or Interest pursuant to 11 U.S.C. § 510;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom;

4. resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5. hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

6. ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes related thereto;

7.  decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

8.  enforce all orders previously entered by the Bankruptcy Court;

9.  enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

10. resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Person or Entity's obligations incurred in connection with this Plan;

11. hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

12. hear and determine disputes arising in connection with the interpretation, implementation, enforcement of the Sale Order, Asset Purchase Agreement, or other document(s) governing or relating to the Sale Transaction including, without limitation, and all matters arising in connection with the Sale Transaction;

13. issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of this Plan;

14. enforce the terms and conditions of this Plan, the Confirmation Order, and the Definitive Documents and maintain the integrity of this Plan following Consummation;

15. hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

16. resolve any cases, controversies, suits or disputes with respect to the Release, Exculpation, indemnification and other provisions contained in Article X hereof and enter such orders or take such other actions as may be necessary or appropriate to implement or enforce all such provisions;

17. enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

18. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with this Plan;

19. enter an order or orders concluding or closing the Chapter 11 Cases;

20. hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

**A.**  *Reservation of Rights*

Except as expressly set forth herein, this Plan will have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated.  Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan will be or will be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or other Entity; or (2) any Holder of a Claim or an Interest or other Entity prior to the Effective Date.

**B.**  *No Government Releases*

Except as expressly provided for in this Plan, nothing herein, or in the Confirmation Order or other related Plan documents shall affect a release or limit any claim arising solely under the enforcement of the police powers or regulatory activities of the United States Government or any of its agencies, or any state and local authority, whatsoever.

**C.**  *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Debtors (or the Disbursing Agent on behalf of each of the Debtors), as applicable, for each quarter (including any fraction thereof) until the earliest to occur of the entry of (a) a final decree closing such Debtor's Chapter 11 Case, (b) an order dismissing such Debtor's Chapter 11 Case, or (c) an order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

**D.**  *Agent Expenses*

The Agent Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court or comply with any guidelines of the U.S. Trustee, and without any requirement for review or approval by the Bankruptcy Court or any other party. All Agent Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided*, that such estimate shall not be considered an admission or limitation with respect to such or Agent Expenses.  In addition, the Debtors and Plan Administrator (as applicable) shall continue to pay the Agent Expenses (if any) after the Effective Date when due and payable in the ordinary course related to implementation, consummation and defense of the Plan, whether

incurred before, on or after the Effective Date to the extent provided for and funded through the Post-Effective Date Budget.

**E.**     *Statutory Committee*

On the Effective Date, the current and former members of the Committee, and their respective officers, employees, counsel, advisors and agents, will be released from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases and the Committee will dissolve; *provided*, *however*, that following the Effective Date, the Committee will continue in existence and have standing and a right to be heard for the following limited purposes: (i) pursuing claims and final fee applications filed pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with Article II.A; and (ii) any appeals of the Confirmation Order related to the Committee Settlement.  Following the completion of the Committee's remaining duties set forth above, the Committee will be dissolved, and the retention or employment of the Committee's respective attorneys, accountants and other agents will terminate without further notice to, or action by, any Entity.

Notwithstanding anything else to the contrary herein, in addition to all other amounts included for purposes of calculating the Professional Fee Escrow Amount to be held in the Professional Fee Escrow Account pursuant to this Plan, the Professional Fee Escrow Amount also shall include $25,000 on account of fees and expenses that may be incurred after the Effective Date by Professional Persons retained by the Committee in connection with monitoring the Claims reconciliation process and responding to inquiries from Holders of Claims in Class 5, and any such Professional Fee Claims incurred after the Effective Date shall be paid by the Plan Administrator in the ordinary course from the Professional Fee Escrow Account without need for Bankruptcy Court approval; *provided* that nothing in this paragraph shall constitute an acknowledgment of, or agreement to, any continuation of the Committee's existence from and after the Effective Date other than as set forth herein.

**F.**     *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Debtors reserve the right, in accordance with the Consenting Lender Consent Rights, and in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order in accordance with section 1127(a) of the Bankruptcy Code and (b) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, and in accordance with the Consenting Lender Consent Rights, amend or modify this Plan in accordance with section 1127(b) of the Bankruptcy Code; *provided* that all such modifications and amendments shall be made in consultation with the Committee, the Ad Hoc Group, and ORC and, with respect to those modifications and amendments that may adversely impact (a) (i) the Committee Settlement, (ii) the rights and obligations of the Committee, its professionals or Holders of Claims in Class 5, or (iii) the Distributions to Holders of Claims in Class 5, such modifications and amendments shall require the prior written consent of the Committee, or (b) (i) the Committee Settlement, (ii) the rights and obligations of the Ad Hoc Group, the Ad Hoc Group Advisors, ORC, or the ORC Advisors, or (iii) the provisions applicable to the Wind-Down, Wind-Down Amount, or Post-Effective Date Budget, such modifications and amendments shall require the prior written consent of the Ad Hoc Group and ORC.  A Holder of

a Claim that has accepted this Plan will be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

**G.**     *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date and/or to file subsequent chapter 11 plans, with respect to one or more of the Debtors.  If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation of this Plan does not occur with respect to one or more of the Debtors, then with respect to the applicable Debtor or Debtors for which this Plan was revoked or withdrawn or for which Confirmation or Consummation of this Plan did not occur: (1) this Plan will be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto will be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan will: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the applicable Debtors or any other Entity; (b) prejudice in any manner the rights of the applicable Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the applicable Debtors or any other Entity.

**H.**     *Successors and Assigns*

This Plan will be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns.  The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

**I.**     *Further Assurances*

The Debtors, all Holders of Claims receiving Distributions hereunder, and all other Entities will, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

**J.**     *Severability*

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted; *provided, however,* that notwithstanding the foregoing, the terms of the Committee Settlement as approved in the Sale Order and implemented by this Plan are integrated with one another and the Plan and are non-severable.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The

Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**K.**     *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, each of the Released Parties and Exculpated Parties will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125 of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, each of the Released Parties and Exculpated Parties and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under this Plan and any previous plan, and, therefore, none of such parties or individuals or the Post-Effective Date Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan or any previous plan.

**L.**     *Service of Documents*

Any notice, direction or other communication given regarding the matters contemplated by this Plan (each, a "**Notice**") must be in writing, sent by personal delivery, electronic mail or courier, and addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Robertshaw US Holding Corp<br>1222 Hamilton Parkway<br>Itasca, Illinois 60143<br>Attn: Aaron Rachelson | Latham & Watkins LLP<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Attn: George Davis, George Klidonas, Adam Ravin, and Misha Ross<br><br>Hunton Andrews Kurth LLP<br>600 Travis Street, Suite 4200<br>Houston, Texas 77002<br>Attn: Timothy A. ("Tad") Davidson II and Ashley L. Harper |
| **United States Trustee** | **Counsel to the Creditors' Committee** |
| Office of The United States Trustee 515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Attn: Jana Whitworth and Andrew Jimenez | McDermott Will & Emery LLP<br>2501 North Harwood Street, Suite 1900<br>Dallas, Texas 75201<br>Attn: Charles R. Gibbs |
| **Counsel to the Ad Hoc Group** | **Counsel to the Sponsor** |

| Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166<br>Attn: Scott J. Greenberg, Jason<br>Zachary Goldstein and Matthew J.<br>Williams | Debevoise & Plimpton LLP<br>66 Hudson Blvd E,<br>New York, NY 10001<br>Attn: Sidney Levinson,<br>Erica Weisgerber, and Mitch Carlson |
|---|---|

A Notice is deemed to be given and received (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by facsimile, on the Business Day following the date of confirmation of transmission by the originating facsimile, or (c) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt; *provided* that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this Section. Any party may change its address for service from time to time by providing a Notice in accordance with the foregoing. Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed. Sending a copy of a Notice to a party's legal counsel as contemplated above is for information purposes only and does not constitute delivery of the Notice to that party. The failure to send a copy of a Notice to legal counsel does not invalidate delivery of that Notice to a party.

**M.**     *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that a Definitive Document or an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, the laws of the state of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

**N.**     *Tax Reporting and Compliance*

The Debtors are hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

**O.**     *Schedules*

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated herein and are a part of this Plan as if set forth in full herein.

**P.**     *Conflicts*

Except as set forth in this Plan, to the extent that any provision of the Disclosure Statement or any order (other than the Confirmation Order or the Sale Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of this Plan, this Plan shall govern and control; *provided* that, in the event of any conflict with any provision of this Plan and/or the Confirmation Order, the Confirmation Order shall govern; *provided further* that, in the event of

any conflict between the Plan, on the one hand, and the Sale Order, on the other hand, with respect to the Sale Transaction, the Sale Order shall govern.

**Q.**     *Entire Agreement*

Except as otherwise provided herein or therein, this Plan and the Definitive Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan and the Definitive Documents.

**R.**     *2002 Notice Parties*

After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed a renewed request after the Confirmation Hearing to receive documents pursuant to Bankruptcy Rule 2002.

[*Remainder of page intentionally left blank.*]

Respectfully submitted, as of the date first set forth above,

Dated:  July 31, 2024                          **ROBERTSHAW US HOLDING CORP.**
                                               on behalf of itself and the other Debtor
                                               Entities


                                                */s/ John Hewitt*_____
                                               John Hewitt
                                               Chief Executive Officer

# Exhibit B

# (Notice of Entry of Confirmation Order)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| ROBERTSHAW US HOLDING CORP., *et al.*, | : Case No. 24-90052 (CML) |
|  | : |
| Post-Effective Date Debtors.[1] | : (Jointly Administered) |
|  | : |

**NOTICE OF (I) ENTRY OF CONFIRMATION ORDER, (II) OCCURRENCE OF**
**EFFECTIVE DATE, AND (III) ADMINISTRATIVE CLAIMS BAR DATE**

**PLEASE READ THIS NOTICE CAREFULLY AS IT CONTAINS BAR DATE AND**
**OTHER INFORMATION THAT MAY AFFECT YOUR RIGHTS TO RECEIVE**
**DISTRIBUTIONS UNDER THE PLAN:**

On August [ ● ], 2024, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order Confirming the First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and its Affiliated Debtors* [Docket No. [ ● ]] (the "Confirmation Order").[2]

Each of the conditions precedent to the occurrence of the Effective Date, as set forth in Article IX, has been satisfied or waived in accordance therewith, and the Plan became effective and was substantially consummated on **August [ ● ], 2024** (the "Effective Date"). For purposes of calculating all filing and other deadlines in the Plan and Confirmation Order determined by reference to the Effective Date, such time periods are deemed to have commenced on **August [ ● ], 2024**.

The Plan and its provisions are binding upon, and inure to the benefit of (i) the Post-Effective Date Debtors, (ii) all Holders of Claims and Interests, (iii) other parties-in-interest, and (iv) their respective heirs, executors, administrators, successors, and assigns.

---

[1]   The Post-Effective Date Debtors in these cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are as follows: Range Parent, Inc. (7956); Robertshaw US Holding Corp. (1898); Robertshaw Controls Company (9531); Burner Systems International, Inc. (8603); Robertshaw Mexican Holdings LLC (9531); Controles Temex Holdings LLC (9531); Universal Tubular Systems, LLC (8603); and Robertshaw Europe Holdings LLC (8843). The primary mailing address used for each of the foregoing Post-Effective Date debtors is 1222 Hamilton Parkway, Itasca, Illinois 60143.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Confirmation Order or the *First Amended Joint Plan of Liquidation of Robertshaw US Holding Corp. and Its Affiliated Debtors under Chapter 11 of the Bankruptcy* [Docket No. 857] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"), as applicable. The rules of interpretation set forth in Article I.B of the Plan shall apply hereto. For the avoidance of doubt, unless otherwise specified, all references herein to "Articles" refer to articles of the Plan.

In accordance with Article I.C of the Plan and paragraph 85 of the Confirmation Order, any and all requests for allowance or payment of Administrative Claims arising after June 7, 2024,[3] unless otherwise expressly set forth in the Plan, must be filed and served on the Debtors or the Plan Administrator, as applicable, on or before [ ● ], 2024 (the "Administrative Claims Bar Date").  Any such request must include, at a minimum, the following: (i) the name of the Holder of the Administrative Claim; (ii) the asserted amount of the Administrative Claim (denominated in United States dollars); (iii) the name of the applicable Post-Effective Date Debtor that is purported to be liable for the Administrative Claim and, if the Administrative Claim is asserted against more than one Post-Effective Date Debtor, the name of each Post-Effective Date Debtor and the exact amount asserted to be owed by each such Post-Effective Date Debtor; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim.

**UNLESS OTHERWISE ORDERED BY THE COURT, OR AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN (SEE BELOW), HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, PROPERLY FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE POST-EFFECTIVE DATE DEBTORS OR THEIR PROPERTY, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED SATISFIED AS OF THE EFFECTIVE DATE.  ALL SUCH CLAIMS SHALL, AS OF THE EFFECTIVE DATE, BE SUBJECT TO THE PERMANENT INJUNCTION SET FORTH IN ARTICLE X.E.**

Notwithstanding the foregoing, requests for payment of Administrative Claims need not be filed for Administrative Claims that are DIP Facility Claims, Professional Fee Claims, claims arising under Section 503(b)(1)(D) of the Bankruptcy Code, and Administrative Claims of the Bankruptcy Court or U.S. Trustee, or pursuant to Article IX.C, the Post-Effective Date Debtors (with the consent of the Ad Hoc Group and the Committee) have otherwise agreed in writing (which consent may be given by email) do not require such a filing.

In accordance with Article VII.A, distributions shall only be made to the record Holders of Allowed Claims as of the Distribution Record Date.  All Claims transfers occurring prior to the Confirmation Date should be registered with the Post-Effective Date Debtors.  The Disbursing Agent shall have no obligation to recognize, for purposes of Plan Distributions pursuant to, or in any way arising from, the Plan (or for any other purpose), any Claims that are transferred after the Distribution Record Date.  Instead, the foregoing parties are entitled to recognize only those record Holders of Claims listed on the Post-Effective Date Debtors' books and records as of the Distribution Record Date.

In accordance with Article II.A, all Professional Persons seeking an award by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date.  Distributions on account of Allowed Professional Fee Claims

---

[3] As described in paragraph 85 of the Confirmation Order and defined in Article I.C of the Plan, the deadline to file Administrative Claims arising after June 7, 2024, is the Business Day that is thirty (30) days after the Effective Date, or such other date as approved by Final Order of the Bankruptcy Court.

shall be made from the Professional Fee Escrow Account in such amounts as are Allowed by the Bankruptcy Court.

Substantially contemporaneously herewith, the Post-Effective Date Debtors are filing a notice to revise the consolidated case caption of the Chapter 11 Cases reflecting changes to certain of the Post-Effective Date Debtors' legal names. Upon the filing of such notice, the Post-Effective Date Debtors will, and all other parties are directed to, use such updated case caption in all further pleadings and other papers filed in the Chapter 11 Cases and any adversary proceeding commenced thereunder.

Pursuant to <u>Article XII.R</u>, any Entity that desires to receive notices or other documents after the Effective Date must, pursuant to Bankruptcy Rule 2002, file a renewed request to receive such notices and documents with the Court to be added to the post-Confirmation service list. Entities not on such post-Confirmation service list may not receive notices or other documents filed in the Chapter 11 Cases after the Effective Date. An Entity who provides an e-mail address may be served only by e-mail after the Effective Date.

The Plan (including the Plan Supplement), the Confirmation Order, and all other documents publicly filed in the Chapter 11 Cases, as well as additional information about the Chapter 11 Cases, can be accessed free of charge by visiting the Post-Effective Date Debtors' Case Information Website located at https://cases.ra.kroll.com/Robertshaw. If you have any questions about this notice or any documents or materials that you received, please contact the Claims and Noticing Agent, Kroll Restructuring Administration LLC, via email at robertshawinfo@ra.kroll.com or via telephone at (646) 777-2308 (international) or (844) 536-2001 (U.S./Canada, toll free). The Claims and Noticing Agent cannot and will not provide legal advice.

*[Remainder of page intentionally left blank]*

Dated:   August [ ● ], 2024        Respectfully submitted,
         Houston, Texas

Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  713-220-4200
Email:   taddavidson@HuntonAK.com
         ashleyharper@HuntonAK.com
         pguffy@HuntonAK.com

- and -

George A. Davis (NY Bar No. 2401214)
George Klidonas (NY Bar No. 4549432)
Adam S. Ravin (NY Bar No. 4079190)
Misha E. Ross (NY Bar No. 5412747)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:   george.davis@lw.com
         george.klidonas@lw.com
         adam.ravin@lw.com
         misha.ross@lw.com

*Counsel for the Post-Effective Date Debtors*

## Certificate of Service

I certify that on August [ ● ], 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

Timothy A. ("Tad") Davidson II

4